William F. Johnson
Douglas W. Baruch, *pro hac vice*
Jennifer M. Wollenberg, *pro hac vice*
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000
william.johnson@friedfrank.com
douglas.baruch@friedfrank.com
jennifer.wollenberg@friedfrank.com

Michael J. Missal, *pro hac vice*
Amy Pritchard Williams, *pro hac vice*
K&L GATES LLP
1601 K Street NW
Washington, DC 20006-1600
(202) 778-9000
michael.missal@klgates.com
amy.williams@klgates.com

Attorneys for Defendant
   Wells Fargo Bank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>             - against -<br><br>WELLS FARGO BANK, N.A.,<br><br>                              Defendant. | 12 Civ. 7527 (JMF) (JCF)<br><br>ECF CASE<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S OPPOSITION TO THE UNITED STATES' MOTION TO AMEND ITS COMPLAINT** |

Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its attorneys, respectfully submits this Opposition to the United States' Motion to Amend Its Complaint to Join an Additional Defendant, Dkt. 69 (with its accompanying Memorandum of Law, Dkt. 70 – the "Motion"). For the reasons set forth below, Wells Fargo requests that the United States' Motion be denied.

## INTRODUCTION

The United States' attempt to file a second amendment to its complaint in this case by adding a Wells Fargo employee, Kurt Lofrano, as a party defendant raises substantial questions that are left unanswered in the United States' Motion. Given that the parties are more than a year into this litigation, and considering that the United States already amended the complaint in late 2012, the United States must explain why its delay in pursuing Mr. Lofrano is not undue and why its motivations for adding Mr. Lofrano to existing allegations against Wells Fargo are proper. The United States gives short shrift to both points in its Motion.

As explained below, the United States has not explained what information it learned – between the filing of its initial complaint in October 2012 and its November 1, 2013 notification to Wells Fargo of its intent to sue Mr. Lofrano – that would justify this action. To the contrary, every single allegation against Mr. Lofrano in the proposed Second Amended Complaint is based on information that was known to the United States before it filed suit and which, at that time, clearly did not warrant pursuing Mr. Lofrano individually. Indeed, Mr. Lofrano is never mentioned by name in the original or the amended complaint, and he is indirectly identified only twice by title. What possible justification does the United States have for waiting a year before taking this action? Why, when it purportedly obtained authority to sue Mr. Lofrano in April 2013, did it not apprise the Court or Wells Fargo (or Mr. Lofrano) of its intentions? Why is this delay not – by definition – undue? None of these questions is adequately answered by the

1

Case 1:12-cv-07527-JMF   Document 72   Filed 12/02/13   Page 3 of 9

United States.

Moreover, certain events, which go unmentioned in the United States' Motion, tend to cast the United States' action in a different light. In particular, following a series of discussions during the course of the summer aimed at exploring resolution of this matter, Wells Fargo notified the United States on October 29, 2013 that it did not believe that further discussions would be productive at the time. On November 1, only three days later after receiving this message from Wells Fargo, the United States provided its very first notification of any intent to pursue claims against any Wells Fargo employee in this matter. Since the United States has not claimed that it learned any new evidence in the year since filing suit, and because the United States has not otherwise explained why it did not act earlier to add Mr. Lofrano, the three-day proximity between Wells Fargo's message to the United States that it was suspending further settlement discussions and the United States' notification to Wells Fargo concerning Mr. Lofrano is suggestive of retaliation and improper motive. As discussed below, leave to amend may be denied where there has been undue delay and bad faith.

## RELEVANT FACTS

1. The United States commenced this action by filing suit on October 9, 2012 (Dkt. 1), following an investigation in which it did not seek to interview any current Wells Fargo employees.

2. On November 16, 2012, Wells Fargo filed its Motion to Dismiss the Complaint (Dkt. 14).

3. On December 14, 2012, the United States filed its First Amended Complaint (Dkt. 22).

4. Both the original and amended complaints specifically reference Mr. Lofrano by

United States.

Moreover, certain events, which go unmentioned in the United States' Motion, tend to cast the United States' action in a different light. In particular, following a series of discussions during the course of the summer aimed at exploring resolution of this matter, Wells Fargo notified the United States on October 29, 2013 that it did not believe that further discussions would be productive at the time. On November 1, only three days later after receiving this message from Wells Fargo, the United States provided its very first notification of any intent to pursue claims against any Wells Fargo employee in this matter. Since the United States has not claimed that it learned any new evidence in the year since filing suit, and because the United States has not otherwise explained why it did not act earlier to add Mr. Lofrano, the three-day proximity between Wells Fargo's message to the United States that it was suspending further settlement discussions and the United States' notification to Wells Fargo concerning Mr. Lofrano is suggestive of retaliation and improper motive. As discussed below, leave to amend may be denied where there has been undue delay and bad faith.

## RELEVANT FACTS

1. The United States commenced this action by filing suit on October 9, 2012 (Dkt. 1), following an investigation in which it did not seek to interview any current Wells Fargo employees.

