*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 16, 2014

**BY ECF**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

       Re:   *United States v. Wells Fargo Bank, N.A.*, 12 Civ. 7527 (JMF)

Dear Judge Furman:

       We write respectfully on behalf of plaintiff the United States of America (the "Government") in response to the letter submitted on April 13, 2014, by defendant Wells Fargo Bank, N.A ("Wells Fargo"), requesting a pre-motion conference regarding the Government's alleged "refusal to provide basic, factual discovery" regarding its claims.  Specifically, Wells Fargo asserts that the Government has "refused" to identify the factual bases for the allegations in the Second Amended Complaint ("SAC") that between 2001 and 2005, Wells Fargo engaged in reckless underwriting of FHA loans.  As explained herein, Wells Fargo's assertions in its letter are incorrect and incomplete.  The Government has identified the reckless practices, as well as thousands of loans that support the above-referenced allegations, and upon which the Government will rely at trial.  What Wells Fargo is seeking in effect is early discovery of the analysis of the Government's re-underwriting expert.  This is improper under FRCP 26, is contrary to the Case Management Plan to which Wells Fargo previously agreed, and is inconsistent with what has been done in other, closely analogous cases.  *See infra* Part A.  Moreover, Wells Fargo is not entitled to the information it is demanding in connection with the Government's Initial Disclosures—the work product of the Government's consulting expert.  *See infra* Part B.  Accordingly, the Court should deny Wells Fargo's application.

       A.       **Wells Fargo Is Not Entitled to Early Production of the Analysis of the Government's Re-Underwriting Expert**

       Wells Fargo's contention that the Government has "refused" to identify the factual bases underlying the reckless underwriting allegations in the SAC is wrong.  (*See* Dkt. No. 77 ("SAC") ¶ 46.)  The Government identified in the SAC thousands of individual FHA loans that support this claim and on which the Government intends to rely at trial: (1) the thousands of loans from 2002-2005 that Wells Fargo knew contained material violations of HUD's requirements, but which the bank did not self-report (*see* SAC, Exs. A-C); (2) the additional loans that Wells Fargo identified in its Quality Assurance reports as non-compliant with HUD's requirements (*see id.* ¶¶ 56, 91); and (3) the ten exemplar properties for which Wells Fargo submitted false certifications from 2001-2005 (*see id.* ¶¶ 59-83, 93-117).  Furthermore, the Government has pointed to dozens of specific loans identified during a 2004 audit of Wells Fargo by the HUD Office of the

Inspector General as containing material violations of HUD requirements.[1] (*See id.* ¶ 125.) The files relating to all of these loans are in Wells Fargo's possession.

In its letter to the Court, Wells Fargo ignores these thousands of loans, instead asserting that the Government "is going to rely on a 'sample' to prove its case." This mischaracterizes the Government's evidence. To prove its case, the Government will rely on all of the loans identified above, as well as on a re-underwriting analysis of a statistical sample of loans. The statistical sample is currently being generated by the Government's sampling expert, and the re-underwriting analysis will then be conducted by the Government's re-underwriting expert. That analysis will be disclosed to Wells Fargo in an expert report, and will be subject to testing by Wells Fargo during expert discovery, in accordance with the Case Management Plan (*see* Dkt. No. 63 ¶ 7(c)) and the timing requirements of FRCP 26(a)(2)(D). Notably, in two similar cases recently litigated in this district, the court permitted the plaintiffs to present their statistical sampling and re-underwriting analysis in exactly this manner. *See Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 501-08 (S.D.N.Y. 2013) (concluding that plaintiff's experts' analyses regarding statistical sampling and re-underwriting of loans were admissible to establish liability); *United States ex rel. O'Donnell v. Bank of Am. Corp.*, No. 12 Civ. 1422 (JSR) (Dkt. No. 140, Exs. GF, GP) (reports of plaintiff's experts regarding statistical sampling and loan file re-underwriting). Indeed, this Court cited *Assured Guaranty* in its September 24, 2013 Opinion and Order, for the proposition that sampling to prove liability is permissible. *See United States v. Wells Fargo Bank, N.A.*, No. 12 Civ. 7527 (JMF), 2013 WL 5312564, at *16 (S.D.N.Y. Sept. 24, 2013).

Moreover, Wells Fargo will not be prejudiced by this schedule. During fact discovery, the Government will identify for Wells Fargo the loans that comprise its statistical sample. The Government will also produce to Wells Fargo a document setting forth the underwriting criteria that its re-underwriting expert will use, and will make available a FRCP 30(b)(6) witness from HUD on the issue of the relevant underwriting criteria. Wells Fargo will thus be able to conduct its own analysis of the relevant sample, and prepare accordingly for expert discovery. Wells Fargo provides no authority to support its position that the information it will receive during fact discovery is insufficient, and that it should be permitted to upend the Case Management Plan and the normal order of fact and expert discovery.

