

**Fried, Frank, Harris, Shriver & Jacobson LLP**

801 17th Street NW
Washington, DC 20006
Tel: 202.639.7000
Fax: 202.639.7003
www.friedfrank.com

Direct Line: 202.639.7052
Email: douglas.baruch@friedfrank.com

May 13, 2015

**By ECF**

Honorable Jesse M. Furman
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 1105
New York, NY 10007

Re:   *United States v. Wells Fargo Bank, N.A. et al.*, No. 12-CV-7527 (JMF)

Dear Judge Furman:

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Mr. Lofrano respectfully write to request an informal conference and/or reconsideration of one aspect of the Court's Memo Endorsement today regarding Wells Fargo's May 8, 2015 letter to the Court (Dkt. 185) and the Government's May 12, 2015 response (Dkt. 187).

With respect to Topic 5(a)-(b), Defendants sought documentation regarding (a) the number of self-reports industry wide (by year) and by Wells Fargo (by year), and (b) the number of such reports that were identified as fraud or suspected fraud. The Government's response on this Topic – both during the meet-and-confer and in its letter to the Court – is extremely revealing and important for this case. The "self-reporting" claims against Wells Fargo span the period 2002-2010. Wells Fargo properly sought discovery from a Government Rule 30(b)(6) witness regarding the number and type of self-reports HUD received from Wells Fargo and other lenders throughout this entire time period, as Wells Fargo intends to show that the volume and pattern of lender reporting throughout this period are fully consistent with the industry and Wells Fargo's interpretation of what HUD wanted it to report and what Wells Fargo did self-report.

As the Government's letter admits (Dkt. 187 at 4), **the Government did not provide any self-reporting data in its chart for the period 2002 through late 2005**. The Government's excuse for not including this information was that there was no "centralized" system for tracking self-reports. While that claim tends to underscore the point that HUD did not place any importance on lender self-reporting at least during that period, it does not obviate the need for

New York ● Washington ● London ● Paris ● Frankfurt
Fried, Frank, Harris, Shriver & Jacobson LLP is a Delaware Limited Liability Partnership

Fried, Frank, Harris, Shriver & Jacobson LLP

Honorable Jesse M. Furman
May 13, 2015
Page 2

the Government to fulfill its discovery obligations to provide evidence on this Topic. To the extent any lenders submitted self-reports, they were submitted to HUD – and the Government does not (and cannot) deny that.[1] Moreover, a senior HUD witness indicated in testimony on this very question on March 16, 2015 that the very discovery sought here is readily accessible:

> Q: If you wanted to go back to the 2001 to 2005 time period and determine what lender reports came in from a particular lender, could you do that?
>
> A: Yes. It would be in our – it would be in our ARRTS system.
>
> Q: Have you tried to do that for any lender?
>
> A: Yes.
>
> Q: So you have access to the ARRTS system, and you can determine what lender reports were made by lender from 2001 to 2005?
>
> A: I can run a report on all the lender reports from 2001 to 2005, and it will list the lender, and you can download and sort it to see who the lender is, if, you know. . .

Even if the Government does not have the necessary information stored in one system, it did not explain why it cannot compile the data by (1) reviewing any actual lender self-reports (which would have been sent to HUD by lenders, and maintained by HUD), or (2) reviewing any tracking (including ARRTS tracking). Indeed, the Government has made allegations in this case – including in the Second Amended Complaint – claiming that Wells Fargo did not self-report a single loan to HUD during the period 2002-late 2005. (Dkt. 77 at para. 5) ("Prior to October 2005, Wells Fargo, the largest originator of FHA loans in America, did not self-report a single bad loan to HUD."). The Government's allegation on this Topic (inaccurate as it is) shows that HUD must have the capability to search its records to determine the number of lender self-reports during this period.

If the Government cannot substantiate – in any reliable or accurate manner – the number of self-reports by lenders during this period by either (i) providing the requested data, or (ii) producing the actual self-reports themselves, the Government should be required to admit that as an evidentiary matter. That is what a Government Rule 30(b)(6) witness would have to admit.

---

[1] We note that defendants have searched the Government's extensive production for copies of any actual self-reports for the relevant time period, but have not to date found them (other than Wells Fargo's self-reports). The Government should be required to identify, with specific Bates ranges, any self-reports it produced. If the Government cannot otherwise provide the requested data, any other self-reports not located within the Government's production should be deemed not made to HUD.

Fried, Frank, Harris, Shriver & Jacobson LLP

Honorable Jesse M. Furman
May 13, 2015
Page 3

And that is what a properly prepared and authenticated chart covering this period would reflect. In no circumstances, however, should the Government be permitted to both make arguments about the lack of Wells Fargo self-reporting prior to October 2005 and refuse to present a HUD witness or provide a properly authenticated chart that would confirm the actual number of lender self-reports to HUD during the pre-October 2005 period.[2]

Accordingly, Defendants respectfully request that the Court reconsider the portion of its Memo Endorsement concerning Topic 5(a)-(b) for self-reporting between 2002-October 2005.

       Respectfully submitted,

       FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

     By:  /s/ Douglas W. Baruch
       Douglas W. Baruch, *pro hac vice*
       Jennifer M. Wollenberg, *pro hac vice*

       *Attorneys for Wells Fargo Bank, N.A.*

---

[2] The Government's assertion that defendants should instead ask another 30(b)(6) witness for this data (regarding Topic 4) (Dkt. 187 at 4) makes no sense. The point of this exercise was to avoid what the Government claimed was a burden in educating a 30(b)(6) witness on data that could be provided through documentation. Moreover, if the data do not exist (as the Government claims), then asking a 30(b)(6) witness would achieve nothing. And if the data do exist, there is no reason not to provide it in documentary form, as requested by Wells Fargo and Mr. Lofrano.