

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

May 15, 2015

**BY ECF**
Honorable Jesse M. Furman
United States District Judge
40 Foley Square
New York, New York 10007

Re:  <u>United States v. Wells Fargo Bank, N.A.</u>, 12 Civ. 7527 (JMF)

Dear Judge Furman:

  We write respectfully on behalf of plaintiff the United States of America (the "Government") in response to the letter submitted by defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank") on May 13, 2015, *see* Dkt. #189, which requested an informal conference on and/or partial reconsideration of the Court's Memorandum Endorsement denying Wells Fargo's May 8, 2015, discovery application, *see* Dkt. #188. The Court should deny Wells Fargo's request for reconsideration. As set forth in the Government's letter from May 12, 2015, between 2002 and 2005, there was "no centralized data system that recorded the individual self-reports" received by HUD. Dkt. #187 at 4. Wells Fargo's reliance on the ARRTS system is misplaced. While ARRTS data does indicate that the U.S. Department of Housing & Urban Development ("HUD") received and reviewed a subset of lender self-reports between 2002 and 2005, as set forth below, the data does not provide the information requested by Topics 5(a) & (b) of Wells Fargo's Rule 30(b)(6) deposition notice, *i.e.*, "the number of self-reports industry wide (by year) and by Wells Fargo (by year)." Dkt. #189 at 1. Moreover, the Government has already produced to Wells Fargo the available data from the ARRTS system relating to lender self-reports.

  On February 17, 2015, the Government produced a spreadsheet containing ARRTS data for all reviews by HUD's Quality Assurance Division ("QAD"), including *reviews* of lender self-reports, between 2001 and 2013.[1] While that spreadsheet reflects QAD's review of lender self-reports between 2002 and 2005, it does not contain the information sought by Topics 5(a) & (b), *i.e.*, the number of lender self-reports HUD received during those years. ARRTS is a workload management system. It permits QAD to open different types of compliance reviews and track the progress of those reviews. While ARRTS has a code for reviews of lender self-reports, the data available to the Government indicates that the number of reviews opened under the relevant code does not reflect the total number of lender self-reports. For example, during the April 2005 to December 2010 period, the number of reviews of lender self-reports reflected in ARRTs is

---

[1] Had Wells Fargo discussed this issue with the Government prior to requesting reconsideration, the Government could have identified this spreadsheet and shared its understanding of what information the spreadsheet contains.

approximately 55% of the total number of lender self-reports submitted through Neighborhood Watch. The smaller number of reviews in ARRTS than self-reports in Neighborhood Watch could result from the possibility that QAD employees sometimes bypassed the ARRTS system, opened reviews in response to lender self-reports under other codes, or decided not to open reviews in response to some lender self-reports, including because the lender had already taken appropriate corrective actions. In any event, as set forth in the Government's May 12, 2015, letter, there was no centralized data system that recorded individual self-reports between 2002 and 2005, and, as set forth above, the information from ARRTS that Wells Fargo seeks was and is already available to it.

Wells Fargo's emphasis on determining the precise number of lender self-reports during the 2002 to 2005 period is a red herring. Contrary to Wells Fargo's suggestion, the Government does not need to "substantiate . . . the number of self-reports by lenders" between 2002 and 2005 in order to prove its self-reporting claim for that period. Instead, the Government must show only that Wells Fargo falsely certified that it had complied with the self-reporting requirement, that it knew of that falsity, and that the certification was material to payment decisions by HUD. *See United States* ex rel. *Feldman v. City of New York*, 808 F. Supp. 2d 641, 655–56 (S.D.N.Y. 2011). To show materiality, the Government can rely on evidence that it has produced from the period reflecting lender self-reports and HUD's policies and practices concerning those reports, including, but not limited to, the ARRTS data described above, Mortgagee Review Board cases from the period finding that lenders had not self-reported in accordance with HUD's policies, and witness testimony, including Rule 30(b)(6) testimony, about HUD's self-reporting policies, practices, and procedures.[2] Wells Fargo's suggestion that such evidence would not suffice unless HUD has maintained a specific count of lender self-reports is a *non-sequitur*.

---

[2] According to Wells Fargo, the Government's suggestion that general testimony in response to Topic 4 can substitute for the data requested by Topics 5(a) & (b) "makes no sense." *See* Dkt. #189 at 3 n.3. But Wells Fargo is mistaken. The Government has never proposed to simply complete the burdensome counting exercise requested by Wells Fargo in response to a different Rule 30(b)(6) topic. Instead, it argued that Wells Fargo's ability to question a witness about HUD's policies and practices from the 2002 to 2005 period, and based on documents the Government has produced, has provided Wells Fargo with more relevant and less burdensome discovery regarding the exact same issue.

Similarly, Wells Fargo mistakenly suggests that the Court should deem self-reports not to have been "made to HUD" between 2002 and 2005 unless the Government produces copies of the paper reports. *See* Dkt. #189 at 2 n.1. The Government has produced more than 400 hard-copy self-reports during discovery. These hard-copy self-reports include reports made prior to Neighborhood Watch. For example, the document Bates stamped US-HUD-04914987 is a lender self-report from 2004. To the extent that the Government has not produced all paper self-reports from the 2002 to 2005 period, that is simply a product of HUD's policies and practices for retaining hard-copy documents. Even if HUD has not retained many paper self-reports from the 2002 to 2005 period, it has retained far more documents than Wells Fargo has. As explained previously, Wells Fargo has not produced a single custodial document from 58 of its custodians. *See* Dkt. 179 at 3 n.1.

As set forth above, Wells Fargo's request for reconsideration rests on a mistaken premise. The Government has complied and is complying with its obligations and agreements with Defendants, as the Court found on May 13, 2015. Accordingly, Wells Fargo's request for reconsideration should be denied.

                Respectfully submitted,

                PREET BHARARA
                United States Attorney

By:    */s/ Jeffrey Oestericher*
       JEFFREY S. OESTERICHER
       REBECCA S. TINIO
       CHRISTOPHER B. HARWOOD
       CALEB HAYES-DEATS
       DOMINIKA TARCZYNSKA
       Assistant United States Attorneys
       Tel:  (212) 637-2698/2774/2726/2699
       Fax:  (212) 637-2730