



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

June 1, 2015

**BY ECF**
Honorable Jesse M. Furman
United States District Judge
40 Foley Square
New York, New York 10007

      Re:  <u>*United States v. Wells Fargo Bank, N.A.*, 12 Civ. 7527 (JMF)</u>

Dear Judge Furman:

      We write respectfully on behalf of plaintiff the United States of America (the "Government") to request an informal conference and/or an order compelling defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank") to produce a chart or spreadsheet that identifies the internal Wells Fargo loan numbers that correspond to approximately 7,000 Federal Housing Authority ("FHA") case numbers that the parties have identified, and which have been the subject of numerous discovery requests. As set forth below, this information is critical to expert discovery, and Wells Fargo can easily produce it. In fact, the Bank has frequently provided analogous information to the Department of Housing and Urban Development ("HUD"). Notwithstanding the availability of this information to Wells Fargo, the Bank has refused to provide it to the Government in this litigation on the premise that, because Wells Fargo has produced millions of pages of loan files—which are not text-searchable—the Government can manually identify the internal Wells Fargo loan numbers that correspond to the FHA case numbers for the loans at issue. This position is inconsistent with basic principles of discovery and efficiency. Despite conferring in good faith on May 26, 2015, the parties have failed to reach agreement.

      Each FHA loan that Wells Fargo underwrote and that was endorsed for insurance during the period at issue can be identified using two different loan numbers: an internal loan number assigned by Wells Fargo and a case number assigned by FHA. Wells Fargo has both, and HUD generally has only the latter. Prior to filing suit, the Government issued a subpoena to Wells Fargo that asked the Bank to provide, among other documents, a list of the loans that Wells Fargo's quality assurance department had rated as materially deficient between 2002 and 2010. In response to that request, Wells Fargo provided spreadsheets that identified only the FHA case numbers, the types of quality assurance reviews conducted, and dates associated with those loans. The Government compiled the lists of loans Wells Fargo provided and annexed them to its complaints in this matter. *See, e.g.*, Dkt #77-1. Additionally, the Government used FHA case numbers to select a sample of loans that it would re-underwrite during expert discovery.

      During fact discovery, the parties served numerous requests for information concerning these loans. For example, the Government requested all documents concerning reviews of these

loans by Wells Fargo's quality assurance department. In connection with this request and others, Wells Fargo produced monthly "loan summary grids," which describe its quality assurance department's findings and how those findings translated into the ratings it assigned to loans. The loan summary grids, however, use Wells Fargo's internal loan numbers to identify the loans discussed and do not reference FHA case numbers.

The Government has asked the Bank on multiple occasions to identify the internal, Wells Fargo loan numbers that correspond to specific FHA case numbers. Wells Fargo has responded by claiming that documents identifying the internal Wells Fargo numbers that correspond to FHA case numbers "are present . . . within each loan file" the Bank has produced. To date, the Bank has produced over 6.5 million pages of loan files. On May 22, 2015, after conferring with HUD, the Government wrote to Wells Fargo again to request this information. During the parties' meet and confer, the Government noted that, in connection with reviews by HUD's Quality Assurance Division ("QAD"), Wells Fargo has routinely provided to HUD QAD spreadsheets and other documents that list both Wells Fargo's internal loan numbers and the corresponding FHA case numbers for the loans in question. These documents appear to extract readily available data from a database.[1] In response, Wells Fargo *did not deny* that it could easily provide a spreadsheet that contains the requested information. Instead, it again asserted that the Government could obtain this information by combing through individual loan files and argued that, in any event, the Government had not served a document request that specifically sought a spreadsheet identifying the internal Wells Fargo loan numbers that corresponded to FHA case numbers.

Wells Fargo's refusal to provide readily available information is untenable. Importantly, Wells Fargo has not suggested that providing the information the Government is requesting would prove burdensome. In fact, Wells Fargo *apparently gathered much of the requested information before the lawsuit even began*, when it provided the Government with a list, by FHA case number, of loans that Wells Fargo had rated materially deficient. In contrast to the spreadsheets Wells Fargo produced prior to suit, the loan files that Wells Fargo has identified as containing the relevant information include over 6.5 million pages of documents. Wells Fargo has not produced those loan files in a text-searchable format.

Wells Fargo's suggestion that the Government should sift through millions of pages to find information that Wells Fargo already has and can easily produce violates basic principles of discovery, fairness, and efficiency. For example, Local Rule 26.4(a) provides that opposing counsel are "expected to cooperate with each other" in all phases of discovery. The need for cooperation is apparent where one party has ready access to information from a database and the other can obtain it only by analyzing thousands of hard-copy loan files. Similarly, Local Rule 26.4(b) provides that discovery requests "shall be read reasonably" in recognition that the producing party has ready access to "information or can obtain it from the client." Here, Wells Fargo understood that the Government was requesting information about loans that the Government had identified by FHA case number. In fact, Wells Fargo knew that it had used

---

[1] To provide one example, we understand that Wells Fargo generated a spreadsheet for HUD QAD that identifies both Wells Fargo's internal loan numbers and the corresponding FHA case numbers for more than 16,000 loans.

FHA case numbers to identify many of the relevant loans to the Government. Based on this information, Wells Fargo should have readily understood that the Government's discovery requests also sought a means of determining how the information Wells Fargo provided corresponded to the FHA case numbers referenced in the requests.

The information requested is critically important to expert discovery. As described above, the data Wells Fargo has produced identifies loans using Wells Fargo's internal loan numbers. In contrast, the data available to HUD—which Wells Fargo has requested and obtained during fact discovery—identifies loans by FHA case number. In order to reconcile HUD's and Wells Fargo's data, the Government needs both the FHA case numbers and Wells Fargo's internal loan numbers. For example, to determine whether a loan discussed by Wells Fargo's quality assurance department in a loan summary grid was self-reported, the Government needs both sets of identifying numbers. By refusing to identify the internal Wells Fargo loan numbers that correspond to the relevant FHA case numbers—and instead recommending a manual review of millions of pages of documents—the Bank is delaying the Government's expert analyses and thereby limiting their scope. The Court should not permit such conduct.

As set forth above, the Court should order Wells Fargo to produce a chart or spreadsheet that identifies the internal Wells Fargo loan numbers that correspond to approximately 7,000 FHA case numbers that both the Government and Wells Fargo have identified. This information is critical to efficient expert discovery, and Wells Fargo has not disputed that it can easily provide it. We thank the Court for considering this request.

    Respectfully submitted,

    PREET BHARARA
    United States Attorney

By:   */s/ Jeffrey Oestericher*
    JEFFREY S. OESTERICHER
    REBECCA S. TINIO
    CHRISTOPHER B. HARWOOD
    CALEB HAYES-DEATS
    DOMINIKA TARCZYNSKA
    Assistant United States Attorneys
    Tel:  (212) 637-2698/2774/2726/2699
    Fax:  (212) 637-2730