

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

**BY ECF**

Honorable Jesse M. Furman
United States District Judge
40 Foley Square
New York, New York 10007

June 19, 2015

Re:  *United States v. Wells Fargo Bank, N.A.*, 12 Civ. 7527 (JMF)

Dear Judge Furman:

We write respectfully on behalf of plaintiff the United States of America (the "Government") in connection with Wells Fargo's challenge to 12 documents that the Government has withheld as privileged (the "Challenged Documents").  As explained in prior correspondence to the Court, Wells Fargo's challenge initially comprised 647 documents (*see* Dkt. 212), but through the meet-and-confer process, the parties were able to narrow the dispute to the 12 Challenged Documents.  The Court should uphold the Government's privilege invocations with respect to the Challenged Documents.  As explained herein and in the attached Declaration of Helen R. Kanovsky ("HUD Dec.") (*see* Ex. A), the Government has properly withheld:  (1) 11 of the Challenged Documents under the deliberative process privilege; (2) five of those 11 Challenged Documents under the attorney client and work product privileges as well; and (3) the remaining Challenged Document under the attorney client and work product privileges.  Furthermore, with respect to the Government's withholdings under the deliberative process and work product privileges, Wells Fargo cannot make the showings required to overcome those privileges.

**A.  The Challenged Documents.**  The Challenged Documents fall into three general categories:  (1) pre-decisional and deliberative drafts of documents relating to a particular HUD Office of Inspector General ("HUD OIG") audit report; (2) other pre-decisional and deliberative documents relating to HUD's rulemaking and lender discipline processes; and (3) a memorandum from HUD's Office of General Counsel ("HUD OGC") to the Department of Justice ("DOJ") seeking authority to bring an action against a Direct Endorsement ("DE") lender other than Wells Fargo under the Program Fraud Civil Remedies Act ("PFCRA"), 31 U.S.C. § 3801 *et seq.*  The Challenged Documents are described below and each is being provided to the Court for *in camera* review.

**1.  Pre-Decisional and Deliberative Documents Relating to a Particular HUD OIG Audit Report**

Privilege Log ID No. 16,157:  This document is a draft response by HUD to a portion of an audit report issued by HUD OIG.  In connection with the underlying audit, HUD OIG evaluated HUD's Quality Assurance Division ("QAD") to determine whether QAD consistently required FHA lenders to indemnify loans with similar deficiencies and whether QAD appropriately handled potentially fraudulent loans.  The final audit report issued by HUD OIG in

connection with this audit has been produced, and that document contains HUD's final response to the audit report.[1] The draft document at issue here (which is titled "Draft Response to Finding 2 of IG Draft Report") contains content that differs from HUD's final response to the audit report. *See* HUD Dec. ¶ 8.

Privilege Log ID No. 16,189:  This document is a draft response by HUD to an interim version of the above-referenced HUD OIG audit report. HUD's final response to the audit report (which, as set forth above, is contained within the final version of the audit report) states that it is responding to a HUD OIG "memorandum dated November 20, 2007, transmitting the subject draft audit report, which is a modification to your [HUD OIG's] previous submission dated July 2, 2007." The draft document at issue here (which is referred to as a "Discussion Draft") states that it is responding to HUD OIG's July 2, 2007, submission (*i.e.*, HUD OIG's original submission which it later modified). This draft document contains content that differs from HUD's final response to the audit report. *See id.*

Privilege Log ID Nos. 23,377 and 23,564:  These two documents are non-identical versions of a draft memorandum reflecting a non-final recitation of procedures that QAD was planning to implement in response to the above-referenced audit report. The documents, both of which are marked "DRAFT," contain different content, and reflect evolving consideration of what the final set of procedures should be. A final version of this memorandum has been produced.[2] *See id.*

The above-referenced documents are being withheld under the deliberative process privilege.

