Douglas W. Baruch, *pro hac vice*
Jennifer M. Wollenberg, *pro hac vice*
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
801 17th Street NW
Washington, DC 20006
(202) 639-7000
douglas.baruch@friedfrank.com
jennifer.wollenberg@friedfrank.com

William F. Johnson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
wjohnson@kslaw.com

Attorneys for Defendant
   Wells Fargo Bank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>- against -<br><br>WELLS FARGO BANK, N.A. and KURT LOFRANO,<br><br>                              Defendants. | 12 Civ. 7527 (JMF) (JCF)<br><br>ECF CASE<br><br>**WELLS FARGO BANK N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE RE-PRODUCTION OF "CLAWED BACK" DOCUMENTS AND AN ADEQUATE AND COMPLETE PRIVILEGE LOG FROM PLAINTIFF** |

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................................................................... 1

II.    RELEVANT FACTS ........................................................................................................... 3

    A.    Early Signs of Inadequate Government Review of Its Document Production ................................................................................................ 3

    B.    The Government Was on Notice by March 2015 of the Potential for Waiver ...................................................................................................... 4

    C.    The Government Disrupts Discovery by "Clawing Back" Additional Documents ............................................................................................... 6

    D.    The Government's Eleventh-Hour "Clawback" of 1,000 Additional Documents ............................................................................................... 7

    E.    The Government's Inadequate Privilege Log(s) ......................................... 9

III.    ARGUMENT ..................................................................................................................... 13

    A.    The Government Waived the Right to Assert Privilege over the May 15 Documents ............................................................................................... 15

        1.    After Being Placed on Notice, the Government Did Not Act Promptly to Protect Its Privileges ........................................... 16

        2.    Wells Fargo Would Be Prejudiced If the Government Is Permitted to Belatedly Assert Privilege over the May 15 Documents ..................... 18

        3.    The Protective Order Does Not Alter the Analysis of Whether the Government's Post-Notice Actions Were Reasonable ............................ 19

    B.    The Government Has Failed Properly to Assert Privilege Through Its Inadequate Privilege Log ....................................................................... 21

        1.    Wells Fargo's Numerous Attempts to Obtain Adequate Information ................................................................................... 21

        2.    The Government's Privilege Log Remains Seriously Inadequate ........... 23

IV.    CONCLUSION ................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Bensel v. Air Line Pilots Ass'n*,
248 F.R.D. 177 (D.N.J. 2008) ................................................................................ 17

*Clark v. J.P. Morgan Chase & Co.*,
No. 08 Civ. 02400(CM)(DF), 2009 WL 970940 (S.D.N.Y. Apr. 10, 2009) ................... 18

*Fed. Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*,
138 F.R.D. 479 (E.D. Va. 1991) .............................................................................. 16

*Jacob v. Duane Reade, Inc.*,
No. 11 Civ. 0160(JMO)(THK), 2012 WL 651536 (S.D.N.Y. Feb. 28, 2012)............ 14, 18

*JSMS Rural LP v. GMG Cap. Partners III LP*,
No. 04 Civ. 8591 SAS MHD, 2006 WL 1520087 (S.D.N.Y. June 1, 2006) ............. 18–19

*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*,
No. 06cv2804 BTM (WMc), 2010 WL 275083 (S.D. Cal. Jan. 13, 2010)................ 14, 16

*SEC v. Yorkville Advisors, LLC*,
300 F.R.D. 152 (S.D.N.Y. 2014) ..................................................................... 21, 24, 25

*United States v. Citgo Petroleum Corp.*,
No. Cr. C-06-563, 2007 WL 1125792 (S.D. Tex. Apr. 16, 2007) ................................... 14

*United States v. Constr. Prod. Research, Inc.*,
73 F.3d 464 (2d Cir. 1996)..................................................................................... 24

*Zivali v. AT&T Mobility LLC*,
No. 08 Civ. 10310(JSR), 2010 WL 5065963 (S.D.N.Y. Dec. 6, 2010).......................... 20

## RULES

Federal Rules of Civil Procedure
26.............................................................................................................. 21
37............................................................................................................... 1

Federal Rule of Evidence 502 .......................................................................... 13

SDNY Local Rule 26.2 ..................................................................................... 21

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this memorandum of law in support of its Motion, pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, for an order (1) declaring that Plaintiff United States (the "Government") has waived any privileges with respect to the approximately 1,000 documents it "clawed back" on the last day of fact discovery and compelling the Government to re-produce those documents; (2) requiring the Government to provide an adequate and complete privilege log so that Defendants can fairly assess and challenge, as necessary, the Government's privilege assertions (or else deem waived those privilege assertions for which appropriate information has not been provided); and (3) granting such other and further relief as the Court deems just and proper.[1]  As set forth below, good cause exists to grant the relief sought herein because the Government failed timely to address the issue after Wells Fargo placed the Government on notice that its privilege review was deeply flawed and because the Government has not complied with its obligation to provide a log containing the detail necessary to evaluate the Government's various privilege assertions.

## I.  INTRODUCTION

This Motion is prompted, in the first instance, by the Government's action at the close of fact discovery.  In particular, on May 15, 2015, with less than three hours left in fact discovery, the Government *first* notified Defendants that it was asserting privilege on and "clawing back" more than 1,000 documents produced by the Government over the course of the previous weeks and months (the "May 15 Documents").  This sweeping clawback – which came without

---

[1]  The parties have met and conferred in good faith regarding Defendants' issues with the Government's privilege assertions, including issues regarding the clawbacks and privilege log, on numerous occasions since March 2015, including via conference calls, in person during breaks in depositions, and via email.  The most recent meet-and-confer occurred on June 23, 2015.  The parties have been unable to resolve these issues.  During the status hearing on May 18, 2015, the Court granted Defendants leave to brief unresolved issues with respect to the Government's privilege assertions.

forewarning to either Wells Fargo or the Court – has had an enormous impact on discovery by disrupting Wells Fargo's settled expectations concerning its ability to use the May 15 Documents in this litigation.  The Government has posited no justification for failing to take prompt action to mitigate the problem earlier, particularly given that Wells Fargo told the Government in late March that privileged documents that Wells Fargo had identified in the Government's production were likely only the "tip of the iceberg."  The Government's attempt to use the Protective Order as a safe harbor for its conduct (Dkt. 225, at 2 n.3) does not withstand scrutiny, since the Government's logic would mean that the Government has no duty to assert privilege at all, even after it received notice of potentially privileged documents having been produced, until Wells Fargo attempts to use a Government document in summary judgment or at trial.

