**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>-against-<br><br>WELLS FARGO BANK, N.A., et al.<br><br>      Defendants. | 12 Civ. 7527 (JMF) (JCF)<br><br><br><br>Oral Argument Requested |

**WELLS FARGO BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR A PROTECTIVE ORDER**


William F. Johnson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
wjohnson@kslaw.com

Douglas M. Baruch, *pro hac vice*
Jennifer M. Wollenberg, *pro hac vice*
Kayla Stachniak Kaplan, *pro hac vice*
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
801 17th Street NW
Washington, DC 20006
(202) 639-7000
douglas.baruch@friedfrank.com
jennifer.wollenberg@friedfrank.com
kayla.kaplan@friedfrank.com

*Attorneys for Wells Fargo Bank, N.A.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT BACKGROUND ...................................................................................................3

ARGUMENT ..............................................................................................................................8

I.      THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO SAFEGUARD WELLS FARGO'S ATTORNEY-CLIENT PRIVILEGED INFORMATION................................8

      A.      Wells Fargo Controls The Privileged Information Sought And Has Not Waived Its Privilege...................................................................................8

      B.      Wells Fargo Should Not Have To Forfeit Its Privilege Claims ...........................10

II.     ANY JUDICIALLY-COMPELLED DISCLOSURE OF WELLS FARGO'S PRIVILEGED INFORMATION MUST BE NARROWLY-TAILORED TO THE ELEMENTS OF MR. LOFRANO'S ADVICE-OF-COUNSEL DEFENSE ...................14

III.    THE COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL ANY ORDER COMPELLING DISCLOSURE AND STAY ANY SUCH DISCLOSURE PENDING APPELLATE REVIEW...............................................................................................19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
   964 F.2d 159 (2d Cir. 1992)..................................................................8, 19

*In re Cnty. of Erie*,
   473 F.3d 413 (2d Cir. 2007).......................................................................8

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343 (1985)..............................................................................9, 11

*In re Dow Corning Corp.*,
   261 F.3d 280 (2d Cir. 2001).......................................................................8

*Fisher v. United States*,
   425 U.S. 391 (1976)..................................................................................8

*G-I Holdings, Inc. v. Baron & Budd*,
   199 F.R.D. 529 (S.D.N.Y. 2001) ............................................................8-9

*Geron v. Robinson & Cole LLP*,
   476 B.R. 732 (S.D.N.Y. 2012)................................................................19

*Gilba v. Cook*,
   232 F. Supp. 2d 1171 (D. Or. 2002) .......................................................13

*In re Grand Jury Proceedings*,
   219 F.3d 175 (2d Cir. 2000)..................................................................9, 11

*Gray v. Bd. Of Higher Educ., City of New York*,
   692 F.2d 901 (2d Cir. 1982)....................................................................10

*Lee v. Coughlin*,
   26 F. Supp. 2d 615 (S.D.N.Y. 1998)........................................................19

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009)................................................................................19

*In re O.P.M. Leasing Servs., Inc.*,
   670 F.2d 383 (2d Cir. 1982)....................................................................10

*Plasmanet, Inc. v. Apax Partners, Inc.*,
   No. 02 Civ 9290, 2003 WL 21800981 (S.D.N.Y. Aug. 5, 2003) ............9

*Ross v. City of Memphis*,
   423 F.3d 596 (6th Cir. 2005) .............................................................9, 11-12

*In re Six Grand Jury Witnesses*,
   979 F.2d 939 (2d Cir. 1992)..............................................................................9

*Trammel v. United States*,
   445 U.S. 40 (1980)............................................................................................8

*United States v. Colasuonno*,
   697 F.3d 164 (2d Cir. 2012)............................................................................14

*United States v. Ghavami*,
   882 F. Supp. 2d 532 (S.D.N.Y. 2012)...........................................................10

*United States v. W.R. Grace*,
   439 F. Supp. 2d 1125 (D. Mont. 2006).......................................................5, 13

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)...................................................................................8, 9, 11

**Statutes**

28 U.S.C. § 1292.......................................................................................................19

