**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|       Plaintiff, | 12 Civ. 7527 (JMF) (JCF) |
| -against- | |
| WELLS FARGO BANK, N.A., et al. | Oral Argument Requested |
|       Defendants. | |

**WELLS FARGO BANK, N.A.'S REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**

William F. Johnson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
wjohnson@kslaw.com

Douglas M. Baruch, *pro hac vice*
Jennifer M. Wollenberg, *pro hac vice*
Kayla Stachniak Kaplan, *pro hac vice*
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
801 17th Street NW
Washington, DC 20006
(202) 639-7000
douglas.baruch@friedfrank.com
jennifer.wollenberg@friedfrank.com
kayla.kaplan@friedfrank.com

*Attorneys for Wells Fargo Bank, N.A.*

## PRELIMINARY STATEMENT

The opposition briefs to Wells Fargo's Motion for a Protective Order reinforce the untenable situation in which the parties find themselves given Mr. Lofrano's invocation of an advice-of-counsel defense.  Mr. Lofrano properly argues that he has an interest in pursuing a legitimate defense as to the claims against him.  Wells Fargo has established that it would face severe consequences in terms of its exposure to potential waiver arguments in collateral proceedings and its ability to seek and obtain the effective legal counsel it needs if its privileged communications are subject to disclosure in litigation involving its employees.  And, putting aside for a moment the substantial questions regarding the scope of the Government's requests for discovery (which are addressed below), the Government should be entitled to probe Mr. Lofrano's advice-of-counsel defense before he presents it at trial, if the Court determines that he is permitted to assert it.

Balancing the respective interests under the applicable law, Wells Fargo maintains that a protective order should be entered (as set forth below), but the Court need not decide whose position must yield at this point.  Now, more than ever, the record supports severance as the most viable and fair route for resolving this issue.  By proceeding to trial first against Wells Fargo, no privileged information would be placed at issue.  Instead, this issue would be joined again if and only if (1) the Government were to prevail at trial on the claims against Wells Fargo that overlap with those against Mr. Lofrano, (2) the parties do not thereafter reach a settlement, and (3) the Government decides to proceed to trial against Mr. Lofrano.  By then, the contours of the defense and the necessity and scope of any judicially compelled disclosure attendant to that defense (over Wells Fargo's objections) will be more precisely defined.

## ARGUMENT

### I.   A PROTECTIVE ORDER IS NECESSARY AND APPROPRIATE HERE

#### A.   Ordering Discovery into Wells Fargo's Privileged Communications Would Severely Undermine the Corporate Attorney-Client Privilege

Without diminishing or ignoring the very real monetary, professional, and reputational harm Mr. Lofrano is facing as a result of the unfounded claims asserted against him by the Government, a protective order is warranted here to protect and maintain Wells Fargo's critical legal privileges.   Far beyond this litigation, even a judicially compelled disclosure of Wells Fargo's privileged communications raises the prospect of broader consequences that will infringe upon Wells Fargo's ability to seek and obtain the open and frank legal advice it needs in order to function in a heavily regulated environment.[1]

An order compelling production here would generate uncertainty as to whether Wells Fargo (or any corporation) can protect its attorney-client communications from disclosure.   As Mr. Lofrano's Opposition explains, Mr. Lofrano, "just like every other employee similarly situated, relied in good faith on the attorneys hired by the company for which he worked when they provided advice to him."   Lofrano Br. at 9.   No court has ruled that employees can routinely compel the disclosure of a corporation's privileged communications when faced with charges of civil liability.[2]   *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain

---

[1]   While Wells Fargo agrees with Mr. Lofrano that an Order from this Court limiting the use of disclosed material to this proceeding "should" be honored in other proceedings (Lofrano Br. at 13), the question of whether such an order *would* be honored in proceedings outside of the federal court system is not a matter of settled law in every jurisdiction and forum in which Wells Fargo is subject to legal process and government oversight.

