UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                  :

UNITED STATES OF AMERICA,          :
                  :

               Plaintiff,     :
                  :

         -v-          :
                  :

WELLS FARGO BANK, N.A., et al.,    :
                  :

            Defendants.    :
                  :
------------------------------------------------------------------------X

12-CV-7527 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

      In this civil fraud case, familiarity with which is assumed, the United States (the "Government") alleges that Defendants Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank") and Kurt Lofrano, a Bank employee, engaged in misconduct with respect to home mortgage loans that were insured by the Government. Now pending is Wells Fargo's motion to compel the Government to re-produce approximately 1,000 documents (the "Documents") that the Government "clawed back" on the last day of fact discovery. (Docket No. 235).[1] For the reasons stated below, Wells Fargo's motion is granted in part and denied in part.

      The current dispute centers on the interpretation and applicability of a protective order that the Court entered on March 21, 2014 (the "Protective Order"). (Docket No. 97). That Order, which was proposed by the parties (Docket No. 95), provides that, "if, in connection with this litigation, a party . . . discloses information subject to a claim of [any applicable privilege] . . . such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of

---

[1]    Wells Fargo's motion also raised objections to the Government's privilege log. Per an Order entered July 1, 2015, however, the parties are addressing those issues separately. (Docket No. 244).

privilege." (Protective Order 15-16). Despite the seemingly broad sweep of the Protective Order, the Bank contends that the Government was not entitled to claw back the Documents because it failed to "promptly" assert that they were privileged. (Wells Fargo Bank N.A.'s Mem. Law Supp. Mot. To Compel Re-Production "Clawed Back" Documents & Adequate & Complete Privilege Log Pl. (Docket No. 249) ("Wells Fargo's Mem.") 16-17).[2] According to the Bank, the Government was on notice that it had inadvertently produced privileged documents to Defendants since at least March 30, 2015, when the Bank alerted the Government to almost twenty documents that appeared to be privileged. (Decl. Kayla Stachniak Kaplan Supp. Wells Fargo Bank, N.A.'s Mot. To Compel Re-Production "Clawed Back" Documents & Adequate & Complete Privilege Log Pl. (Docket No. 250) ("Kaplan Decl.") ¶3, Ex. A). Further, in an e-mail sent the next day, Wells Fargo warned the Government that those documents seemed to be the "tip of the iceberg," and informed the Government that it would consider any privileges waived with respect to other documents that had not been clawed back by the end of the week. (Kaplan Decl., Ex. A). Nevertheless, the Government waited until May 15, 2015 — more than six weeks later — before clawing back the Documents. (Kaplan Decl. ¶ 16, Ex. G).

The Government responds that the Protective Order does not impose a deadline by which it must assert its privilege and that, in any event, it did act promptly in seeking the Documents' return. The Government asserts that it clawed back privileged documents as it identified them, and insists that it could not have been expected to re-review its production for privilege any sooner because of the large number of documents it had produced (about 1.7 million) and

---

[2]     Wells Fargo does not argue that the Government waived its privilege with respect to the Documents merely through its initial production of the Documents to Defendants. (*See* Wells Fargo's Mem. 14 ("Wells Fargo is not relying on the Government's original failure to properly or reasonably review its documents for privilege prior to production as a basis for a finding of waiver.")).

because the parties were in the midst of taking depositions.  (Mem. Law United States Am.

Opp'n Def. Wells Fargo Bank N.A.'s Mot. To Compel Re-production of "Clawed Back"

Documents (Docket No. 253) ("Gov't Mem.") 12-14).

In support of its argument that the Government waived its right to request the return or

destruction of the Documents by waiting too long, Wells Fargo largely relies on cases analyzing

waiver under Rule 502(b) of the Federal Rules of Evidence.  (Wells Fargo's Mem. 15-16 (citing

*Bensel v. Air Line Pilots Ass'n*, 248 F.R.D. 177, 180 (D.N.J. 2008); *Fed. Deposit Ins. Corp. v.*

*Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 483 (E.D. Va. 1991))).[3]  Courts in this Circuit,

however, have held that "[i]nadvertent disclosure provisions in stipulated protective orders are

generally construed to provide heightened protection to producing parties," as protective orders

would serve little purpose if "the provisions applied only to documents deemed inadvertently

produced under governing case law."  *U.S. Commodity Futures Trading Com'n v. Parnon Energy*

*Inc.*, No. 11-CV-3543 (WHP), 2014 WL 2116147, at *4-5 (S.D.N.Y. May 14, 2014) (internal

quotation marks omitted) (citing cases).[4]  Thus, where parties have entered into a protective

order that includes a non-waiver provision, as here, courts have found waiver only where the

producing party acted in a "completely reckless" manner with respect to its privilege.  *See, e.g.*,

---

[3]      The one case that Wells Fargo cites that did involve a protective order, *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06-CV-2804 (WMc), 2010 WL 275083, at *4 (S.D. Cal. Jan. 13, 2010), is not to the contrary.  In that case, two of the four documents at issue had been used at depositions or in court filings, and the other two were "related by subject matter." *Id.* at *1.  As discussed below, the Court here does find waiver with respect documents that were used without objection in depositions.  Further, the Court in *Luna Gaming* found that the party seeking to claw back privileged documents had not been sufficiently diligent.  *Id.* at *6-7.