2. On November 16, 2012, Wells Fargo filed its Motion to Dismiss the Complaint (Dkt. 14).

3. On December 14, 2012, the United States filed its First Amended Complaint (Dkt. 22).

4. Both the original and amended complaints specifically reference Mr. Lofrano by

title (*see, e.g.*, First Amended Complaint ¶¶ 123, 125), but there is no allegation that Mr. Lofrano is liable for any wrongdoing.

5. On January 16, 2013, Wells Fargo filed a new Motion to Dismiss (Dkt. 26).

6. As of February 22, 2013, the parties had completed briefing on the Motion to Dismiss.

7. Counsel for the United States has informed Wells Fargo that it sought authorization to name Mr. Lofrano as a defendant in some of the complaint causes of action in March 2013.

8. By "late April 2013," counsel for the United States had obtained authorization to file an action against Mr. Lofrano (Motion at 7).

9. On April 17, 2013, the Court heard oral argument on the Motion to Dismiss. The United States made no mention of its request for authorization (or the receipt of any authorization) to Wells Fargo or the Court in advance of the Motion to Dismiss argument.

10. On September 24, 2013, the Court issued its ruling on the Motion to Dismiss (Dkt. 45), triggering, among other things, Wells Fargo's obligation to answer the First Amended Complaint. During the five-month period between April and September, the United States did not inform the Court, Wells Fargo, or Mr. Lofrano that it had received authorization to file suit against Mr. Lofrano.

11. On October 29, 2013, Wells Fargo counsel notified counsel for the United States that Wells Fargo did not believe that further settlement discussions would be productive at that time.

12. On November 1, 2013, Wells Fargo filed its Answer to the First Amended Complaint (Dkt. 54). Counsel for the United States never notified Wells Fargo's counsel (prior

to the filing of the Answer) that it intended to seek leave to file a Second Amended Complaint. As a result, Wells Fargo was obligated to – and did – file an Answer to the First Amended Complaint.

13.     Later on November 1, 2013, counsel for the United States notified Wells Fargo counsel (for the first time) that it would be seeking leave of Court to file a Second Amended Complaint to name and join Mr. Lofrano as a defendant to some of the existing causes of action.

## ARGUMENT

While leave to amend generally should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), "leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent." *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (emphasis in original) (internal quotations omitted).[1] Indeed, leave to amend may be denied upon a showing of *any* of the following factors: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies in previous amendments, (4) futility, or (5) undue prejudice to the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Oneida Indian Nation of New York State v. County of Oneida, N.Y.*, 199 F.R.D. 61, 73 (N.D.N.Y. 2000) (recognizing that "ultimately no single [*Foman*] factor is determinative").

### I.     The United States' Strategic Decision to Wait Until *After* Full Briefing and Argument on the Motion to Dismiss and *After* Wells Fargo Filed Its Answer Before Seeking to Amend Constitutes Undue Delay

"Where there is undue delay in filing a motion under Rule 15(a), the movant must provide a satisfactory answer for the delay." *ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc.*, No. 08 Civ. 5737RMBRLE, 2009 WL 773256, at *2 (S.D.N.Y. Mar. 23,

---

[1]     The same factors apply to Fed. R. Civ. P. 21, which governs the addition of a party. *See Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012).

4

2009); *see also Deere v. Goodyear Tire & Rubber Co.*, 175 F.R.D. 157, 166 (N.D.N.Y. 1997) ("[I]f a lengthy delay [does] exist[] before a motion to amend is made, it is incumbent upon the movant to offer a valid explanation for the delay." (citing *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 47 (2d Cir.1983))).

Here, the United States has provided no "satisfactory answer" for its delay in waiting over a year to add a new defendant to the proceeding, given the undisputed evidence that: (1) the United States had authority to proceed against Mr. Lofrano since no later than April 2013, (2) the United States never informed Wells Fargo, the Court, or Mr. Lofrano of its authority or intentions in the ensuing seven months, and (3) the United States has not articulated any new facts or evidence that would warrant naming Mr. Lofrano more than a year after first filing suit.[2] *See ABC Rug & Carpet Cleaning Serv., Inc.*, 2009 WL 773256, at *2 ("Additionally, leave to amend may be denied where the moving party knows or should have known the facts upon which the amendment is based, but did not originally plead them."); 6 Wright & Miller, Federal Practice and Procedure § 1488 (2013) ("[I]n keeping with the purpose of Rule 15(a), which is to facilitate a determination of the action on its merits, a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time."). Indeed, there is room for argument that the United States' delay between October 2012 and April 2013 would have been grounds, standing alone, to demonstrate undue delay had the United States actually acted when it received authorization.