The cases cited by Wells Fargo in its letter do not support the bank's position. First, none of the cases involves an expert-generated statistical sample and subsequent expert re-underwriting or auditing of that sample, and more importantly, none supports the proposition that expert opinion and analysis should be produced early. In fact, *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ. 6811 (CM) (JCF), 2013 WL 5495542 (S.D.N.Y. Oct. 3, 2013), specifically rejects the proposition that an expert report (in that case, relating to damages) must be produced early so that the opposing party may use the expert's analysis in fact discovery. *See id.* at *5-6 (observing that Fed. R. Civ. P. 26 does not "require[] disclosure of an expert report

---

[1] In light of the Government's identification of all of these loans, Wells Fargo's statements in its letter that the Government "has not yet even compiled specific examples of deficient loans," and that "Plaintiff is saying that Wells Fargo cannot discover what Plaintiff contends to be the deficient loans," are plainly incorrect.

prior to the date ordered by the court for such disclosure," and rejecting the proposition that the expert's conclusions necessitated the reopening of fact discovery, because "the underpinnings of any expert testimony can be tested during expert discovery"). Similarly, *United States ex rel. Lisitza v. Par Pharm. Cos., Inc.*, No. 06 C 6131, 2014 WL 22272 (N.D. Ill. Jan. 21, 2014), supports the Government's position. There, in response to a request by the defendant for certain documents relating to the alleged false claims at issue, the court held that "computative, non-opinion data" should be produced, but noted that "opinion or damages analysis" would be protected from disclosure. *Id.* at *3. In this case, the Government will provide the equivalent of the underlying data in *Lisitza* during fact discovery (the identification of the loans that comprise its statistical sample), but not its expert's opinions and conclusions, which will be provided in expert discovery, as contemplated by the Case Management Plan and FRCP 26.[2]

### B.   Wells Fargo Is Not Entitled to the Opinions of the Government's Consulting Expert

Wells Fargo also incorrectly asserts in its letter that the Government "refuses to produce documents that support" the material defect rate contained in the Government's Initial Disclosures as part of its computation of damages. In fact, the Government has agreed to produce *all* of the underlying loan files that support this defect rate, notwithstanding that the rate was calculated by a consulting expert during the Government's pre-suit investigation, and that the Government does not intend to rely on that rate or the underlying sample in this litigation.[3] The law is clear that Wells Fargo is not entitled to the additional information it is seeking—the identity of and analysis relating to the specific loans that the consulting expert concluded were deficient. FRCP 26(a)(1)(A)(iii) requires that the Government produce a computation of damages and the documents on which each computation is based, "unless privileged or protected from disclosure." Here, the analysis of the Government's consulting expert—who will not be called by the Government to testify about this work at trial—is protected under FRCP 26(b)(4)(D), and therefore need not be produced.

For these reasons, the Court should deny Wells Fargo the relief it seeks in its April 13 letter.

---

[2] The remaining cases cited by Wells Fargo are factually inapposite. In *United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227663 (S.D. Ohio Nov. 20, 2009), the court disapproved of plaintiff's post-discovery reservation of rights to assert an entirely different damages theory at trial, as well as vague statements that plaintiff may be entitled to damages arising from entirely different types of Medicare claims. *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701, 2013 WL 6628963 (S.D.N.Y. Dec. 16, 2013), involved a defendant's incorrect assertion that it did not need to produce documents relating to its affirmative defenses until the end of fact discovery. And in *United States ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2009 WL 3103836 (M.D. Tenn. Sept. 24, 2009), the defendant did not possess any of the documents underlying the alleged false claims, because they were third-party documents; the court disapproved of the plaintiff's attempt to obtain and provide only a sample of those documents.

[3] The Government will amend its Initial Disclosures to make clear that its damages claim will be based on its litigation experts' sampling and re-underwriting analysis.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:   */s/ Rebecca S. Tinio*
JEFFREY S. OESTERICHER
REBECCA S. TINIO
CHRISTOPHER HARWOOD
CALEB HAYES-DEATS
Assistant United States Attorneys
Tel:  (212) 637-2698/2774/2726/2699
Fax:  (212) 637-2730

cc:  William F. Johnson, Esq.
Douglas W. Baruch, Esq.
Jennifer Wollenberg, Esq.
*Counsel for Wells Fargo Bank, N.A.*

Lewis J. Liman, Esq.
Meredith Kotler, Esq.
Liana Roza Vitale, Esq.
*Counsel for Kurt Lofrano*