## 2.  Other Pre-Decisional and Deliberative Documents

Privilege Log ID No. 16,170:  This is a draft memorandum reflecting a proposed rule to change certain requirements of HUD's DE program, including eliminating the requirement that DE lenders maintain on staff a salaried DE underwriter. The proposed rule was not adopted, and thus the memorandum reflects one side of an intra-HUD debate on the proposal. *See id.*

Privilege Log ID Nos. 13,773 and 13,702:  These two documents reflect an email chain, in which HUD employees commented on a draft rule relating to HUD's Lender Insurance program. The initial email in the chain circulated a "proposed regulatory rule for Lender Insurance," and subsequent emails commented critically on specific portions of the draft rule. *See id.*

Privilege Log ID Nos. 1,586, 1,588, 1,589 and 1,599:  These four documents reflect identical versions of a chart prepared by an attorney from HUD OGC in connection with his role as counsel to HUD's Mortgagee Review Board ("MRB"). The attorney prepared the chart for purposes of providing legal advice to the MRB as to whether it should impose sanctions on a particular lender for allegedly violating various HUD/FHA requirements. For all but one of the

---

[1] The document is bates stamped US-HUD-OIG-00019777 – 97.

[2] The document is bates stamped US-HUD-12086557 – 59.

alleged violations, the chart reflects the attorney's legal analysis of the alleged violation.  For those alleged violations, the chart also reflects the attorney's analysis/recommendation as to (1) whether a sanction should be imposed, or (2) what additional information was needed before reaching a decision.  The final decision as to whether to impose a sanction for any of the alleged violations was ultimately made by the MRB, not the preparer of these documents, and is not reflected in these documents.  *See id.*

Privilege Log ID Nos. 16,170, 13,773 and 13,702 are being withheld under the deliberative process privilege.  Privilege Log ID Nos. 1,586, 1,588, 1,589 and 1599 are being withheld under the deliberative process, attorney client and work product privileges.

### 3.   Memorandum Seeking Authorization to Initiate a PFCRA Action

Privilege Log No. 18,416:  This document is a memorandum from HUD OGC to DOJ seeking authorization to initiate an action against a lender for civil penalties under PFCRA.  The document was prepared in anticipation of litigation (namely, an action under PFCRA), and contains HUD OGC's legal analysis relating to the anticipated action, including analysis as to why the specific conduct at issue renders the lender liable under PFCRA.  *See* HUD Dec. ¶ 9. This document has been withheld under the attorney client and work product privileges.

### B.   **The Government Has Properly Asserted the Deliberative Process Privilege Over 11 of the Challenged Documents.**[3]  An internal agency document may be withheld pursuant to the deliberative process privilege "if it is:  (1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formulated."  *Brennan Cent. for Justice at New York Univ. School of Law v. DOJ*, 697 F.3d 184, 194 (2d Cir. 2012).  "The privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999); *see also Nat'l Council of La Raza v. DOJ*, 339 F. Supp. 2d 572, 573 (S.D.N.Y. 2004) ("Drafts and comments on documents are quintessentially predecisional and deliberative"); *MacNamara v. City of New York*, 249 F.R.D. 70, 81 (S.D.N.Y. 2008) (quoting *Edmonds Inst. v. Dep't of Interior*, 460 F. Supp. 2d 63, 70 (D.D.C. 2006), for the proposition that "preliminary drafts of historical documents are exempt from disclosure when a comparison of the drafts with the final products would reveal editorial changes made by the agency").  The deliberative process privilege must be invoked "by the head of the governmental agency which has control over the information to be protected, after personal review of the documents in question," or "by a subordinate designee of high authority." *Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey*, No. 11 Civ. 6746, 2014 WL 2518959, at *4 (S.D.N.Y. June 4, 2014).  "Courts afford considerable deference to the judgment of the agency, since the agency is in the best position to know how to prevent injuring the quality of agency decisionmaking."  *Stinson v. City of New York*, 304 F.R.D. 432, 435 (S.D.N.Y. 2015).