Moreover, independent of their timing, the Government's privilege assertions – as logged for the various "clawback" documents as well as the other documents being withheld by the Government – are deficient.  The Federal Rules require a party withholding documents on the basis of privilege to provide sufficient information about the content of those documents to enable other parties to assess the privilege claims.  But from the time the Government first served its privilege log – eight weeks before the close of fact discovery (even though it had sixteen *months* from when Wells Fargo first served document requests to prepare its log) – until today – more than five weeks after the close of fact discovery – that log has been incomplete and inadequate.  As a result, Wells Fargo has been forced to engage in piecemeal negotiations with the Government in an effort to obtain the information necessary to evaluate whether (1) documents on the Government's privilege logs are relevant to this case, (2) whether those same documents are privileged, and (3) whether the privilege assertions – if legitimate – can be overcome, especially given that most of the claimed privileges (*i.e.*, investigative and

deliberative process) are conditional or qualified.  Beyond being piecemeal, these negotiations

face an additional impediment: the Government's reluctance to provide information about certain

documents, using the excuse that Wells Fargo's questions are untimely (even as the Government

admits that its log is both incomplete and still being revised).[2]

## II.    RELEVANT FACTS

### A.    Early Signs of Inadequate Government Review of Its Document Production

1.     The Government's privilege issues should not be viewed in a vacuum.  Indeed,

Wells Fargo previously alerted the Court to the fact that the Government did not appear to be

properly reviewing its documents to determine whether the millions of pages it was producing

were in fact responsive to Wells Fargo's document requests.  (*See* Dkt. 143.)  As a result, Wells

Fargo estimated that more than three quarters of the documents the Government had produced (at

that time) were not in fact relevant to the issues in the case (or responsive to any Wells Fargo

request).  (Dkt. 143, at 9 (Decl. of J. Griset ¶ 4).)

2.     The Government attempted to justify its data-dumping approach by claiming that

Wells Fargo's document requests were too broad (Dkt. 145, at 3), but the Government never

denied the fact that it did not fully review its documents before producing them.  Instead, the

Government admitted that it relied on some unspecified "sample" to identify non-responsive

documents.  (*See* Dkt. 145, at 4 ("[T]he Government sampled the results of its searches, devised

separate search terms for identifying non-responsive documents, and is withholding those non-

responsive documents from its productions.").)

3.     This Court ultimately chose not to sanction the Government for its overproduction

of documents, reasoning that Wells Fargo had the means to sort through the morass of data

---

[2]    The Government also has refused to facilitate an orderly challenge of the May 15 Documents by refusing to
allow Defendants to review them again for the limited purpose of narrowing the privilege assertions at issue.

electronically (Dkt. 146), but the Court certainly did not give *carte blanche* to the Government with respect to any legal consequences resulting from the Government's decision not to fully review its documents before producing them to Wells Fargo.  In particular, the Government did not ask for, nor did this Court grant, any advance relief to the Government with respect to any privileged material that the Government produced and then failed to claw back in a timely manner.  Nor did the Government ask for or receive any dispensation from the requirement to fully substantiate its asserted privileges.

4.      To the contrary, the Government assured the Court that its review process was reasonable and that the instances of over-production identified by Wells Fargo were isolated and overstated.  (Dkt. 145, at 4–5.)  In other words, the Government's position was that its document review process was under control and that it was easy to separate out relevant documents with searches, something presumably equally true for the Government with respect to separating out potentially privileged documents.  (Dkt. 145, at 5 ("Wells Fargo can run searches, identify relevant documents, and use those documents to identify other potential topics of inquiry.  These capabilities provide Wells Fargo with an ample opportunity to litigate this case.").)

**B.      The Government Was on Notice by March 2015 of the Potential for Waiver**

5.      In the course of reviewing documents in preparation for depositions, on March 30, 2015, Wells Fargo identified nearly twenty documents produced by the Government that – while not marked "privileged" – appeared to refer to government attorneys, litigation, and/or investigations.  *See* Declaration of Kayla Stachniak Kaplan ("Kaplan Decl.") ¶¶ 3–5, Ex. A. Since many of these documents were relevant to the deposition of a HUD-OIG witness scheduled for March 31, 2015, Wells Fargo asked the Government to clarify immediately whether it had intended to assert any privileges over these documents.  *Id.*

4

6.       The Government responded by claiming unspecified privileges over the Wells Fargo-identified documents and demanding that Wells Fargo return, sequester, or destroy the documents and all copies thereof.   Kaplan Decl. Ex. A.   The Government provided no explanation as to why it failed to identify these documents before production or what measures it had put in place to identify any potentially privileged documents prior to production.

7.       On March 31, 2015, Wells Fargo notified the Government that it would sequester the identified documents.  Kaplan Decl. Ex. A.  As a result, even though it had intended to do so, Wells Fargo was unable to use any of these documents in depositions of Government personnel. Kaplan Decl. ¶ 6.

8.       In that same email on March 31, Wells Fargo informed the Government that it believed that the eighteen documents it had identified as potentially privileged, which the Government had then clawed back, were just the "tip of the iceberg" with respect to potentially privileged documents included in the Government's production and that it appeared that the Government had not properly reviewed its documents for privilege.  Kaplan Decl. Ex. A.