## PRELIMINARY STATEMENT

Wells Fargo brings this motion for a protective order to prevent the disclosure of material that, all parties agree, is subject to Wells Fargo's attorney-client privilege.  Co-Defendant Kurt Lofrano, a Wells Fargo employee, has asserted an advice-of-counsel defense (among other defenses) to the civil claims alleged against him and, in partial support of that defense, intends to testify about certain communications over which Wells Fargo properly has invoked attorney-client privilege.  For its part, Wells Fargo consistently has maintained its privileges and has not placed any privileged communications at issue.  Wells Fargo therefore is entitled to a protective order preventing the disclosure of its privileged communications.  As much as Wells Fargo believes the allegations in this case against Mr. Lofrano (and against Wells Fargo) to be unfounded, Wells Fargo's broader institutional interests—well beyond this particular litigation—dictate that it must vigorously protect its privileged communications.  Disclosure of the privileged communications at issue here raises the prospect that Wells Fargo, in other contexts, will be found to have waived or otherwise lost control over its privileged communications, resulting in severe prejudice to the institution.  Wells Fargo has suggested procedures—including severance—that likely would avoid or alleviate any inquiry into its privileged communications in this case as well as mitigate any unfairness to either Wells Fargo or Mr. Lofrano from a ruling compelling or denying disclosure at this stage of the litigation, but the Court has reserved on whether severance is appropriate.  In the event that the Court overrules Wells Fargo's objections, and compels disclosure in this case, Wells Fargo urges the Court to craft an order that is narrowly drawn and strictly controlled (in terms of access to such communications) in the manner set forth below.

As this Court has acknowledged, the privilege at issue belongs to Wells Fargo, and the question of whether Mr. Lofrano's right to assert an advice-of-counsel defense can overcome

1

Wells Fargo's privilege under the circumstances of this case is an unresolved question of law. Wells Fargo submits that a corporation's legal privileges would serve little utility if they must yield whenever a current or former employee—faced with civil liability in an inquiry, investigation, or formal suit—elects to advance an advice-of-counsel defense based on privileged communications with company counsel. Any such ruling would place substantial uncertainty upon Wells Fargo's ability to rely on the confidentiality of its communications with counsel in the future.

The Court has directed the parties to address the scope of any disclosure if it permits Mr. Lofrano to rely on Wells Fargo's privilege information in asserting an advice-of-counsel defense. Mr. Lofrano has informed the Court and the Government that, in support of his advice-of-counsel defense, he would disclose a limited set—both in time and subject matter—of privileged communications: namely, his own testimony regarding the advice he received from two in-house attorneys between 2004 and early 2006 on certain self-report obligations and six Wells Fargo documents that are on Wells Fargo's privilege log.

The Government, apparently undeterred by this Court's prior ruling that the principles of subject matter waiver are inapplicable here, nevertheless is demanding what is in effect a broad subject matter waiver with respect to Wells Fargo's privileged communications. In essence, even though Mr. Lofrano's defense centers on a short window of time and even though the privileged communications pertaining to that advice are strictly limited, the Government contends that sweeping disclosures of privileged communications covering an eight-year period (from 2002-2010) and from multiple internal and outside counsel are necessary. The Government's broad scope should be rejected as it ignores the narrow time period identified by

Mr. Lofrano and it extends far beyond the specific privileged communications Mr. Lofrano has identified.

Here, Wells Fargo should not be forced to reveal any privileged communications since Wells Fargo is not relying on them in this litigation.   Yet, if the Court were to overrule the objection and compel disclosure, Wells Fargo respectfully submits that the Court's order must be as narrow as possible and limited to the specific legal advice, given during the specific time period, by the specific attorneys identified by Mr. Lofrano, on the limited self-reporting topics to which those communications (between Wells Fargo counsel and Mr. Lofrano) pertain.

## RELEVANT BACKGROUND

As the Court is aware, this action (the "Action") involves civil claims brought by the Government against Wells Fargo and one of its employees, Mr. Lofrano, for alleged violations of primarily the False Claims Act and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.   Dkt # 77 (Second Amended Complaint).   One set of Government allegations is that Wells Fargo and Mr. Lofrano failed to comply with HUD's self-reporting requirements for FHA loans.[1]   *Id.*   In his Answer, Mr. Lofrano raised an advice-of-counsel defense based on his communications with Wells Fargo in-house counsel.   Dkt # 94 (Answer of Kurt Lofrano).   For itself, and conscious of the institutional need to protect its privileged communications, Wells Fargo did not assert an advice-of-counsel defense.   Dkt # 93 (Answer of Wells Fargo).   Nor has Wells Fargo ever interjected or put its privileged information at issue in this case.   To the contrary, throughout discovery, Wells Fargo diligently has protected its privileged information from disclosure.

---

[1]   Another set of allegations—against Wells Fargo only—pertains to Wells Fargo's underwriting practices.   Mr. Lofrano is not a defendant on those causes of action and they are not implicated by Mr. Lofrano's advice-of-counsel defense.   *Id.*

On the last day of fact discovery, the Government deposed Mr. Lofrano.  In response to certain specific questions by the Government, Mr. Lofrano asserted that he acted in reliance on the advice of Wells Fargo's in-house lawyers.  When Mr. Lofrano was asked questions that called for testimony concerning privileged Wells Fargo communications, Wells Fargo objected and instructed Mr. Lofrano not to reveal those communications in his answers.  Mr. Lofrano complied with Wells Fargo's instruction.