[2]   Any speculation that Wells Fargo would have made a different decision with respect to the enforcement of its privilege claims if an employee more senior than Mr. Lofrano was advancing the advice-of-counsel defense is unfounded.   Indeed, Mr. Lofrano's seniority is irrelevant – Wells Fargo is duty bound to act in the best interest of the corporation and its shareholders regardless of the personal interests of any particular employee, including particular directors and members of senior management.   *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), *decision mod. on reargument*, 636 A.2d 956 (Del. 1994) ("Essentially, the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally.")

privilege … is little better than no privilege at all"); *In re Kellogg Brown & Root, Inc. et al.*, 2015 WL 4727411, at * 12 (D.C. Cir. Aug. 11, 2015) (granting mandamus and upholding privilege claim where disclosure "would generate substantial uncertainty about the scope of the attorney-client privilege in the business setting"). This Court relied on these bedrock principles in deciding that Mr. Lofrano's initial assertion of the advice-of-counsel defense did not waive Wells Fargo's privilege:  "[T]he privilege is not waived by the employee's mere invocation of the advice-of-counsel defense during discovery.  Holding otherwise would mean that almost *any* employee could waive the privilege, which would – in turn – 'render the privilege intolerably uncertain.'"  Dkt # 243 ("June 30 Order") at 5 (quoting *Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005)) (emphasis in original).  Although waiver is no longer at issue, a compelled disclosure – even a narrow one – raises the same concerns regarding the certainty of the corporate attorney-client privilege.  Based on these principles, Wells Fargo respectfully submits that the prejudice considerations weigh in favor of a protective order.

As the Court has held, "the attorney-client privilege at issue indisputably belongs to Wells Fargo …."  June 30 Order at 2.  If Wells Fargo's "ownership" of the privilege is to mean anything, it must mean that Wells Fargo, and Wells Fargo alone, has the ability to control when the corporate privilege is asserted.  The cases cited by Mr. Lofrano do not state otherwise.  In *United States v. McClatchey*, 217 F.3d 823 (10th Cir. 2000) and *United States ex rel. Saklad v. Lewis*, No. 97-10052, 2004 U.S. Dist. LEXIS 31598 (D. Mass. Mar. 5, 2004), there was no discussion of whether an individual employee may assert an advice-of-counsel defense based on the corporate attorney-client privilege because the corporations did not oppose the assertion of the defense by their employees – indeed, in *Saklad*, the corporation was also relying upon the defense.  In *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006) (Lofrano Br. at

8-10), the district court compelled disclosure over the company's objection based on Sixth Amendment concerns that apply only in criminal cases. *See* Wells Fargo Br. at 13. As the Sixth Circuit recognized, a corporation's "ownership" of the attorney-client privilege would be rendered a meaningless legal fiction if the corporation can so easily lose the ability to assert the privilege through the *ex post* litigation choices of its employees. *Ross*, 423 F.3d at 603-04.[3]

Mr. Lofrano's due process arguments (*see* Lofrano Br. at 6) presuppose the unresolved legal issue that is the subject of this motion – whether Mr. Lofrano has an advice-of-counsel defense available to him where the privilege at issue is owned and controlled by his employer. The inability to rely on corporate legal advice for one's own defense is not a unique deprivation. There are other protections – including constitutional protections – that are restricted in the workplace setting (such as expectations of privacy). *See Demaine v. Samuels*, 29 F. App'x 671, 675 (2d Cir. 2002) ("[p]ublic employees' expectations of privacy in their offices, desks, and file cabinets may be reduced by virtue of actual office practices and procedures, or by legitimate regulation" (quoting *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987))).

None of the cases cited by Mr. Lofrano support the proposition that claims of privilege must give way to due process considerations when information relevant to a particular defense is being withheld by another party based on the attorney-client privilege.[4] Such a holding would

---

[3]   The municipal employee in *Ross* sought to use his reliance on legal advice provided by the City's counsel in order to support the objective reasonableness of his actions for the purpose of his qualified immunity defense. The Sixth Circuit did not conclude that advice-of-counsel was "irrelevant" to the qualified immunity defense, as Mr. Lofrano suggests (Lofrano Br. at 12 n.8). Rather, it held that although the municipal employee may not be able to rely on an advice-of-counsel defense, the employee still had the ability to assert a qualified immunity defense based on other facts (just as Mr. Lofrano would retain all of his other defenses should the Court determine that an advice-of-counsel defense is not available to him). *See Ross*, 423 F.3d at 604.