[4]      Although the non-waiver provision here does not use the term "inadvertent," another provision addressing how the parties may respond to the disclosure of privileged information refers to "unintended or inadvertent" disclosure.  (Protective Order ¶¶ 27, 29).  Accordingly, the Court finds that the case law on non-waiver provisions governing inadvertent disclosure applies.

*Dover v. British Airways, PLC (UK)*, No. 12-CV-5567 (RJD) (MDG), 2014 WL 4065084, at *3-4 (E.D.N.Y. Aug. 15, 2014) (applying the "completely reckless" standard and citing cases); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 75 (S.D.N.Y. 2009) (same); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* No. 96 Civ. 7590 (DAB) (JCF), 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997) (similar).  For a producing party's actions to be deemed completely reckless, the party "must have shown no regard for preserving the confidentiality of the privileged documents."  *HSH Nordbank*, 259 F.R.D. at 75.

Wells Fargo has not met that standard.  Although the clawback at issue here occurred more than six weeks after Wells Fargo first notified the Government that it had received privileged documents, the Government began clawing back documents on a rolling basis on April 3rd.  (*See* Kaplan Decl. ¶ 7-8, 10, Exs. B-E).  The clawback at issue was merely the last one to occur.  Given the scale of discovery in this case, the Court cannot say that the Government's approach was unreasonable, let alone completely reckless.  Further, while the Government undoubtedly should have informed Wells Fargo (and the Court) that it was continuing its privilege review, nothing in the protective order — or in any case cited by Wells Fargo — obligated it to do so.  Wells Fargo states that it "reasonably assumed" that the Government's April 3rd clawback was the entire response to Wells Fargo's March 31st e-mail, but it never took any steps to verify that that was so, and, in any event, it admits that the Government continued to make requests for the return of documents, with which Wells Fargo complied, after that date.  (Wells Fargo Bank N.A.'s Reply Supp. Mot. To Compel Re-

Production "Clawed Back" Documents & Adequate & Complete Priv. Log Pl. (Docket No. 258) ("Wells Fargo's Reply") 4-5 & n.3; Kaplan Decl. ¶¶10-14, Ex. C-F).[5]

Nor does the large number of documents clawed back change the analysis.  First, "[i]t is not enough that the inadvertent production involved a large number of documents"; "[g]iven the scale of document production in contemporary litigation, errors — even those involving multiple documents — are inevitable."  *Parnon Energy Inc.*, 2014 WL 2116147 at *4.  Second, the number of documents clawed back cannot be considered in a vacuum, but rather must be viewed in relation to the total number of documents produced.  Here, the 1,000 or so Documents at issue make up less than one tenth of one percent of those turned over to the Bank during discovery.  *See HSH Nordbank*, 259 F.R.D. at 75 (upholding a clawback where the inadvertently disclosed documents "represent[ed] less than one-hundredth of one percent of those reviewed"); *cf. Dover*, 2014 WL 4065084, at *3-4 (finding that a production was not completely reckless where the privileged information consisted of a "few rows and columns of information embedded on two of 34 pages of spreadsheets").

In addition to arguing that the delay was unreasonable in and of itself, Wells Fargo contends that it has been unfairly prejudiced by the Government's decision to wait until the last day of fact discovery to claw back the Documents.  *See Dover*, 2014 WL 4065084, at *3-4 (considering whether the "'overriding issues of fairness' which underlie all determinations regarding waiver or forfeiture of protection of privileged documents" required a finding that

---

[5]     Wells Fargo argues that accepting the Government's argument would mean that the Government could "continue to claw back documents and assert privilege right up through summary judgment and trial."  (Wells Fargo's Mem. 20).  Waiting until summary judgment to claw back documents, however, could well rise to the level of "completely reckless."  Further, the prejudice to Wells Fargo if the Government waited so long would be much greater, perhaps tipping the analysis in favor of finding waiver.