Beyond that initial period of delay, the United States compounded the problem by waiting even longer, and the United States' only excuse for this extensive delay and inaction is

---

[2] The United States does not assert any new facts or circumstances in its Motion. Rather the Motion asserts that its Complaint "already identified Lofrano by title and alleged his involvement in the misconduct." (Motion at 5.)

that Wells Fargo's Motion to Dismiss "raised several potentially dispositive issues" and so it decided to wait until after the Court decided that motion on September 24, 2013. (Motion at 7–8.)  This excuse, however, is not a satisfactory answer for the delay.  *See, e.g.*, *McGee v. Dunn*, No. 09 Civ. 6098, 2013 WL 1628604, at *12–13 (S.D.N.Y. Apr. 16, 2013) (denying leave to amend where plaintiff's explanation for delay was that his counsel "wished to wait until after a ruling was made on the motions to dismiss").  In any event, the United States surely knew much earlier that Wells Fargo's Motion to Dismiss raised such dispositive issues.  Wells Fargo filed its first Motion to Dismiss in November 2012 and its second Motion to Dismiss in January 2013.  Both of those Wells Fargo motions raised the precise same "dispositive" issues, yet that did not stop the United States from seeking and obtaining authorization to proceed against Mr. Lofrano no later than April 2013, while the second Motion to Dismiss was still pending.

Nor does the United States explain why it did not reveal to the Court, Wells Fargo, or Mr. Lofrano that it intended to proceed against Mr. Lofrano immediately following this Court's September 2013 ruling on those "dispositive" issues.  Did the authorization to proceed lapse for some reason?  If not, what possible excuse is there for another lengthy delay before acting?  Surely, the United States does not suggest that the sixteen-day Government shutdown prevented it from notifying Wells Fargo and the Court during that entire thirty-eight day period.[3]  The United States is obligated to provide a "satisfactory" explanation for this series of delays in order to demonstrate that the overall delay is not undue.  The United States' explanation does not meet the standard.[4]

---

[3]   In fact, counsel for Wells Fargo and the United States communicated multiple times throughout the shutdown period.

[4]   The United States' decision to withhold its intentions is, at most, strategic.  One notable – and easily foreseeable byproduct of this tactic – is that it deprived Mr. Lofrano of the opportunity to participate in that Motion to Dismiss briefing and argument, notwithstanding the United States' acknowledgement that the issues raised were potentially dispositive.  Given this gamesmanship, it is somewhat ironic that the United States would now argue that its

### II. The Timing of the United States' Action Against Mr. Lofrano Places the United States' Motives at Issue

Although it is nowhere mentioned in the United States' Motion, there is an equally plausible explanation for the United States seemingly sudden decision to name Mr. Lofrano, whom the United States characterizes as a Wells Fargo "executive." That explanation would suggest that the decision to name Mr. Lofrano was prompted by Wells Fargo's notification that it did not believe that further settlement discussions would be productive. Wells Fargo delivered that message to the United States on October 29, 2013. Three days later, on November 1, 2013, the United States first mentioned its intention to name Mr. Lofrano as a defendant.

In the absence of any other explanation for the lengthy delay, this intervening event – within days of the notice – raises questions about whether the United States acted in bad faith, in retaliation for Wells Fargo's message. *See State Trading v. Assuranceforeningen Skuld*, 921 F.2d 409, 417–18 (2d Cir.1990) (affirming denial of motion to amend where the plaintiff delayed raising certain claims to gain a strategic advantage); *Oneida Indian Nation*, 199 F.R.D. at 80 (finding bad faith and denying leave to amend to add individual defendants – in part because plaintiffs reneged on earlier assurances that they would not target individual defendants – where defendant argued that "that plaintiffs have acted in bad faith because these motions to amend [to add individual defendants] are nothing more than an oblique attempt to coerce the State into settlement").

While the United States seeks to focus attention away from its conduct in waiting at least seven months before acting on its authorization to sue Mr. Lofrano by claiming that Wells Fargo will not be prejudiced, the reality is that discovery already has commenced and, in addition to the

---

proposed amendments are not futile because this Court has "already held [the allegations] to be facially valid in denying Wells Fargo's motion to dismiss." (Motion at 6.)

7

added expense and burden of addressing a new party, Wells Fargo already has formulated and submitted its Answer and Affirmative Defenses to a prior version of the Complaint. And even if prejudice was completely absent, "[t]he possibility of bad faith is, in and of itself," justification for denying a motion to amend. *Rotter v. Leahy*, 93 F. Supp. 2d 487, 496 (S.D.N.Y. 2000).

## CONCLUSION

For all these reasons, Wells Fargo requests that the Court deny the United States' Motion to Amend.

Dated:   New York, New York
         December 2, 2013

By:   */s/ William F. Johnson*
William F. Johnson
Douglas W. Baruch, *pro hac vice*
Jennifer M. Wollenberg, *pro hac vice*
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, New York 10004-1980
(212) 859-8000
william.johnson@friedfrank.com
douglas.baruch@friedfrank.com
jennifer.wollenberg@friedfrank.com

Michael J. Missal, *pro hac vice*
Amy Pritchard Williams, *pro hac vice*
K&L GATES LLP
1601 K Street NW
Washington, DC 20006-1600
(202) 778-9000
michael.missal@klgates.com
amy.williams@klgates.com

Attorneys for Defendant
   Wells Fargo Bank, N.A.

8