---

[3]  The 11 Challenged Documents over which HUD is claiming deliberative process privilege are identified herein and in the HUD Dec. as Privilege Log ID Nos. 16,157, 16,189, 23,377, 23,564, 16,170, 13,773, 13,702, 1,586, 1,588, 1,589 and 1,599.

Helen R. Kanovsky, the General Counsel of HUD, has provided a declaration supporting the assertion of the deliberative process privilege over 11 of the Challenged Documents.  *See* HUD Dec.  Ms. Kanovsky affirms that her determination to assert the privilege is based on, among other things, her own personal review of these 11 Challenged Documents.  *Id.* ¶¶ 5-6. Ms. Kanovsky also identifies the agency policy or decision implicated by each of these 11 Challenged Documents, namely: (1) how HUD would officially respond to the above-referenced HUD OIG audit report; (2) whether (and, if so, how) HUD would change its existing agency policies by implementing particular proposed rules; and (3) whether (and, if so, how) HUD, through the MRB, would sanction a particular lender for violating HUD/FHA requirements.  *See id.* ¶ 8.  Because each of these 11 Challenged Documents is a draft or reflects a link in the chain of a final agency decision, each document is both pre-decisional and also "related to the process by which policies are formulated," *Brennan Cent.*, 697 F.3d at 194, that is, the process by which agency decisions or policies are shaped and finalized over time through the iterative process of drafting, commenting, and editing.  *See* HUD Dec. ¶ 8.  Furthermore, Ms. Kanovsky also identifies the harms that would be caused by disclosure of any of these 11 Challenged Documents, which include the inhibition of honest deliberation with respect to agency policies and decisions, and confusion to the public resulting from the disclosure of non-final agency action.  *See id.*  For these reasons, the Government has properly asserted the deliberative process privilege over each of these 11 Challenged Documents.

Nor can Wells Fargo demonstrate a need for these 11 Challenged Documents that is sufficient to overcome the deliberative process privilege.  When considering whether a party seeking the disclosure of deliberative process materials has shown sufficient need, courts in this Circuit may consider a number of factors, including: "(1) the relevance of the requested materials to the [requesting party's] case, (2) the importance of the materials to the [requesting party's] case, including availability of the information from alternative sources, (3) the strength of the [requesting party's] case, and (4) the importance [of disclosure] to the public interest."  *See Stinson*, 304 F.R.D. at 436.  On balance, these factors do not weigh in favor of disclosure of these Challenged Documents.

The relevance and importance of these 11 Challenged Documents to Wells Fargo's case is tenuous, at best.  Drafts and other documents reflecting non-final agency views do not reliably reflect the agency's ultimate interpretation and enforcement of its requirements relating to the DE program.  These 11 Challenged Documents therefore have little or no significance to this case.  Indeed, what agency personnel may have said or proposed in connection with (1) considering how to respond to the referenced HUD OIG audit report (Privilege Log ID Nos. 16,157, 16,189, 23,377 and 23,564), (2) evaluating proposed agency rules (Privilege Log ID Nos. 16,170, 13,773 and 13,702), and (3) advising the MRB as to whether to sanction a particular lender for discrete conduct (Privilege Log ID Nos. 1,586, 1,588, 1,589 and 1,599) is beside the point.  What is relevant are the agency's final actions.  Moreover, the disclosure of these pre-decisional and deliberative documents would serve no discernible public interest.  To the contrary, disclosing these documents would inhibit honest and frank agency deliberations and potentially cause public confusion about HUD's policies and requirements.  *See* HUD Dec. ¶ 8. For these reasons, Wells Fargo cannot show a need for the disclosure of these 11 Challenged Documents that is sufficient to overcome the deliberative process privilege.