9.       Wells Fargo further reminded the Government that it – and not Wells Fargo – was obliged to determine how to address the prospect that the Government had produced substantial numbers of privileged documents.  Kaplan Decl. Ex. A.  Specifically, Wells Fargo notified the Government that Wells Fargo did not bear the burden of conducting the Government's privilege review.  *Id.*

10.       Finally, in that same March 31 notice, Wells Fargo told the Government that Wells Fargo would consider the Government to have waived any privileges with respect to other documents produced in this litigation if the Government did not promptly conduct a privilege review and identify any other already-produced documents over which it intended to claim

privilege.   Kaplan Decl. Ex. A.   Wells Fargo also made clear that it was relying on the documents produced by the Government in preparation for depositions.  *Id.*

**C.**     **The Government Disrupts Discovery by "Clawing Back" Additional Documents**

11.     On April 3, 2015, the Government produced its first "claw back privilege log." Kaplan Decl. ¶¶ 7–9, Ex. B.  This log included the eighteen documents that had been identified by Wells Fargo on March 30, 2015 and an additional fifteen documents that were duplicates of those documents.  *Id.*

12.     Also on April 3, the Government identified 242 other documents, explaining that "[t]o date, we have identified the additional privileged documents ... that were inadvertently produced."  Kaplan Decl. ¶¶ 8–9, Ex. B.

13.     In addition, the Government asserted its ability to request the return of documents at any point in time, not subject to what it called an "arbitrary deadline."  Kaplan Decl. Ex. B.

14.     Even though it knew or should have known by then that the documents it had produced to Wells Fargo contained additional privileged material, and therefore that whatever review process it had employed was not effective, the Government did not ask the Court for any relief.  Specifically, the Government did not request that the Court order Wells Fargo to cease its review and use of Government-produced documents pending a full Government privilege review of already-produced documents.

15.     The Government then proceeded to claw back additional "inadvertently produced" documents on April 13, April 22, April 28, and May 10, 2015, totaling nineteen documents and including several deposition exhibits.  Kaplan Decl. ¶¶ 10–14, Ex. C–F.

16.     The Government's clawback of documents on purported privilege grounds during the time-limited deposition period of March 18 through May 15 was extremely prejudicial to Wells Fargo.  For the Government to deprive Wells Fargo of the use of documents that it had in

its possession for weeks and months was unfair and highly disruptive, particularly as Wells Fargo relied on those documents in identifying which HUD and HUD-OIG personnel to depose and what written discovery to propound.

17.    In one example, on the eve of the April 29, 2015 deposition of HUD-OIG auditor Paul Zausen – at 10:53 P.M. – the Government first informed Wells Fargo that thirteen "privileged documents [ ] were inadvertently produced."  Kaplan Decl. ¶ 15, Ex. E.  This clawback left Wells Fargo to scramble to re-evaluate its planned deposition exhibits.  More importantly, Mr. Zausen is a key fact witness who will verify that the Justice Department was on notice of the facts material to the self-reporting allegations years before the Government's Complaint alleges that the Justice Department had such notice (Dkt. 77 ¶ 140).  Some of these documents clawed back on the eve of deposition go directly to this issue and are important to Defendants' False Claims Act ("FCA") statute of limitations defense.  *See* Kaplan Decl. ¶ 15.

**D.**     **The Government's Eleventh-Hour "Clawback" of 1,000 Additional Documents**

18.    On the night of May 15, 2015, the last day of fact discovery – *and after the parties had conducted sixty-nine depositions* – the Government purported to claw back over 1,000 additional documents, claiming that they too had been inadvertently produced.  Kaplan Decl. Ex. G.  The Government did not explain how such a massive volume of documents could have been "inadvertently" produced or why they were being clawed back at that point, weeks after Wells Fargo had first notified the Government about its privilege review shortcomings and the need for the Government to act swiftly in any attempt to assert privilege on documents it had produced in order to avoid prejudice to Defendants.

19.    The Government demanded that Wells Fargo destroy, return, or sequester all of the May 15 Documents (1,056 in total).  *Id.*  In turn, Wells Fargo immediately alerted the Court to this unprecedented action at the May 18, 2015 status hearing.

20.     On May 26, 2015, over ten days after the close of fact discovery, the Government produced its fifth "Clawback Privilege Log," which included nearly 1,000 of the 1,056 documents listed in its May 15, 2015 email.  Kaplan Decl. Ex. K–L.  Again calling into question the legitimacy (apart from the timeliness) of the Government's privilege assertions, the Government withdrew its assertion of privilege over sixty-one of the May 15 Documents.[3] Kaplan Decl. ¶ 28.

21.     Based on the Government's log, the Government is asserting the conditional investigative and/or deliberative process privileges as the sole bases for withholding twenty-two percent of the May 15 Documents.  Kaplan Decl. ¶ 29.

22.     The May 15 Documents include ones that were shown to witnesses and marked as exhibits in depositions.  One document was an email attachment that was marked as part of an exhibit in the May 4, 2015 deposition of HUD witness David Corley Audorff.  Kaplan Decl. ¶ 20.  When Wells Fargo examined Mr. Audorff, the Government did not claim privilege.  *Id.* Nor did the Government inform Wells Fargo that it intended to assert privilege over that document or claw it back before May 15, 2015.

23.     Defendants marked and used another document in *four different depositions* before the Government demanded, on May 15, that it be sequestered or destroyed:  the April 28, 2015 deposition of Teresita Lirio; the April 30, 2015 deposition of Osiko Tekpetey; the May 13, 2015 deposition of Andrew Cianci; and the May 15, 2015 deposition of Philip Caulfield.  Kaplan Decl. ¶ 21.  The Government did not even raise the prospect of asserting privilege over the

---

[3]   One of these was a key document in the litigation – the self-reporting spreadsheet at US-HUD-12292327. Despite relying on this document in an email on May 15 in an effort to avoid designating Rule 30(b)(6) witnesses, the Government attempted to claw back the spreadsheet that very day.  Only after counsel for Mr. Lofrano questioned that action did the Government withdraw its clawback of US-HUD-12292327 and state that its inclusion among the May 15 Documents was "due to a coding error."  Kaplan Decl. ¶¶ 23–27, Ex. I–J.

document in three of the depositions.  *Id.*  In the deposition of Ms. Tekpetey, Government counsel noted that the document *might* be privileged, but, because he was "not a hundred percent sure," he permitted the exhibit to be marked and the witness to be questioned regarding the substance of the document.  Kaplan Decl. Ex. 22.  The Government did not take any action as to this document until May 15 – fifteen days and multiple depositions later.