After fact discovery closed on May 15, 2015, the Government moved to re-open discovery and to compel the disclosure of Wells Fargo's privileged information, solely based on Mr. Lofrano's assertion of the advice-of-counsel defense.  Dkt # 260 (Mem. of Law in Support of Mot. to Reopen Fact Discovery).   In the alternative, the Government argued that if no discovery is permitted, Mr. Lofrano should be precluded from asserting an advice-of-counsel defense.  *Id.*  In response to the Government's motion, Wells Fargo and Mr. Lofrano filed their respective opposition papers.  Dkt # 262, 266.

In its June 30 Order, the Court denied the Government's motion, without prejudice, albeit after holding that the "better view is that, at least where—as here—the relevant employee does not have authority to waive the privilege on behalf of the corporation . . . the privilege is not waived by the employee's mere invocation of an advice-of-counsel defense during discovery."  *See* Dkt # 243 (June 30 Order) at 2.  Citing controlling precedent from the Supreme Court and a Sixth Circuit decision that is on point here, the Court added that "holding otherwise" would allow "any employee" to undermine Wells Fargo's privilege, and give plaintiffs every incentive to "pursue claims against individual employees in the hopes of forcing a waiver of the corporation's privilege."  *Id*. at 5.

4

Moreover, in rejecting the Government's attempt to compel disclosure of Wells Fargo's privileged information based on a waiver, the Court also noted that all four of the relevant factors that the Second Circuit has considered in similar corporate-privilege circumstances weigh against a finding of waiver here.  *Id.* at 6.  The first three of these factors—(1) Mr. Lofrano's involvement in his individual, as opposed to a corporate, capacity, (2) Wells Fargo's decision not to assert the advice-of-counsel defense, and (3) Wells Fargo's "unmistakably clear" assertion of its privilege—are either undisputed or not subject to change as this case proceeds to trial.  On the fourth factor—the degree of prejudice to the Government if Wells Fargo's privilege remains intact—the Court found that "there is, as of yet, no real prejudice to the Government."  *Id.*

Looking ahead to trial, therefore, the Court ordered the parties to meet and confer about a proposed procedure and schedule to resolve three issues:  First, the Court noted that "it is not yet clear whether Wells Fargo intends to object to Lofrano's assertion of an advice-of-counsel defense."  *Id.* at 7.  Second, citing a district court criminal case where Sixth Amendment concerns led to separate trials of defendants asserting an advice of counsel defense (*United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006)), the Court queried whether "Lofrano's right to present a defense could conceivably overcome Wells Fargo's right to maintain its privilege."  *Id.*  Finally, assuming it allows Mr. Lofrano to present his advice-of-counsel defense, the Court noted that it "will have to decide both the scope of the privileged information that he is entitled to disclose, as well as the scope of what the Government would, in fairness, be entitled to pursue, either through questioning at trial or through limited additional discovery."  *Id.*

Following a meet-and-confer, in a subsequent joint submission to the Court by the parties, Wells Fargo resolved the first issue by confirming that, notwithstanding its position that the claims against Mr. Lofrano and Wells Fargo have no merit, for institutional reasons, Wells

Fargo "has objected and will continue to object (throughout the duration of this Action) to disclosure of any of its attorney-client privileged communications, including those that Mr. Lofrano seeks to rely on in support of his defense."  Dkt # 252 (Joint Letter) at 1.

In an order dated July 14, 2015, Dkt # 255 (the "July 14 Order"), the Court outlined a process to resolve the remaining two issues:  (1) it directed Mr. Lofrano to "identify the witnesses and documents upon which he intends to rely" for his advice-of-counsel defense;[2] (2) it directed the Government to describe "the scope of any additional discovery it seeks in connection with" that defense; and (3) it offered Wells Fargo the opportunity (after receipt of these submissions) to move for a protective order preventing its privileged information from disclosure.  July 14 Order.  In connection with such motion, the Court ordered that "the parties should address not only whether Mr. Lofrano should be precluded from asserting the advice-of-counsel defense, but also the scope of any judicially compelled waiver of the privilege (and, by extension, the scope of any further discovery to be permitted) in the event that the Court rules that Mr. Lofrano's right to assert the defense overcomes Wells Fargo's privilege."  *Id.*

On July 21, 2015, Mr. Lofrano filed a letter stating that, "[i]n support of his advice of counsel defense," in addition to non-privileged material, he intends to "rely on his own testimony" concerning communications on Wells Fargo's self-reporting obligations during a very limited 2004 through early 2006 time period and, "[i]f produced," six specifically-identified documents on Wells Fargo's privilege log.  *See* Dkt #272 (Submission of Kurt Lofrano, July 21, 2015 (the "Lofrano Submission")).