[4]   *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (striking punitive damages award where state did not set limits on jury's discretion to award punitive damages); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008) (reversing class certification where defendant would have been prevented from asserting specific defenses against individual plaintiffs); *Jenkins v. McKeithen*, 395 U.S. 411, 429 (1969) (striking down law establishing state commission to investigate criminal violations related to unions where person under

---

render the application of the attorney-client privilege vulnerable to a due process challenge in any civil litigation where a producing party – not just a corporate entity – withholds privileged material that a requesting party believes is crucial to its defense.  As the D.C. Circuit has held:

> The attorney-client privilege is but one of several privileges that prevent parties themselves from adducing particular evidence, and thus create an obstacle to fact finding due to the broad judgment that the value of introducing such evidence is outweighed by the harm inflicted upon other policies and values.  The explicit burdens imposed by such evidentiary rules have never, to our knowledge, been held inconsistent with due process in the civil law context, because such burdens are simply a necessary consequence of society's attempt to balance the value of the complete admissibility of probative evidence with other competing values, such as the protection of vital professional or associational relationships.

*Rosen v. National Labor Relations Board*, 735 F.2d 564, 572 (D.C. Cir. 1984); *see also Graham v. Teledyne-Continental Motors*, 805 F.2d 1386, 1390 (9th Cir. 1987) ("Courts have consistently rejected arguments that deprivation of evidence constitutes a denial of due process.").

### B.    Severance Is the Most Practical and Effective Way to Deal with These Significant Competing Interests

However the Court decides this motion, there will be prejudice to either Wells Fargo or Mr. Lofrano.  The Court is faced with the choice of either issuing a ruling that would expose Wells Fargo to claims of waiver in multiple other venues and have the precedential effect of more broadly compromising the corporate ability to rely on the confidentiality of privileged communications, or issuing a ruling that would deprive Mr. Lofrano of what he believes to be an important defense to the unfounded claims against him.

The Court need not choose between these two legitimate competing interests at this time. Wells Fargo agrees with Mr. Lofrano that the best course of action – now, before any of Wells

---

investigation was not guaranteed the right to present or cross-examine witnesses); *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 24-25 (1981) (due process considerations did not require appointment of counsel in hearings on termination of parental rights); *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 422 U.S. 1, 13 (1979) (upholding state parole process where inmates were guaranteed fact-finding procedures); *Cardoso v. Reno*, 127 F. Supp. 2d 106, 116 (D. Conn. 2001) (holding based on substantive (not procedural) due process grounds that detention of legal resident alien was unlawful).

Fargo's privileged material is ordered to be disclosed – is to sever the claims against the two defendants, and allow the Government's case to proceed against Wells Fargo first.  *See* Lofrano Br. at 14–18.  Wells Fargo understands that the Court has deferred ruling on the severance issue at this time but believes that this approach presents the greatest likelihood of doing the least amount of harm to both Defendants, without undue prejudice to the Government.

### C.      The Court Has Ruled That Wells Fargo Has Not Waived Its Privilege

The Government declines to take a position as to whether considerations of fairness require the compelled disclosure of Wells Fargo's privileged information but instead claims that "a new concern has arisen during the litigation of this issue."  Gov't Br. at 2.  This "new concern," according to the Government, is that both Mr. Lofrano and Wells Fargo may introduce evidence in support of a good faith or honest state of mind defense (separate and apart from any advice-of-counsel defense) that waives Wells Fargo's attorney-client privilege.  *Id.*  This is not a "new concern" – the Government raised the same issue on its prior motion to compel.  *See* Dkt # 268 at 8.  The Court, however, ruled on that motion that "nothing Wells Fargo has done – yet – constitutes a waiver of the privilege."  June 30 Order at 2.  Nothing has changed in the interim. The only issue before the Court is whether Mr. Lofrano can assert an advice-of-counsel defense, and if so, the scope of any compelled disclosure of privileged information.  Wells Fargo has not asserted an advice-of-counsel defense, and any request by the Government at this stage to limit the evidence that either Defendant will use at trial in support of other defenses is premature.