privilege had been waived, even though the Court had already concluded that the party seeking to claw back a privileged document had not been "completely reckless").  Wells Fargo identifies two potential forms of prejudice: first, that "Wells Fargo had reviewed and relied on [the Documents] in developing its discovery and case strategy," and second, that the end of the fact discovery period deprived Wells Fargo of the opportunity to "do[] anything to alter the strategic decisions it had already made in the expectation that the documents were available."  (Wells Fargo's Mem. 18).  Wells Fargo, however, provides no detail about the kind of discovery it would have sought had the Government clawed back the Documents earlier.  Nor does it explain what information was contained in the 1,000 Documents that is not available elsewhere or why that information is central to its case.  Further, despite Wells Fargo's insinuations to the contrary (Wells Fargo's Mem. 19 (stating that the Government "postponed taking appropriate action" until after the close of discovery)), there is no evidence that the Government intentionally sandbagged Wells Fargo.  At bottom, therefore, Wells Fargo's prejudice argument amounts to little more than a complaint that it cannot use the information contained in the Documents.  But, as the Government points out in its memorandum of law (Gov't Mem. 15-16), "the prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information."  *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, No. 09-CV-9783 (RWS), 2013 WL 2322678, at *8 (S.D.N.Y. May 21, 2013).  That conclusion does not change merely because the relevant clawback occurred on the last day of discovery.  *See Quinby v. Westlb AG*, No. 04-CV-7406 (WHP), 2007 WL 2068349, at *3 (S.D.N.Y. July 18, 2007) (rejecting the plaintiff's  argument that applying work-product protection to a document after the close of discovery would be unfair to her because the close of discovery prevented her from "us[ing]

other means to obtain the evidence [the document] contain[ed]" on the grounds that the plaintiff

had had "ample incentive to obtain additional evidence" before the document was clawed back).

Wells Fargo is, however, entitled to two documents that were used, without objection,

during depositions. (Kaplan Decl. ¶¶ 20-21).[6]  Although the Protective Order provides that

*disclosure* does not waive any applicable privileges, it says nothing about whether the *failure to*

*object* to *use* of a documents constitutes waiver.  Accordingly, the Court finds that, as to the

documents used in depositions, the Protective Order's non-waiver provision does not apply.  *See*

*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06-CV-2804 (WMc), 2010 WL

275083, at *4 (S.D. Cal. Jan. 13, 2010) ("Although the Protective Order states that the

inadvertent disclosure of privileged documents 'shall not constitute a waiver of any privilege,' it

does not address under what circumstances failure to object to the use of inadvertently produced

privileged documents waives the privilege, which is what the Court must resolve here.").  *But see*

*Emps. Ins. Co. of Wausau v. Skinner*, No. 07-CV-735 (JS) (AKT), 2008 WL 4283346, at *7

(E.D.N.Y. Sept. 17, 2008) (applying the "completely reckless" analysis to a document that was

marked as a deposition exhibit without analyzing whether the failure to object fell within the

parties' confidentiality agreement).  Instead, the normal waiver analysis applies to those

documents, and, under that analysis, the failure to object plainly constituted a waiver.  *See Luna*

*Gaming*, 2010 WL 275083, at *5 (observing that "under both state and federal law, if a

privileged document is used at a deposition, and the privilege holder fails to object immediately,

the privilege is waived" and citing cases); *Fodelmesi v. Schepperly*, No. 87-CV-6762 (KMW),

---

[6]     Counsel did assert during one deposition that a document "might be" privileged, but
counsel allowed the witness to be questioned about the document, and, in any event, failed to
object to its use during three other depositions.  (Kaplan Decl. ¶ 21).

1990 WL 115607, at *3 (S.D.N.Y. Aug. 10, 1990) (finding waiver based on deposition testimony even though the parties had stipulated that all objections would be reserved until trial).[7]

     For the reasons stated above, the Bank's motion is GRANTED with respect to the documents used during depositions, but DENIED with respect to all other documents.

     The Clerk of Court is directed to terminate Docket No. 235.

     SO ORDERED.

Date:  August 26, 2015
       New York, New York

                                               JESSE M. FURMAN
                                 United States District Judge

---

[7]     Further, even if the "completely reckless" standard did apply to the two documents used at depositions, the Court finds that the standard would be met.  The Government argues that its failure to object does not constitute a waiver because it clawed back the documents just eleven and seventeen days after they were first introduced as deposition exhibits.  (Gov't Mem. 14-15).  But one of the documents was used at *four* depositions without objection, and eleven days is not an insignificant delay in this context.  (Kaplan Decl. ¶ 21).  Further, the depositions occurred in late May and early April (*see* Kaplan Decl. ¶¶ 22-23), by which time the Government had been warned that its production contained privileged documents and was in the midst of re-reviewing its production and conducting rolling clawbacks of privileged documents. The Government should therefore have been more vigilant about protecting any privileges during the depositions, and its failure to do so was completely reckless.