    **C.  The Government Has Properly Asserted the Attorney Client and Work Product Privileges Over Five of the Challenged Documents.**[4]  The attorney client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *see In re County of Erie*, 473 F.3d 413, 418-19 (2d Cir. 2007).  If a document is protected by the attorney client privilege, it cannot be obtained through discovery.  *See Mejia*, 655 F.3d at 132.  The work product privilege protects "materials prepared by or at the behest of counsel in anticipation of litigation or for trial."  *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003); *see* Fed. R. Civ. P. 26(b)(3)(A).  Although the protection of the work product privilege is not absolute, the party seeking disclosure must meet a high threshold to overcome the privilege.  Specifically, for fact work product, such party must show a "substantial need" for disclosure, and for opinion work product, such party must make an even greater showing of need — one that is virtually impossible to meet.  *See In re Grand Jury Proceedings*, 219 F.3d 175, 190-91 (2d Cir. 2000); *see also United States v. Ghavami*, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012) ("the mental processes of an attorney — opinion work product — is entitled to virtually absolute protection").

    The five Challenged Documents over which HUD is asserting the attorney client and work product privileges — the four above-referenced charts reflecting legal advice to the MRB, and the above-referenced memorandum to DOJ requesting authority to institute a PFCRA action — qualify for those privileges.  With respect to the charts, they are covered by the attorney client privilege because:  (1) they were prepared by a HUD OGC attorney "in connection with his role as counsel to [the MRB]"; (2) they were prepared "for purposes of providing legal advice to the MRB as to whether it should impose sanctions on a particular lender"; and (3) HUD intended them to be, and has taken steps to keep them, confidential.  HUD Dec. ¶ 8 (stating that "each document is stamped: 'PRIVILEGED and CONFIDENTIAL:   DO NOT RELEASE ATTORNEY CLIENT, WORK PRODUCT AND DELIBERATIVE PROCESS PRIVILEGES APPLY,'" and that "HUD has taken steps to keep these documents confidential, as reflected by their withholding in this litigation").  The charts are also protected by the work product privilege because they were prepared in anticipation of litigation; "indeed, the imposition of a sanction by the MRB could lead to litigation, and has led to litigation in the past."  *Id.*

    Similarly, the PFCRA referral memo qualifies for the attorney client privilege because (1) it was prepared by HUD OGC, HUD's counsel for purposes of this PFCRA referral; (2) it reflects legal advice that HUD OGC "would have . . . provided to HUD . . . for purposes of advising HUD as to whether the agency should move forward with [the] PFCRA action"; and (3) "[m]emoranda such as these are intended to be kept confidential, and the agency treats them as confidential."  *See id.* ¶ 9.  The memo was also prepared in anticipation of litigation (namely, an action under PFCRA), and therefore also qualifies for the work product privilege.  *Id.*

---

    [4] The five Challenged Documents over which HUD is claiming attorney client and work product privileges are identified herein and in the HUD Dec. as Privilege Log ID Nos. 1,586, 1,588, 1,589, 1,599 and 18,416.

Because the five above-referenced documents all fall within the scope of the attorney client privilege, it is irrelevant whether Wells Fargo could make a showing of need to overcome the work product privilege.  In any event, it cannot.  Even as to any fact work product in these documents, Wells Fargo cannot make the required showing; it cannot show that it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  The Government has produced countless pages of documents reflecting how HUD administers the FHA program, including documents reflecting enforcement-related actions taken by or on behalf of HUD.  Moreover, significant portions of the withheld documents reflect "mental impressions, conclusions, opinions, or legal theories of [HUD's] attorney[s]" which are subject to near absolute protection.  *Id.* 26(b)(3)(B); *see Ghavami*, 882 F. Supp. 2d at 540.

Accordingly, the Government respectfully requests that the Court reject Wells Fargo's effort to obtain any of the 12 Challenged Documents.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:   */s/ Christopher B. Harwood*
JEFFREY S. OESTERICHER
REBECCA S. TINIO
CHRISTOPHER B. HARWOOD
CALEB HAYES-DEATS
DOMINIKA TARCZYNSKA
Assistant United States Attorneys
Tel:   (212) 637-2698/2774/2728/2699
Fax:   (212) 637-2730