24.    Given these delays, Wells Fargo fairly assumed that the Government was not going to claim privilege over those two documents or like documents.

25.    Altogether, the Government clawed back approximately 1,000 documents on privilege grounds on the very last day of fact discovery, after the Government had already been on notice with respect to the production of potentially privileged materials for seven weeks. These 1,000 documents all had been in Defendants' possession and many had been used by Defendants to pursue discovery and as evidence in this litigation.

**E.    The Government's Inadequate Privilege Log(s)**

26.    The Government first produced a privilege log on March 22, 2015, after having received requests for production sixteen months earlier, on November 21, 2013.  Kaplan Decl. ¶¶ 32–33.

27.    This initial privilege log included over 41,000 entries but was wholly deficient in form (as well as content).  For instance, wording in the "Sender/Author," "Addressee(s)," and "Other Recipient(s)" columns were frequently cut off, rendering the log unreadable and incomplete.  Defendants demanded a corrected version.  Kaplan Decl. ¶ 35.  The Government did not respond until eight days later, on March 30, 2015.  *Id.* ¶ 36.

28.    The readable version of the Government's log exposed additional deficiencies. On April 3, 2015, Wells Fargo identified several of these deficiencies and asked that the Government provide a corrected log.  These deficiencies included (a) a lack of any indication of

the role of counsel in purportedly privileged material (such as by identifying those individuals who were counsel); (b) a lack of any identification of family relationship among documents, such as emails and their attachments, even where the privilege appeared to rely on that family relationship; (c) identification of numerous communications with third parties with no description of how any privilege survived; (d) only three redactions out of over 41,000 entries, indicating that non-privileged material was being improperly withheld; (e) descriptions lacking any content that would allow Defendants to evaluate the privilege (*e.g.*, "Privileged – deliberative process"; "Privilege, all"; "Duplicate"); and (f) descriptions authored by the Government that indicated the draft and haphazard nature of the log (*e.g.*, "Not privileged, but confidential"; "if no parties are attorneys, it may not be privileged"; "review for privilege"). Kaplan Decl. Ex. O.

29.     When four days passed with no response from the Government – and with time in the fact discovery period quickly running out – Wells Fargo pushed for a meet-and-confer, prompting the Government to provide a written response which focused on addressing only the specific examples Wells Fargo had included in its communication.  Kaplan Decl. ¶¶ 40–42.  On April 10, the Government indicated it would "be providing an amended privilege log" after "rereviewing the descriptions on the log," "supplementing descriptions as appropriate," and "considering whether documents that are withheld in full should be produced in redacted form ... on a rolling basis."  Kaplan Decl. Ex. P.

30.     On April 13 – still lacking any sort of amended privilege log or adequate descriptions – Defendants specifically questioned a number of entries and asked that the Government prioritize them in its re-review of the log, while at the same time explicitly

reserving the right to question additional entries and without waiving arguments with respect to the deficiencies in the privilege log.  Kaplan Decl. Ex. Q.

31.    On April 21, the Government served a revised privilege log, *removing over 18,000 log entries* but continuing to use facially insufficient descriptions, such as 802 entries reading "Removed to be redacted and produced," with no description at all of the redacted material the Government continued to withhold.  Kaplan Decl. ¶¶ 45–47.

32.    With no substantive response to its specific challenges forthcoming and still unable to evaluate the amended log due to deficient entries, Wells Fargo followed up on April 28 and was forced to ask the Government to identify the entries on its log that related to some of the key areas of interest to Wells Fargo – since the Government's inadequate descriptions did not provide this basic subject matter information.  The Government then ran a narrow set of five search strings across its withheld documents and provided five lists on May 5 of the documents that resulted from those searches.  Kaplan Decl. ¶¶ 48–52, Ex. S–U.[4]

33.    On May 13, Wells Fargo again informed the Government that its privilege log remained seriously inadequate and continued to have entries such as "Draft version of proposed rule memo" – without noting which rule was involved – and "Draft version of an audit report for discussion and comment" – without indicating which audit or which lender was involved.  Kaplan Decl. Ex. V.  The Government then began providing additional information – in a piecemeal fashion – for entries that Wells Fargo specifically questioned.  However, this did not address the numerous inadequate entries on the log as a whole.

---

[4]    But Wells Fargo had to seek additional information from the Government with respect to many of those entries, resulting in the Government "discretionarily releasing" 34 of the documents for production on May 6, an additional 3 documents on May 20, and an additional 80 documents on June 5.  That process did not conclude until June 19, 2015 – the day the Government's briefing was due to the Court – when the Government identified yet another six documents that it was "discretionarily" releasing.  Kaplan Decl. ¶¶ 50, 74.

34.     On May 19, Wells Fargo again demanded a complete and updated privilege log. On May 20, the Government produced a revised log (which had to be re-produced on May 22 because the original revised version was once again unreadable), but the log was only updated to reflect documents produced in full or part, not to amend descriptions.  Kaplan Decl. ¶¶ 56–59, Ex. W–X.  Indeed, the log included a large number of additional entries that had been removed for production, once again indicating the Government's original privilege claims were ill-conceived.  *Id.* ¶ 60.