On July 28, 2015, the Government filed a response letter stating that if Mr. Lofrano is entitled to assert an advice-of-counsel defense, the Government believes it is entitled to

---

2   Mr. Lofrano was also permitted to submit an en camera, *ex parte* submission to the Court (shared with Wells Fargo) describing the privileged materials he intends to rely upon in support of his defense.

discovery spanning an *eight-year period* (2002-2010) concerning any legal advice Mr. Lofrano sought or received; deposition testimony from a third Wells Fargo attorney that Mr. Lofrano did not identify in his Submission as having provided legal advice relevant to his advice-of-counsel defense; discovery (of an undefined nature) from one of Wells Fargo's outside counsel, which Mr. Lofrano likewise has not identified as having provided legal advice relevant to his advice-of-counsel defense; and discovery from Wells Fargo employees who Mr. Lofrano supervised regarding any legal advice they sought or received (surprisingly without regard to whether any such communications seeking or receiving advice were even known to Mr. Lofrano).  *See* Dkt # 273 (Submission of the Government, July 28, 2015 (the "Gov't Submission")).  In making these sweeping requests, the Government ignores—among other things—the salient fact that it never made any of these discovery requests during the fact discovery period, notwithstanding that it was on notice of Mr. Lofrano's advice-of-counsel defense no later than when Mr. Lofrano asserted it in his answer more than a year before fact discovery closed.

Pursuant to the July 14 Order, Wells Fargo, after reviewing the submissions of Mr. Lofrano and the Government, respectfully requests that the Court issue an order protecting its privileged information from disclosure in this lawsuit.  As required by the July 14 Order, Wells Fargo outlines below its proposal for the narrow scope of any judicially-compelled disclosure of Wells Fargo's privileged communications.  In doing so, Wells Fargo respectfully requests that the Court order that any information compelled to be disclosed be treated as "Highly Confidential" under the terms of the March 21, 2014 Protective Order in this Action, that the Court certify any order compelling it to produce privileged material for appeal under 28 U.S.C. § 1292(b), and that the Court stay its order pending appellate review.

**ARGUMENT**

I.  **THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO SAFEGUARD WELLS FARGO'S ATTORNEY-CLIENT PRIVILEGED INFORMATION**.

   A.  **Wells Fargo Controls The Privileged Information Sought And Has Not Waived Its Privilege**

The Federal Rules of Civil Procedure restrict discovery to "nonprivileged matter[s]," explicitly protecting attorney-client privileged information from disclosure.  Fed. R. Civ. P. 26(b)(1); *see also In re Dow Corning Corp.*, 261 F.3d 280, 285 (2d Cir. 2001) (holding that "the sanctity of [the] privilege is established not only by this Court's jurisprudence, but by the Federal Rules of Civil Procedure" and accordingly, that "compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent"); *see also In re Cnty. of Erie*, 473 F.3d 413, 422-23 (2d Cir. 2007) (issuing writ of mandamus to vacate district court order requiring production of privileged communications); *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir. 1992) (same).

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)).  The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."  *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Fisher v. United States*, 425 U.S. 391, 403 (1976) (the purpose of the privilege is "to encourage clients to make full disclosure to their attorneys").  It exists not only to protect the communication of legal advice to the client, but "also the giving of information to the lawyer to enable him to give sound and informed advice."  *Upjohn*, 449 U.S. at 390.  Recognizing the paramount importance of maintaining the attorney-client privilege, courts routinely issue protective orders to prevent the disclosure of privileged information.  *See G-I*

*Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 535 (S.D.N.Y. 2001) (issuing protective order to limit former employees' testimony as to employer's privileged information); *Plasmanet, Inc. v. Apax Partners, Inc.*, No. 02 Civ 9290, 2003 WL 21800981 (S.D.N.Y. Aug. 5, 2003) (issuing protective order to delay disclosure of privileged information relevant to defendants' advice-of-counsel defense).

Here, the privilege at issue is held by, and controlled by, Wells Fargo.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("It is by now well established . . . that the attorney-client privilege attaches to corporations as well as to individuals.") (citing *Upjohn*, 449 U.S. at 390).  As the Second Circuit has held, "the availability of advice from an attorney is essential if corporations are to comply with the ever-increasing complexities of federal law; and, if that advice is to be sought and given ***there must be predictable certainty as to which communications will be protected***."  *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) (emphasis added); *see also Upjohn*, 449 U.S. at 393 ([a]n uncertain privilege . . . is little better than no privilege at all"); *Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) ("[m]aking the . . . privilege contingent on litigation choices made by . . . employees renders the privilege intolerably uncertain").