## II.      THE GOVERNMENT'S PROPOSED SCOPE SHOULD BE REJECTED

The Government's proposed scope is not appropriately tailored to the advice-of-counsel defense that Mr. Lofrano has particularized.  In its opposition, it offers no legitimate justification for expanding the scope of any additional discovery beyond Wells Fargo's proposal, which is tailored to Mr. Lofrano's representations concerning his defense.  Mr. Lofrano has represented to

6

the Court that he relied on legal advice from Wells Fargo in-house counsel Karen Jackson and Denise Brennan, that he received that legal advice only between 2004 and 2006, and does not claim that he received or relied on any additional legal advice thereafter.  Dkt # 272 ("Lofrano Submission") at 1-2.  Yet the Government wants the Court to compel a broad disclosure into other periods or permit discovery of other attorneys.  No such expansive discovery is warranted to provide the Government a fair opportunity to challenge the contours of Mr. Lofrano's defense.

The Government argues that it is entitled to information relevant to the elements of Mr. Lofrano's defense, specifically that he sought legal advice in good faith, disclosed all facts to counsel, and honestly and in good faith followed the legal advice he received.  *See United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012).  That is precisely what Wells Fargo's proposal would provide the Government.  Through a properly tailored additional deposition of Mr. Lofrano, the Government could test the assertions in Mr. Lofrano's Submission concerning the legal advice he received, when he received it, who he received it from, and whether he acted in accordance with it.  Indeed, the questions and answers as to some of these topics do not even implicate Wells Fargo's privilege.  Nor is there any dispute that, if the Court allows Mr. Lofrano to pursue this defense, the Government would be entitled to a deposition of the two in-house counsel identified by Mr. Lofrano as communicating the advice he relied on (limited to any direct communications between them and Mr. Lofrano during the time period Mr. Lofrano has identified).[5]  The Government has not cited any authority for what the proper scope of compelled disclosure should be where a party has not placed its legal advice at issue, and no court in the Second Circuit has addressed the issue (*see* Wells Fargo Br. at 14).  The Government has certainly presented no compelling reason for this Court to order the wholesale production of

---

[5]   With respect to documents, any further disclosure should be limited to any privileged documents identified by Mr. Lofrano or these in-house counsel during these depositions as reflecting the advice sought or obtained by Mr. Lofrano from these counsel.  *See* Wells Fargo Br. at 18.

Wells Fargo's privileged material, equivalent to what would be called for in the circumstances of a subject-matter waiver by Wells Fargo.

First, with respect to the time period, "Mr. Lofrano had no involvement in self-reporting prior to 2004." Lofrano Br. at 5 n.1. The Government does not cite to anything in the record that contradicts this fundamental fact, and there is therefore no basis to order any disclosure of Wells Fargo's privileged information concerning self-reporting issues that pre-dates 2004. With respect to the post-2006 time period, Mr. Lofrano has represented to the Court that he continued to act in conformity with the legal advice he received between 2004 and early 2006, and has made no claim that he received advice after that period. Lofrano Submission at 1. Under Wells Fargo's proposal, the Government would be permitted to continue the deposition of Mr. Lofrano, at which it can certainly ask him the question, under oath, if he sought or received *additional* legal advice on self-reporting issues after early 2006. If, consistent with the Lofrano Submission, the answer to that question is "no," there is no need to ever judicially compel the disclosure of any of Wells Fargo's privileged material from that period, and doing so now, without Mr. Lofrano placing that time period at issue, is completely unwarranted.