35.     On both May 27 and 28, Wells Fargo indicated to the Government that it would be questioning additional documents.  Kaplan Decl. ¶¶ 61–62, Ex. Y.  On June 2, Wells Fargo repeated the issue first raised on April 3 about the overall inadequacy of the Government's privilege log and asked that the Government provide additional information with respect to three additional categories of documents – information not discernible from the log entries: (a) pre-2011 DOJ communications regarding anticipated Program Fraud Civil Remedies Act ("PFCRA") actions against Wells Fargo; (b) pre-2011 communications between HUD (including HUD-OIG) and DOJ involving reviews or audits of Wells Fargo; and (c) intra-HUD (including HUD-OIG) communications reflecting internal comments or discussion on reviews or audits involving Wells Fargo's conduct during the 2001 through 2010 time period.  Kaplan Decl. Ex. Z.

36.     On June 6, the Government asserted that these June 2 requests by Wells Fargo were untimely, but two days later agreed to run one narrow search string that did not adequately address all three of Wells Fargo's categories.[5]  Kaplan Decl. ¶¶ 65–66, Ex. AA.  This was especially concerning to Wells Fargo since it had just learned that the Government's log was

---

[5]     On June 21, however, the Government reversed course and refused to further address Wells Fargo's June 2 inquiries unless Wells Fargo represented that those inquiries "comprise[d] your sole remaining challenges to documents that we logged prior to June 1."  Kaplan Decl. Ex. DD.

deficient in another respect – *it included entire "files" of documents logged as single entries and did not reveal that non-privileged documents/information within those files also were being withheld*.  Kaplan Decl. ¶ 67.

37.     During a meet-and-confer on June 10, Defendants also learned for the first time that the Government had neither completed its document production nor served its final, complete privilege log.  On June 10 and again on June 12, the Government refused to provide an estimate as to when the final log would be served (or when its production would be complete).  Kaplan Decl. ¶ 68.  On June 23, the Government finally expressed its "hope" that its production would be completed by mid-July with a privilege log to follow "shortly thereafter."  *Id.* ¶ 77.

38.     On June 18, the Government served an "updated privilege log" and identified the non-privileged documents that it had since produced from the few specifically questioned "files" that had been logged.  Kaplan Decl. Ex. BB.

39.     The Government's privilege log remains seriously deficient in a number of ways, including: vague entries, a lack of subject matter details (such as the basic metadata of file names or email subjects), clear mistakes (for example, "attorney-client privilege" stamped on redacted documents where the corresponding log entry claims only "deliberative process" privilege), and no means for identifying how many other "files" and non-privileged documents/information are being improperly swept-up in the Government's privilege claims.  *See* Kaplan Decl. ¶¶ 71–73, Ex. CC.

## III.    ARGUMENT

The Government should not be permitted to claw back the May 15 Documents, and it should be compelled to provide a complete and compliant privilege log that the parties can use to identify the subset of documents over which challenges may be necessary.

While the circumstances here are unique, some of the same factors courts use in assessing whether privileges have been waived under Fed. R. Evid. 502(b) by "inadvertent disclosure" are also applicable when the disclosing party sits on its rights – unreasonably – and, in doing so, prejudices the receiving party.  *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WMc), 2010 WL 275083, at *4–5 (S.D. Cal. Jan. 13, 2010) (applying Rule 502(b) factors to disclosing party's failure to take reasonable steps to rectify disclosure errors after notice even where Protective Order stated that inadvertent disclosure "shall not constitute a waiver of any privilege").  Thus cases under Rule 502(b) are instructive in these particular circumstances.  Indeed, in assessing the propriety of a clawback, courts regularly evaluate (a) the reasonableness of any precautions to prevent the disclosure of privileged documents in the first instance, (b) the reasonableness of any steps taken to rectify the error after being put on notice of potential disclosure, and (c) the prejudice to the opposing party of allowing any clawback.[6]

Wells Fargo is not relying on the Government's original failure to properly or reasonably review its documents for privilege prior to production as a basis for a finding of waiver.  Nor is Wells Fargo challenging the Government's pre-May 15 clawbacks.  However, this history provides background regarding the notice the Government received in March 2015 and the Government's delay with respect to clawing back the May 15 Documents.  The Government's late attempt to assert privilege over the May 15 Documents is wholly improper, particularly given that these documents were available to and used by Wells Fargo to make strategic decisions during the fact discovery period that has now ended.  Under these circumstances, to the

---

[6]    *See Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160(JMO)(THK), 2012 WL 651536, at *4–6 (S.D.N.Y. Feb. 28, 2012) (finding that privilege was waived as to inadvertently disclosed document for which "numerous red flags" existed "that should have suggested" to disclosing party's counsel that the document, which was the subject of deposition questioning, was likely to contain privileged information); *United States v. Citgo Petroleum Corp.*, No. Cr. C-06-563, 2007 WL 1125792, at *4–5 (S.D. Tex. Apr. 16, 2007) (agreeing with the United States that defendant's disclosure constituted waiver of privilege and that it should not "be relieved of the consequences of [its] carelessness").

extent that the Government ever had any legitimate privilege claims over the May 15 Documents, the Court should deem those waived and order the Government to re-produce the documents.

In addition, the Government also has failed properly to assert privileges through its deficient privilege log.  Wells Fargo repeatedly notified the Government that the descriptions on its privilege log were vague and lacked the information necessary to enable Defendants to assess the claims of privilege.  The Court, too, commented on and expressed dismay over the essentially rough draft condition of the Government's initial privilege log.  (Dkt. 183, at 2–3.)  However, despite serving three revisions to its log (and a number of so-called clawback logs), the Government has not corrected this fundamental flaw and, instead, has only engaged with Defendants with respect to the specific exemplar entries Defendants identified among the vague log descriptions provided to date.  The Court should order the Government to provide a privilege log that complies with the Federal Rules (or else deem those privilege assertions for which appropriate information has not been provided waived).  In addition, the Court should allow Defendants additional time to review and challenge this revised log.

A. __The Government Waived the Right to Assert Privilege over the May 15 Documents__

The Government did not properly address its production of potentially privileged documents, even after being put on notice of the issue.  In fact, in late March 2015, Wells Fargo identified a swath of potentially privileged documents among the Government's production and specifically warned the Government that these documents likely were indicative of a much deeper problem in terms of privileged documents among the Government's production.[7]  The

---

[7]   The Government was arguably on notice even earlier as a result of the March 18, 2015 deposition of Julie Shaffer, during which the Government indicated that it was considering clawing back an exhibit marked at the deposition.