It also is well-settled that corporate employees do not have the inherent authority to waive or forfeit the corporation's privilege.  That may be done only by the corporation, acting through its board of directors, senior officers, or other authorized persons who "must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals."  *Weintraub*, 471 U.S. at 349; *see also In re Grand Jury Proceedings*, 219 F.3d 175, 184-85 (2d Cir. 2000) ("[I]t does not necessarily follow that a corporate officer testifying in his individual capacity can waive the corporate privilege

without that entity's consent."); *In re O.P.M. Leasing Servs., Inc.*, 670 F.2d 383, 386 (2d Cir. 1982) ("Where a corporate entity seeks legal advice, the attorney-client privilege belongs to the corporation alone"); *United States v. Ghavami*, 882 F. Supp. 2d 532, 544 (S.D.N.Y. 2012) ("Once the privilege attaches . . . it may be waived only by someone with appropriate corporate decision making authority").

Here, the information that Mr. Lofrano seeks to rely on in support of his advice-of-counsel defense, by definition, is protected by Wells Fargo's (and not Mr. Lofrano's) attorney-client privilege and therefore is not discoverable.  *See* Lofrano Submission at 1.  The Government, in its latest submission, demands an expansive inquiry into Wells Fargo's corporate legal advice that goes far beyond the scope of what has been identified as potentially relevant by Mr. Lofrano.  *See* Gov't Submission at 2-5.  Under the circumstances, Well Fargo has no choice but to seek, and is entitled to, a protective order safeguarding its attorney-client privileged information from disclosure.

### B.    Wells Fargo Should Not Have To Forfeit Its Privilege Claims

The issuance of a protective order must "reflect a balancing between, on the one hand, the parties' right to discovery, which stems from society's interest in a full and fair adjudication of the issues involved in litigation and, on the other hand, the existence of a societal interest in protecting the confidentiality of certain disclosures made within the context of certain relationships of acknowledged social value."  *Gray v. Bd. Of Higher Educ., City of New York*, 692 F.2d 901, 903 (2d Cir. 1982) (quotation omitted).  As this Court recognized in the June 30 Order, this case presents the unresolved issue of whether the interests of the holder of the attorney-client privilege (here, Wells Fargo) override the interests of an employee who is seeking to assert an advice-of-counsel defense based on legal advice he received from company counsel.

The privilege at issue here "indisputably belongs to Wells Fargo—not to Lofrano." June 30 Order at 2.  As the privilege holder, Wells Fargo diligently has protected its confidential legal advice from disclosure at all times.  In fact, this Court specifically found that Wells Fargo has not done anything that "constitutes a waiver of the privilege."  *Id.*

Mr. Lofrano, of course, just like many other Wells Fargo employees, is involved with and privy to the regular communications necessary for Wells Fargo to seek and obtain corporate legal advice.  Yet, according to this Court and others, that does not give him, or any other employee, the "authority to waive the privilege on behalf of the corporation."  That prerogative rests with Wells Fargo alone.  *See Weintraub*, 471 U.S. at 349; *In re Grand Jury Proceedings*, 219 F.3d at 184-85.  "Holding otherwise," as this Court observed, will create perverse incentives.  June 30 Order at 5 (finding that if "almost any employee could waive the privilege" by asserting an advice-of-counsel defense, that "could also create an incentive for plaintiffs to pursue claims against individual employees in the hopes of forcing a waiver of the corporation's privilege").  Allowing Wells Fargo to protect its privilege under these circumstances not only avoids the potential pitfalls of an uncertain privilege, it also gives the corporate privilege the predictable certainty required by the Supreme Court.  *See Upjohn*, 449 U.S. at 393 ([a]n uncertain privilege . . . is little better than no privilege at all").

As this Court already has found, the Second Circuit's guidance in *In re Grand Jury Proceedings* strongly favors an order protecting Wells Fargo's privileged information from disclosure.  *See In re Grand Jury Proceedings*, 219 F.3d at 189 (holding that "it would be unfair to impute a waiver to [the corporation] on the basis of Witness's mention of his reliance on the advice received from [the corporation's] attorneys").  Moreover, the Sixth Circuit—the only Court of Appeals to address the precise issue presented here—ruled in favor of protecting the

11

privilege under these circumstances. *See Ross*, 423 F.3d at 603 (holding "that a municipal official's assertion of the advice-of-counsel defense does not require the City to relinquish the privilege it holds"). Based on the same principles articulated in the Second Circuit's decision in *In re Grand Jury* and the Sixth Circuit's decision in *Ross*, this Court should hold that Mr. Lofrano's legitimate interests in further supporting an advice-of-counsel defense—as important as they are—should not overcome Wells Fargo's institutional interests in maintaining the confidentiality of its privileged communications. *Id.* at 605 (holding that advice-of-counsel defense of employee must give way to privilege claims of City).