Second, with respect to the attorneys at issue, Mr. Lofrano has represented to the Court that the legal advice he relied on came from Ms. Jackson and Ms. Brennan. *See* Lofrano Submission at 1; Lofrano Br. at 4-5. The Government points to Mr. Lofrano's initial disclosures, which list David Whitaker (in addition to Ms. Jackson and Ms. Brennan) as a person "likely to have information" relevant to Mr. Lofrano's defenses, and Mr. Lofrano's response to one of the Government's interrogatories, which lists Mr. Whitaker (along with fifty-two other non-lawyers) as an individual who communicated with Mr. Lofrano regarding self-reporting requirements. Dkt # 263, Ex. C at 3-5. Neither of these discovery responses, however, state that Mr. Whitaker

provided legal advice to Mr. Lofrano about self-reporting requirements, and the Government points to nothing in the existing discovery record to the contrary.

The privilege log entries referenced by the Government do not change this analysis. With respect to Mr. Whitaker, the Government cites a privilege log entry that refers to a May 2004 email from Mr. Lofrano "seeking legal advice of Karen Jackson and David Whitaker regarding an FHA quality control plan." Gov't Br. at 9. In addition, the Government argues that it should be permitted discovery based on a privilege log entry for a June 2005 email "seeking legal advice of … outside counsel for Wells Fargo at K&L Gates, and Karen Jackson regarding reporting deficiencies to HUD." Gov't Br. at 9. Ms. Jackson was a recipient of both emails, and Mr. Lofrano has not represented that he ever received legal advice on self-reporting from Mr. Whitaker or K&L Gates. Thus, neither of these entries is inconsistent with Mr. Lofrano's position that the attorneys that provided him legal advice on self-reporting issues were Karen Jackson and Denise Brennan. The Government's only answer to this is to claim that it is entitled to broad discovery based on the subject-matter waiver principles this Court has already rejected. *See* Gov't Br. at 9 (citing *United States v. Exxon Corp.*, 94 F.R.D. 246 (D.D.C. 1981)). Again, under Wells Fargo's proposal, the Government will have the opportunity to solicit non-privileged responses from Mr. Lofrano during his continued deposition that, if consistent with his submission, will confirm that these other attorneys never provided legal advice to Mr. Lofrano on self-reporting issues.[6]

---

[6] There is no basis to permit discovery concerning legal advice provided to Mr. Lofrano's subordinates. Gov't Br. at 10-11. The specific subordinate the Government mentions – Diane Kobayashi – was deposed, and the Government does not identify anything in the record that suggests that she or any of Mr. Lofrano's other subordinates received legal advice on self-reporting issues that was then conveyed to Mr. Lofrano.

## III.    ANY DISCLOSURE SHOULD BE STAYED PENDING APPEAL

The Government has declined to address, on this motion, the question of whether a decision by this Court denying this motion should be certified for appeal under 28 U.S.C. § 1292(b), stating that "full briefing from all parties" after the Court's decision on this motion would be beneficial.[7]  Wells Fargo does not object to that proposition, but respectfully submits that it would be appropriate and necessary for the Court to enter a stay of any compelled disclosure pending final resolution of an interlocutory review process (including during the briefing on whether an interlocutory appeal should be certified).  *See* Wells Fargo Br. at 19. Neither the Government nor Mr. Lofrano have indicated that they would object to such a stay.

### CONCLUSION

For the reasons set forth herein, Wells Fargo respectfully requests that the Court grant Wells Fargo's Motion for a Protective Order.

Dated:  August 18, 2015

Respectfully submitted,

By  */s/ William F. Johnson*
William F. Johnson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
wjohnson@kslaw.com

Douglas M. Baruch, *pro hac vice*
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
801 17th Street NW
Washington, DC 20006
(202) 639-7000
douglas.baruch@friedfrank.com

*Attorneys for Wells Fargo Bank, N.A.*

---

[7]  Neither Mr. Lofrano nor the Government has objected to Wells Fargo's proposal (Wells Fargo Br. at 18) that any compelled disclosure of materials be designated as "Highly Confidential" subject to this Court's Protective Order.  Dkt # 97.