Government's failure to act promptly to protect any privileges with respect to the May 15 Documents, especially after being specifically informed that Wells Fargo was using and relying on those documents in fact discovery, must in fairness result in waiver.

**1.     After Being Placed on Notice, the Government Did Not Act Promptly to Protect Its Privileges**

The Government has no excuse for not acting swiftly to mitigate the problem going forward once it was placed on notice that its initial privilege review methodology – whatever it was – was not adequate.   Instead, following Wells Fargo's notice to the Government on March 31 that the Government's privilege disclosures likely were widespread, the Government failed to act quickly and appropriately.  *See Fed. Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 483 (E.D. Va. 1991) (finding that the efforts taken to rectify the error weighed in favor of waiver where disclosing party, upon learning of an inadvertent disclosure, should have "reviewed the documents produced once again to ensure that other privileged documents were not overlooked"); *cf. Luna Gaming-San Diego, LLC*, 2010 WL 275083, at *5 (holding that plaintiff's failure to object or ask for the return of the document after the opportunity to review the document at a deposition and after a two-minute exchange during the deposition regarding the document waived the privilege with respect to the document, *even in the face of an explicit Protective Order stating that inadvertent disclosure of any privileged documents shall not constitute a waiver of any privilege*).

The Government did claw back an extensive list of 242 documents on April 3, 2015, and a handful of deposition exhibits thereafter, and Wells Fargo does not challenge the circumstances of those clawbacks in this Motion.  However, the 1,000-document clawback on the Friday night of the last day of fact discovery is a very different circumstance.

Remarkably, the Government did not alert Wells Fargo, prior to May 15, 2015, that it intended to claw back any large amount, much less over 1,000 additional documents, on privilege grounds.  Wells Fargo had every reason to believe that the Government's claw-back on April 3 of approximately 250 documents was the Government's reaction to the notification it received in late March.  Not only did the Government not warn Wells Fargo of its intentions, the Government also did not ask for relief from the Court, in the form of a stay of discovery or otherwise, to allow the Government to investigate and correct its production problems.  Such an application, at a minimum, would have avoided having Wells Fargo continuing to review, analyze, and make strategy decisions based on documents that the Government would much later claim are privileged.  Certainly, that list of 1,000 documents was not contemplated and compiled for the first time on May 15.  Yet, the Government did not raise its intentions until after the last deposition was finished on May 15.

The Government's conduct on May 15 reveals that the Government, after receiving notice in late March of the production of a large number of potentially privileged documents, did not promptly conduct a review or search of its documents to identify other privileged material (or, if it did, it chose to wait until the last day of fact discovery to notify Defendants of its additional privilege assertions).  After being put on notice in March 2015, the Government, at the very least, could have devised key word searches to identify government attorneys and investigators or other terms highly likely to indicate potential privilege among produced documents so that those documents could be immediately sequestered.[8]  *See Bensel v. Air Line Pilots Ass'n*, 248 F.R.D. 177, 180 (D.N.J. 2008) (finding that plaintiffs waived their privilege

---

[8]    Moreover, the Government could have – but apparently did not – undertake even the most elemental and logical precaution of quickly re-assessing the unique set of documents for a Government attorney who has been involved in this litigation for years.  Kaplan Decl. ¶ 18.

over the disclosed attorney-client communications that contained the names of the attorneys because it was "incumbent on Plaintiffs' counsel to ascertain the names of those attorneys who may appear on the set of documents being produced" for its review).  Indeed, the Government itself argued to the Court how easy it would be to run searches through its production to identify potential documents for inquiry when Wells Fargo challenged its document dumping strategy. (Dkt. 145, at 5.)  The Government's failure to act timely with respect to preserving its privileges is fully consistent with a finding of waiver.

### 2.    Wells Fargo Would Be Prejudiced If the Government Is Permitted to Belatedly Assert Privilege over the May 15 Documents

Here, the prejudice to Wells Fargo from the clawback of the May 15 Documents is manifest.  The Government identified more than 1,000 documents as privileged several weeks after they had been produced, several weeks after Wells Fargo had reviewed and relied on them in developing its discovery and case strategy, and only after Wells Fargo was deprived by the operative fact discovery cut-off date of doing anything to alter the strategic decisions it had already made in the expectation that the documents were available to Wells Fargo for expert discovery, summary judgment, and trial.[9]  *See Jacob*, 2012 WL 651536, at *2, 7 (finding that "concerns of fairness and prejudice" weighed in favor of receiving party because privileged email "had already been the subject of deposition questions and [disclosing party] so delayed in seeking the return of the email" until after fact discovery had closed); *Clark v. J.P. Morgan Chase & Co.*, No. 08 Civ. 02400(CM)(DF), 2009 WL 970940, at *7 (S.D.N.Y. Apr. 10, 2009) ("Plaintiffs should not have been forced to alter their deposition preparation at the last minute, so as to take account of Defendant's belatedly raised claim."); *JSMS Rural LP v. GMG Cap.*

---

[9]    Three of the May 15 Documents were used as deposition exhibits.  Wells Fargo had further assessed numerous of the May 15 Documents for potential use in asserting its various defenses.  Kaplan Decl. ¶¶ 19–27.

*Partners III LP*, No. 04 Civ. 8591 SAS MHD, 2006 WL 1520087, at *6 (S.D.N.Y. June 1, 2006) ("By waiting to seek relief until plaintiff had filed its opposition to the summary-judgment motion, defendants ensured that if their requested relief were subsequently granted, plaintiff's motion papers would effectively be bowdlerized, since the relief would strip from those papers key evidence on which plaintiff prominently relied in support of its position.  Such a result would be manifestly unfair to plaintiff, which was justified in assuming, when it wrote its summary-judgment papers, that all of the produced e-mails were a legitimate part of the record.").  Notably, between the time that the Government was put on notice and the time that it provided the list of over 1,000 documents, Defendants deposed thirty-five Government witnesses.