Should the Court choose to vitiate Wells Fargo's privilege claims, the harm to Wells Fargo will be significant and far-reaching. In making the decision to maintain its privilege claims and forgo an advice-of-counsel defense in this Action, Wells Fargo carefully weighed its corporate interests, the interests of its employees, and the interests of its shareholders not only in the present Action, but in other pending matters and inquiries where adversaries could well claim that a disclosure here operated as a broad waiver of privilege. An order compelling disclosure of privileged information would have consequences which could also reach well into the future regarding legal advice given inside Wells Fargo, and have a chilling effect based on grave uncertainty as to whether corporate attorney-client communications are protected from disclosure. As a leading global financial institution, Wells Fargo, at any given time, is subject to multiple government inquiries of various types and multiple civil lawsuits.

Wells Fargo recognizes that entry of a protective order would prejudice Mr. Lofrano by denying him the opportunity to present an important defense against the unfounded accusations he now confronts. Yet the prejudice to Wells Fargo—as an institution that needs to be able to rely on the ability to seek and obtain legal advice on a confidential basis—must also be

considered and weighed.  Here, where both Wells Fargo and Mr. Lofrano have substantial defenses to the self-reporting allegations that do not implicate any privileged communications, the prejudice considerations weigh in favor of a protective order.  In light of the potential unfairness to Wells Fargo and Mr. Lofrano from an order compelling or denying disclosure now, Wells Fargo respectfully submits that a severance of the claims against Mr. Lofrano for summary judgment motions and the trial of this matter is an appropriate and practical resolution of this issue.  A severance would allow the case to move forward as to Wells Fargo in the first instance and, as a practical matter, would potentially avoid the need for the Court to decide which of the important conflicting interests is paramount.  *See* Dkt # 252 (Joint Letter) at 2-6.

In the June 30 Order, the Court cited the decision from the District of Montana in *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006).  The district court in *W.R. Grace* held that a company's attorney-client privilege must "yield where its invocation is incompatible with a *criminal defendant's* Sixth Amendment right []" to present a defense.  *Id.* at 1145 (emphasis added).  While the court in *W.R. Grace* permitted the disclosure, it was in the context of a criminal action, where the consequences to the individual defendants—specifically, their loss of liberty and imprisonment if found liable—were paramount.  The Sixth Amendment considerations at issue in *W.R. Grace* simply do not apply to civil proceedings.  *See, e.g. Gilba v. Cook*, 232 F. Supp. 2d 1171, 1187 (D. Or. 2002) (rejecting argument that protections under the Sixth Amendment are available in civil case).

For these reasons, Wells Fargo respectfully submits that this Court should enter a protective order.

## II.   ANY JUDICIALLY-COMPELLED DISCLOSURE OF WELLS FARGO'S PRIVILEGED INFORMATION MUST BE NARROWLY-TAILORED TO THE ELEMENTS OF MR. LOFRANO'S ADVICE-OF-COUNSEL DEFENSE

The July 14 Order requires Wells Fargo to address the scope of any judicially-compelled disclosure in the event the Court denies this motion.  An advice-of-counsel defense requires that the defendant "(1) honestly and in good faith sought the advice of counsel; (2) fully and honestly disclosed all facts to counsel; and (3) honestly and in good faith followed the advice, believing it to be correct and intending that his acts be lawful."  *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012).  As the Court noted in its June 30 Order, these circumstances present a novel issue—no court in the Second Circuit has ever ordered disclosure of privileged information absent a party placing its legal advice at issue, nor has any such court attempted to set the boundaries for that compelled disclosure.  June 30 Order at 2.  Here, any compelled disclosure should be extremely narrow in scope and sharply limited to the facts pertaining to the specific advice Mr. Lofrano testifies he sought and obtained, and strictly necessary to permit Mr. Lofrano to establish the elements of his defense, while allowing the ability for the Government to challenge that defense.  As discussed more fully below, the Government's disclosure proposal addresses issues not present here—namely the scope that might be applicable if an advice-of-counsel defense had been *asserted by the Bank*, which it has not done and will not do.  The issues relevant to Mr. Lofrano's individual advice-of-counsel defense are much narrower than the Government contends.