Here, where the Government's delay in asserting privilege is unjustified and the prejudice to Wells Fargo is clear, there is no valid argument for upholding the Government's claim of privilege over the May 15 Documents.  To the contrary, the Government was acutely aware of the fact discovery schedule and deadline but postponed taking appropriate action.

### 3.   The Protective Order Does Not Alter the Analysis of Whether the Government's Post-Notice Actions Were Reasonable

The Protective Order in this case (Dkt. 97) does not change the legal analysis with respect to the May 15 Documents as the Protective Order in no way countenances a clawback of this nature.[10]  Wells Fargo's notification to the Government in March 2015 of the potential enormity of the problem here and the Government's need to rectify it in some way put the Government on notice that it could not rely on the Protective Order to avoid its obligation to promptly claw back

---

[10]   While the Protective Order certainly was not intended to allow for wholesale data dumping, Wells Fargo is not asserting as a ground for this Motion the fact or circumstances of the Government's "inadvertent disclosures." Rather, the issue here is the Government's conduct in clawing back approximately 1,000 documents during the final hours of fact discovery with no warning whatsoever, after having been on notice for seven weeks of its production of potentially privileged documents and after allowing Wells Fargo to continue to rely on its production throughout the deposition period.

privileged documents.[11]   Under the Government's theory, the Government could continue to claw back documents and assert privilege right up through summary judgment and trial, no matter whether Wells Fargo relied on those documents for its defense and regardless of whether the Government was on notice that such privileged documents had been produced.   The touchstone here is whether the Government acted reasonably after being placed on notice that its privilege review was flawed and that potentially privileged documents had been produced to Defendants.

In a recent letter to the Court, the Government cited to *Zivali v. AT&T Mobility LLC*, No. 08 Civ. 10310(JSR), 2010 WL 5065963 (S.D.N.Y. Dec. 6, 2010), as supporting its conduct here. (Dkt. 225, at 2 n.3.)  But the circumstances and timing of the clawbacks at issue in *Zivali* are not analogous.  Just by way of example, that case involved *three* inadvertently produced documents that the disclosing party sought to claw back *immediately* after becoming aware of their production.  *Zivali*, 2010 WL 5065963, at *1.  But, unlike *Zivali*, the clawback attempt here involves approximately 1,000 documents first identified for "clawback" by the Government weeks and months after their production and seven weeks after the Government knew or should have known that such potentially privileged documents had been produced.   Once the Government was on notice that its limited privilege review was seriously deficient, it did nothing to protect its privilege and instead proceeded to claw back over 1,000 documents (including deposition exhibits) right at the fact discovery deadline, seriously prejudicing Wells Fargo as a result.  In short, by May 15, the Government, given the notice it had received, had waived its right to claim privilege over documents that it had produced to Defendants.

---

[11]    In its initial response, the Government adopted a cavalier attitude to its privilege assertions, claiming that it would continue apace and "as privileged documents are identified, we will request their return in accordance with the terms of the Protective Order."  Kaplan Decl. Ex. B.

**B.**     **The Government Has Failed Properly to Assert Privilege Through Its Inadequate Privilege Log**

Defendants first challenged the adequacy of the Government's privilege log on April 3, 2015, and – despite being revised three times – the log continues to violate Fed. R. Civ. P. 26(b)(5)(A)(ii) as it still contains vague, generalized descriptions that do not describe documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  This failure has made it impossible for Wells Fargo to assess the Government's privilege claims and determine which documents should be challenged. "Importantly, a party's failure to comply with the requirements of Fed. R. Civ. P. 26(b)(5) or Local Civil Rule 26.2 may result in a waiver of privilege."  *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157 (S.D.N.Y. 2014).

**1.**     **Wells Fargo's Numerous Attempts to Obtain Adequate Information**

Since April 3, Wells Fargo consistently has communicated to the Government and to the Court that Wells Fargo cannot properly assess the Government's claims of privilege over thousands of documents because the material withheld has not been adequately described.  While Wells Fargo simply could have challenged every vague entry at the outset, Wells Fargo instead attempted to work with the Government – all while continuing to demand a revised, adequate log – by asking for specific additional information regarding the Government's privilege assertions.  At first, the Government slowly released the requested information in a weeks-long process that involved the Government running searches across documents to determine their subject matter (since this information – required by SDNY Local Rule 26.2(a)(2)(A) – was not originally provided); internally reassessing those documents (and often "discretionarily" releasing a substantial portion); categorizing them by search for Defendants without in any way revising the privilege log descriptions to comply with the Rules; and then only providing

21

additional information when Defendants forced meet-and-confers and repeatedly requested the information.  Indeed, the process with respect to the 647 documents recently briefed by the Government on June 19, 2015 (Dkt. 229) began seven and a half weeks earlier on April 28, 2015.  Notably, the Government "discretionarily released" an additional six of those documents *on June 19*, the very day its brief was due to the Court.

But now, the Government has refused to continue providing additional information to Wells Fargo.  On June 2 – six business days after the Government served its second revised log – Wells Fargo sought information from the Government concerning three categories of information potentially withheld by the Government as privileged:  (1) referrals of potential PFCRA actions to DOJ, (2) communications to DOJ involving HUD/HUD-OIG reviews or audits of Wells Fargo, and (3) intra-HUD communications regarding Wells Fargo audits or reviews.  With respect to the first two topics, Wells Fargo seeks to understand whether the Government has withheld information revealing DOJ's knowledge of Wells Fargo's FHA lending practices during the time period in question, as such knowledge may satisfy the "known" or "reasonably should have been known" aspect of the FCA's statute of limitations provision.  As of now, the Government's log does not consistently indicate whether DOJ was involved in a communication, or even whether the communication was concerning Wells Fargo, and offers little detail concerning the subject matter of the communication.  As to the third category of information, Wells Fargo cannot ascertain from the Government's current log whether intra-HUD communications that have been withheld concern audits or reviews of Wells Fargo versus some other lender because the log descriptions provided by the Government are vague and lacking in detail.  This detail is important as, for example, Wells Fargo discovered that HUD officials analyzing the results of the 2004 HUD-OIG audit of Wells Fargo determined that Wells

Fargo's conduct with respect to the audit findings – which match the "reckless underwriting" Complaint allegations – did *not* represent "a wanton disregard for HUD/FHA requirements." Kaplan Decl. Ex. EE.  If similar documents have been withheld, Defendants' need for these documents, which directly contravene the scienter required under the FCA, would trump the conditional deliberative process privilege.  But the Government has indicated that it is unwilling to entertain further Wells Fargo requests for information with respect to inadequate entries on the Government's revised privilege log and clawback logs.