Mr. Lofrano's July 21 Submission states that he received legal advice from two Wells Fargo in-house counsel, Karen Jackson and Denise Brennan, about Wells Fargo's obligations and policies related to HUD's self-reporting requirements, that he received that legal advice between 2004 and early 2006, and that he "continued to act in conformance with such advice thereafter."   Lofrano Submission at 1-2.   In support of his advice-of-counsel defense,

Mr. Lofrano represented to the Court that he intends to rely on his own testimony, the non-privileged documents produced in this litigation, and (if they are ordered to be produced) six specific documents that appear on Wells Fargo's privilege log. *Id.* at 2. Thus, the scope of any compelled disclosure of privileged information should be limited to the specific legal advice received by Mr. Lofrano during the time period he indicated (between 2004 and early 2006), from the attorneys he identified (Ms. Jackson and Ms. Brennan), and within the privileged documents he identified (items 1236, 1896, 6347, 6386, 7024, and 7124 on Wells Fargo's privilege log) and any other privileged documents sent or received by Mr. Lofrano that describe or refer to the specific communication of legal advice to Mr. Lofrano by Ms. Jackson or Ms. Brennan. *Id.* at 1-2.

The far-reaching scope of discovery sought by the Government must be rejected. First, the Government's scope proposal reads as if it is Wells Fargo, and not Mr. Lofrano, that is seeking to rely on an advice-of-counsel defense. There is no basis to compel the disclosure of legal advice sought or received by employees other than Mr. Lofrano on self-reporting issues. Gov't Submission at 4 n.3, and 5 (suggesting documents provided to "*other Wells Fargo employees*" are relevant, demanding discovery of advice given to Mr. Lofrano's "*supervisees*") (emphasis added). Second, the Government (as it did in the briefing prior to the issuance of the June 30 Order) continues to misplace its reliance on cases permitting broad discovery based on a "subject matter waiver" by a party that controls the privilege asserting an advice-of-counsel defense. *Id.* at 3 ("As discussed in the Government's previous submissions to the Court, once a party has put at issue any legal advice received, the resulting waiver of attorney-client privilege is broad"). As the Court has already held, the concept of subject matter waiver is inapplicable here:

> Those cases apply the well-established principle that a party may not "use the attorney-client privilege as both sword and shield" … but that principle has no application here, as it is Lofrano who seeks to pursue an advice-of-counsel defense, but it is Wells Fargo (which is not asserting the defense) that seeks to protect the privilege.  Put simply, here, unlike in those other cases, "the sword and shield are wielded by different parties."

June 30 Order at 4 (citations omitted).

The Government claims it should be entitled to broad discovery over an eight-year period, from 2002 through 2010.  Gov't Submission at 2-3.  There is no basis for this request—Mr. Lofrano did not have any responsibility for self-reporting issues in 2002 and 2003 and already has clearly testified to that effect.   To the extent the Government seeks to challenge whether Mr. Lofrano continued to act in conformity with the legal advice he received after early 2006, that inquiry can be made of Mr. Lofrano without the further disclosure of Wells Fargo's privileged information.   Since Mr. Lofrano does not contend that he sought or received any *additional* advice on this topic after early 2006, there is no basis for the Government to delve into any post-early 2006 communications.

The Government's request for discovery from attorneys not even placed at issue by Mr. Lofrano should also be rejected.  The Government states that fact discovery indicates that a third Wells Fargo in-house counsel, David Whitaker, "was responsible for making a self-report to HUD on behalf of a Wells Fargo joint venture in October 2004, and he is identified on one of the documents" listed in Mr. Lofrano's submission.  Gov't Submission at 5.  Mr. Whitaker's self-report to HUD on behalf of a Wells Fargo joint venture was not a privileged communication and could have been explored fully in discovery by the Government—including by deposing Mr. Whitaker on that topic.  But the Government did not do so.  The bottom line is that while this self-report is of extreme importance to this case—as it disproves the Government's off-repeated and frivolous allegations that Wells Fargo made no self-reports prior to 2005—it has

nothing to do with Mr. Lofrano's advice-of-counsel defense, and Mr. Lofrano has not indicated that he relied upon Mr. Whitaker's legal advice at any time or in any context.

Similarly, while the Government claims that Wells Fargo's privilege log "reveals" that Mr. Lofrano "consulted with K&L Gates concerning self-reporting issues during the relevant period," Mr. Lofrano has not claimed that he sought or obtained any legal advice from K&L Gates on self-reporting issues, let alone that he relied on such advice.  Gov't Submission at 5. Again, to the extent the Government wishes to challenge these facts, it can do so in a deposition of Mr. Lofrano that does not reveal the substance of any communications with Mr. Whitaker or K&L Gates.  In sum, there is no basis to support the disclosure of information from attorneys that Mr. Lofrano is not relying upon in support of his defense.

This is not a circumstance where the party asserting the defense will be defining the scope of disclosure, as the Government suggests.  Gov't Submission at 3.  Wells Fargo (which has possession of and access to the documents and attorneys at issue) believes that Mr. Lofrano's Submission accurately has identified the privileged material that relates to his advice-of-counsel defense.  In addition to Wells Fargo's review of the relevant material, the Court has available to it Mr. Lofrano's *ex parte* submission, which lays out in more detail the legal advice provided, the timing of that advice, and the attorneys involved.  On this record, the scope of discovery sought by the Government goes far beyond what Mr. Lofrano has indicated that he will rely upon in support of his advice-of-counsel defense.