### 2.    The Government's Privilege Log Remains Seriously Inadequate

The latest iteration of the log, as served on June 18, 2015, includes the following illustrative entries:

- Priv. Log Entry No. 71, withheld on the basis of the deliberative process privilege, for which the entire description reads: "Email attaching draft audit report."

- Priv. Log Entry No. 374, also withheld on the basis of the deliberative process privilege, described only as "Draft of part of audit report."

- Priv. Log Entry No. 6,703, withheld on the basis of the investigative privilege, described as "Strategic Audit Plan."

- Priv. Log Entry No. 9,586, also withheld under the investigative privilege, described as "Audit questionnaire."

- Priv. Log Entry No. 39,622, withheld under the deliberative process privilege, described as "Draft version of final rule memo."

- Priv. Log Entry No. 40,000, withheld on the basis of attorney-client privilege, attorney work product, and deliberative process privilege, described as "Draft NOFA for the Federal Register - Neighborhood Stabilization Program Technical Assistance seeking comment and review."  The "File Type," "Sender/Author," "Addressee(s)," and "Other Recipient(s)" fields of the log all read: "Not in Metadata."  There is no indication of any attorney involvement whatsoever to support the Government's assertion of the attorney-dependent privileges.

*See* Kaplan Decl. Ex. CC.  There is no way that Wells Fargo can assess these privilege assertions – especially where the vast majority are reliant solely on *qualified* deliberative process and

23

investigative privileges – to determine whether the privilege exists or even whether the documents are relevant and worth challenging.  *See United States v. Constr. Prod. Research, Inc.*, 73 F.3d 464, 474 (2d Cir. 1996) (affirming district court's denial of privilege based on inadequacy of privilege log, where "descriptions and comments simply [did] not provide enough information to support the privilege claim");[12] *Yorkville Advisors, LLC*, 300 F.R.D. at 157, 163 (finding privileges – including deliberative process and attorney-client privileges – waived where subject matter descriptions were uninformative and authors/recipients were not listed for non-email/letter documents).

Indeed, the largely unsupported nature of the Government's privilege log is highlighted by the fact that, when questioned or challenged, thousands of documents have been removed from the log or "discretionarily released."  *And the Government recently admitted that it had withheld large swaths of non-privileged material from production by – without any notice to Defendants that it was doing so – including entire "files" in single entries on its privilege log.* This inappropriate withholding was only revealed when Defendants asked for additional information about a few vague entries on the Government's log, after which the Government agreed to produce "the non-privileged information within the file."  Kaplan Decl. ¶ 67.  This response only raises additional questions including:  (1) Why was the Government withholding non-privileged material in the first place?  (2) What other non-privileged material is being withheld?  (3) Does the Government have any intention of producing that material absent some specific question from Defendants about a specific entry on its nearly 1,200-*page* log?  "Neither

---

[12]    In *Constr. Prod. Research*, the Second Circuit found inadequate a privilege log containing "cursory descriptions of each document," such as the following: "(a) Fax Re: DOL Findings with comment cover sheet; (b) Fax: Whistleblower article with comment Self-explanatory; (c) Letter Re: Customer Orders with comment Re: Five Star Products; (d) Summary of Enclosures with comment Self-explanatory; etc."  73 F.3d at 473–74 (internal quotations omitted).  In many instances, the Government's privilege log entries here are even *less* descriptive.

the Federal Rules of Civil Procedure nor the Local Civil Rules permit any party to make its assertions of privilege a moving target." *Yorkville Advisors, LLC*, 300 F.R.D. at 166.

Beyond this, *the Government's production and privilege log still are not complete – more than a month after the close of fact discovery*.  And, after declining to provide any estimate as to completion for weeks, the Government has now indicated that this will not occur before mid-July but wants to claim that Defendants are limited to challenging only "new" log entries.  Wells Fargo believes that the Government's full production and full log further will reveal that the Government has waived many of its privilege assertions – as comparison among all of the documents and log entries will reveal that subject matter waiver has occurred, that the Government is inappropriately attempting to use privileges as both sword and shield, and that the Government is "discretionarily releasing" documents of little relevance and no import but withholding similarly situated documents that support Wells Fargo's defenses.

## IV.    CONCLUSION

For all the foregoing reasons, Wells Fargo respectfully requests that the Court enter an order (1) declaring that the Government has waived its right to assert privilege over the May 15 Documents and compelling the Government to re-produce those documents; (2) requiring the Government to provide an adequate and complete privilege log so that Defendants can fairly assess and challenge, as necessary, the privilege assertions (or else deem waived those privilege assertions for which appropriate information has not been provided); and (3) awarding Defendants costs and attorneys' fees for the time they have spent sequestering/destroying "inadvertently produced" documents.

Dated:   Washington, DC
        June 24, 2015

                By:    */s/ Douglas W. Baruch*    
Douglas W. Baruch, *pro hac vice*
Jennifer M. Wollenberg, *pro hac vice*
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
801 17th Street NW
Washington, DC 20006
(202) 639-7000
douglas.baruch@friedfrank.com
jennifer.wollenberg@friedfrank.com

William F. Johnson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
wjohnson@kslaw.com

Attorneys for Defendant
    Wells Fargo Bank, N.A.