In the event that the Court denies the protective order, Wells Fargo requests that any order compelling disclosure be limited to the six privileged documents identified by Mr. Lofrano in his Submission, followed shortly thereafter by a narrowly circumscribed continuation of Mr. Lofrano's deposition.  Thereafter, if still warranted, the Government could promptly depose

the Wells Fargo in-house counsel identified by Mr. Lofrano as communicating the advice he relied on, with those depositions also being strictly limited to any direct communications between them and Mr. Lofrano between 2004 and early 2006, the relevant time frame identified by Mr. Lofrano, regarding "Wells Fargo's obligations and policies related to HUD's self-reporting requirements."  Lofrano Submission at 1.  There is no basis to expand the scope of this inquiry to other time periods (before 2004 or after early 2006) or other attorneys (including Wells Fargo's outside counsel) unless Mr. Lofrano testifies (contrary to his Submission) that he sought or received and intends to rely on information conveyed during those time periods or by those other attorneys in support of his defense.  With respect to documents, any further disclosure should be limited to any additional privileged communications identified by Mr. Lofrano or these in-house counsel as reflecting the advice sought or obtained by Mr. Lofrano from these counsel.

     In addition, Wells Fargo respectfully requests that any compelled disclosure of documents or witness testimony be designated as "Highly Confidential" subject to this Court's March 21, 2014 Protective Order ("Protective Order"), at least until it is deemed necessary for potential admission as evidence at trial.  Dkt # 97.  Although not contemplated by the terms of the Protective Order, treating any privileged information as "Highly Confidential" will, to some extent, mitigate the severe prejudice to Wells Fargo caused by the compelled disclosure of this information by restricting that disclosure to the parties in this Action in the event the parties are able to resolve this Action without a trial.  If Mr. Lofrano or the Government intend to refer to this privileged information in their summary judgment motions, we respectfully submit that the Court could order that they be permitted to do so, provided that the privileged information is filed under seal.

## III.    THE COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL ANY ORDER COMPELLING DISCLOSURE AND STAY ANY SUCH DISCLOSURE PENDING APPELLATE REVIEW

Finally, in the event the Court orders any person or party to provide or permit discovery of Wells Fargo's privileged information, even as outlined above, Wells Fargo further respectfully requests that the Court certify its decision for appeal under 28 U.S.C. §1292(b). As the Supreme Court has held, "[t]he preconditions for §1292(b) review—'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation'— are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases."  *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (quoting § 1292(b)).  Here, that standard is clearly satisfied, and as this Court has already noted, the issues present "a complicated—and, it turns out, unresolved—question of law."  June 30 Order at 2.  In addition, since an order compelling the production of privileged material can never, as a practical matter, be "undone," we respectfully submit that it is appropriate and necessary for the Court to enter a stay of any compelled disclosure pending final resolution of an interlocutory review process.  *See, e.g., Chase Manhattan Bank, N.A.*, 964 F. 2d at 166 (staying district court order compelling privileged production upon issuing writ of mandamus and noting potential prejudice to disclosing party); *Geron v. Robinson & Cole LLP*, 476 B.R. 732, 746 (S.D.N.Y. 2012) (staying all proceedings pending resolution of § 1292(b) appeal); *Lee v. Coughlin*, 26 F. Supp. 2d 615, 638 (S.D.N.Y. 1998) (same).

## CONCLUSION

For the reasons set forth herein, Wells Fargo respectfully requests that the Court grant Wells Fargo's Motion for a Protective Order, or certify for immediate interlocutory appeal any order it issues compelling the disclosure of Wells Fargo's privileged information.

Dated:  August 4, 2015

Respectfully submitted,


By   */s/ William F. Johnson*
    William F. Johnson
    KING & SPALDING LLP
    1185 Avenue of the Americas
    New York, New York 10036
    (212) 556-2100
    wjohnson@kslaw.com

    Douglas M. Baruch, *pro hac vice*
    Jennifer M. Wollenberg, *pro hac vice*
    Kayla Stachniak Kaplan, *pro hac vice*
    FRIED, FRANK, HARRIS, SHRIVER
      & JACOBSON LLP
    801 17th Street NW
    Washington, DC 20006
    (202) 639-7000
    douglas.baruch@friedfrank.com
    jennifer.wollenberg@friedfrank.com
    kayla.kaplan@friedfrank.com

    *Attorneys for Wells Fargo Bank, N.A.*

26365080

20