```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA,                                               :
                                                                        :
                                  Plaintiff,                            :       12-CV-7527 (JMF)
                                                                        :
                     -v-                                                :       OPINION AND ORDER
                                                                        :
WELLS FARGO BANK, N.A., et al.,                                         :
                                                                        :
                                  Defendants.                           :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      This case — a civil fraud case brought by the United States against Defendants Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank") and Kurt Lofrano (together with the Bank, "Defendants") — presents an issue of first impression within the Second Circuit: whether, or under what circumstances, an employee may pursue an advice-of-counsel defense where doing so requires disclosure of privileged communications and his employer owns the privilege and refuses to waive it.  In a prior opinion, the Court held that Lofrano's mere declaration of his intention to assert an advice-of-counsel defense — without more — does not impliedly waive the Bank's privilege.  *See United States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074 (S.D.N.Y. June 30, 2015) ("*Wells Fargo I*").  The Court indicated, however, that Wells Fargo might waive the privilege by failing to object to Lofrano's reliance on privileged communications or that, in any event, Lofrano's "right to present a defense could conceivably overcome Wells Fargo's right to maintain its privilege."  *Id.* at *3.

      Wells Fargo now moves for a protective order precluding Lofrano from disclosing any privileged communications (Docket No. 274) — thereby confirming that it does object and

squarely presenting the question of whether Lofrano's right to present the advice-of-counsel defense is sufficient to overcome the Bank's privilege.  For the reasons stated below, the Court concludes — in light of binding Supreme Court precedent — that it does not and that Lofrano may not assert an advice-of-counsel defense over Wells Fargo's objection.  The Court recognizes that that result is arguably harsh in this particular case, as it may well deprive Lofrano of his best defense to liability for tens of millions of dollars.  It is, however, the price that must be paid for society's commitment to the values underlying the attorney-client privilege.  Additionally, upon closer analysis, the result may be less harsh than first appears because, in the absence of a robust commitment to the privilege, the communications at issue may never have been made — or Lofrano might not have been made privy to them.  Moreover, in many cases, companies in Wells Fargo's position may choose to either waive the privilege or, if they choose not to do so for broader institutional reasons, indemnify their employees and pay the price themselves.

## BACKGROUND

The background of this case is described in detail in this Court's prior opinions, familiarity with which is assumed, and will not be repeated here.  *See United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7527 (JMF), 2015 WL 5051679 (S.D.N.Y. Aug. 26, 2015); *Wells Fargo I*, 2015 WL 3999074, at *1-2; *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 599-603 (S.D.N.Y. 2013).  For present purposes, it suffices to say that the United States brings claims under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA"), against Wells Fargo and Lofrano, alleging that they engaged in misconduct with respect to residential mortgage loans insured by the Government.  (Second Am. Compl. (Docket No. 77)).  Wells Fargo vigorously disputes the Government's claims, but does not rely on the advice of counsel as

a defense. By contrast, Lofrano does assert, among other defenses, that he relied on the advice of counsel — albeit Wells Fargo counsel — when he engaged in the alleged misconduct. (Answer & Aff. Defenses Def. Kurt Lofrano ("Lofrano Answer") (Docket No. 94) 36). Specifically, he asserts that he sought advice from at least two Wells Fargo attorneys about the legal requirements he is now alleged to have violated and that he then acted in conformance with the advice that he received. (*See* Mem. Law Def. Kurt Lofrano Response To Def. Wells Fargo Bank, N.A.'s Mot. Protective Order (Docket No. 280) ("Lofrano Mem.") 1; Lofrano July 21, 2015 Ltr. (Docket No. 272)). All parties agree that, if successfully pursued, the advice-of-counsel defense would be a complete defense to the Government's claims against Lofrano. (*See* Lofrano Mem. 5).

The potential clash between Lofrano's defense and Wells Fargo's privilege first came to the Court's attention a few months ago, when the Government moved to reopen fact discovery for the limited purpose of taking discovery relating to communications between Lofrano and counsel or, in the alternative, to bar Lofrano from asserting an advice-of-counsel defense. (Mem. Law United States Am. Supp. Mot. To Reopen Fact Disc. Limited Purpose & Compel Produc. Docs. Def. Wells Fargo (Docket No. 260) ("Gov't's Mot. Reopen Discovery") 2). In *Wells Fargo I*, the Court denied that motion without prejudice, holding that a company's privilege is not waived by an employee's "mere invocation" of an advice-of-counsel defense during discovery and that nothing Wells Fargo had done — as of then — constituted a waiver of the privilege. 2015 WL 3999074, at *1-2. The Court noted, however, that a failure by Wells Fargo to object to disclosure of privileged information in support of Lofrano's defense at trial "very well might" constitute a waiver. *Id.* at *3. Additionally, the Court noted, "Lofrano's right to present a defense could conceivably overcome Wells Fargo's right to maintain its privilege." *Id.*

3

To ensure that those issues were resolved in a timely fashion, the Court ordered the parties to propose a procedure to tee them up for decision. *See id.*

Thereafter, Wells Fargo confirmed that it did indeed object to Lofrano's disclosure of its privileged communications, so the Court ordered the parties to brief not only whether Lofrano "should be precluded from asserting the advice-of-counsel defense, but also the scope of any judicially compelled waiver of the privilege (and, by extension, the scope of any further discovery to be permitted)" in the event Lofrano was permitted to pursue the defense. (Mem. Endorsement (Docket No. 255) 10). Pursuant to the procedures that were adopted by the Court (*see id.*), Lofrano first made an *ex parte* submission outlining the basis of his defense and served a letter on the Government identifying the witnesses and documents upon which he would rely. (Docket Nos. 271, 272). Thereafter, the Government filed a letter describing the scope of additional discovery that it sought in the event that the Court allowed Lofrano to rely on privileged communications to pursue the defense. (Docket No. 273). Wells Fargo then responded with the present motion — specifically, a motion for a protective order preventing disclosure of information protected by its attorney-client privilege. (Docket No. 274; *see* Wells Fargo Bank, N.A.'s Mem. Law Supp. Mot. Protective Order (Docket No. 275) ("Wells Fargo Mem.") 8-14). Lofrano opposes the motion on the grounds of fairness and due process (Docket Nos. 280, 292), while the Government — which effectively takes no position on the question of whether Lofrano should be permitted to pursue the advice-of-counsel defense notwithstanding Wells Fargo's invocation of the privilege — argues that the scope of any compelled disclosure should be broader than Wells Fargo contends. (Docket No. 281).

**DISCUSSION**

As noted, the question presented here — whether an employee can pursue an advice-of-counsel defense that requires disclosure of his employer's privileged communications where the employer will not waive the privilege — appears to be one of first impression in this Circuit.[1] The question is a difficult one because it involves a conflict between two indisputably weighty principles. On the one hand, fundamental fairness and due process generally require that a person accused of wrongdoing — whether criminally or civilly — have "an opportunity to present every available defense." *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (internal quotation marks omitted). On the other hand, the attorney-client privilege is "one of the oldest recognized privileges for confidential communications," and "promote[s] broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (internal quotation marks omitted). It follows that the "rules which result in the waiver of this privilege," or that "possess the potential to weaken attorney-client trust, should be formulated with caution." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008).

In this case, Lofrano contends that "his constitutional right to present every available defense" overrides Wells Fargo's invocation of attorney-client privilege. (Lofrano Mem. 2). But

---

[1]     Lofrano and Wells Fargo urge the Court not to rule on the question at this time, arguing that it should grant a severance instead and allow the case to proceed to trial against Wells Fargo first — on the theory that the outcome of such a trial might obviate the need for further proceedings against Lofrano. (Wells Fargo Mem. 13; Lofrano Mem. 14-18). They do not dispute, however, that the Court would have to confront the issue even if Lofrano were tried separately. (*See* Docket No. 255). In the Court's view, the possibility that a trial against Wells Fargo might resolve the case against Lofrano is too speculative to justify the delays and inefficiencies that would result from holding two lengthy trials and deferring consideration of the present issue until after the first trial. Accordingly, the request for a severance on the basis of the issue presented here is denied.

5

whether the advice-of-counsel defense is "available" in the circumstances presented here is precisely the question. And any suggestion that the right to present every available defense *automatically* trumps the attorney-client privilege is plainly wrong. It is well established that the right to present a defense — even in criminal cases, where the right is at its strongest — is not "absolute," *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982), and "may, in appropriate cases, bow to accommodate other legitimate interests," *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). More specifically, the Supreme Court has held that a defendant "does not have an unfettered right to offer testimony that is incompetent, *privileged*, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (emphasis added); *see also, e.g.*, *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005) ("The right to present a defense . . . does not displace traditional privileges."); *Valdez v. Winans*, 738 F.2d 1087, 1089-90 (10th Cir. 1984) (holding that the Compulsory Process Clause did not override the attorney-client privilege).

      The protections afforded to privileged information are derived from the principle that certain policies and values are more important to society than the search for truth. As the D.C. Circuit has explained:

> The attorney-client privilege is but one of several privileges that prevent parties themselves from adducing particular evidence, and thus create an obstacle to fact finding due to the broad judgment that the value of introducing such evidence is outweighed by the harm inflicted upon other policies and values. The explicit burdens imposed by such evidentiary rules have never, to our knowledge, been held inconsistent with due process in the civil law context, because such burdens are simply a necessary consequence of society's attempt to balance the value of the complete admissibility of probative evidence with other competing values, such as the protection of vital professional or associational relationships.

*Rosen v. NLRB*, 735 F.2d 564, 572 (D.C. Cir. 1984). Or as the Second Circuit has put it, "the concept of a trial as a search for the truth has always failed of full realization whenever important facts are shielded from disclosure because of a lawful privilege. The key fact needed to prove a

defendant's innocence may be contained in a client's privileged admission to his attorney . . . ." *United States v. Turkish*, 623 F.2d 769, 775 (2d Cir. 1980).

Lofrano's argument, therefore, must be understood to be more nuanced and case-specific — that balancing the "probative and exculpatory value" of the evidence at issue against the need for Wells Fargo to keep the evidence confidential, the Bank's privilege must give way as a matter of fundamental fairness and due process. (Lofrano Mem. 9). The problem with that argument, however, is that it is all but foreclosed by the Supreme Court's decision in *Swidler & Berlin*. The question presented in *Swidler & Berlin* was whether the attorney-client privilege survives a client's death (the client in the case having been Deputy White House Counsel Vincent W. Foster, Jr.). 524 U.S. at 402-03. The Supreme Court held that it does, and rejected an argument that, even if the privilege generally survives death, there should be an exception where maintaining the privilege would result in "extreme injustice" or where the privileged information is "of substantial importance." *Id.* at 406-09. Reasoning that "a client may not know at the time he discloses information to his attorney whether it will later be relevant to a civil or a criminal matter, let alone whether it will be of substantial importance," the Court concluded that "[b]alancing *ex post* the importance of the information against client interests . . . introduces substantial uncertainty into the privilege's application." *Id.* at 409. It therefore explicitly "rejected use of a balancing test in defining the contours of the privilege." *Id.*

To be sure, the precise issue in *Swidler & Berlin* was whether the information at issue was (or remained) privileged in the first instance, not about whether the privilege could be overcome. And in a footnote, the Supreme Court did leave open the possibility that "exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the privilege," although it declined to reach the issue. *Id.* at 408 n.3. But this case is civil, not

7

criminal, and therefore would not fall within such an exception even if it did exist.  Additionally, the Court's reasoning compels the conclusion that a balancing test would be as problematic in evaluating whether the privilege is overcome by the need for evidence as it would be in deciding whether the privilege applies in the first instance.  That is, the use of a balancing test to determine whether a company, through no fault of its own, must forfeit its privilege based on an employee's later assertion of an advice-of-counsel defense would render the privilege no less uncertain than the use of such a test to determine whether the privilege applies in the first instance.  And as the Supreme Court has cautioned, "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."  *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981).

   Notably, there are many forms of privileges that are qualified and can, therefore, be overcome by a showing of sufficient need.  *See, e.g.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (journalist's privilege); *Bailey v. City of New York*, No. 14-CV-2091 (JBW) (VMS), 2015 WL 4523196, at *7 (E.D.N.Y. July 27, 2015) (deliberative process privilege); *see also, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 574 (S.D.N.Y. 2013) (work-product doctrine).  As *Swidler & Berlin* makes plain, however, the attorney-client privilege is not among them.  Holding that Lofrano — who, indisputably, lacks authority to waive the privilege on behalf of Wells Fargo, *see Wells Fargo I*, 2015 WL 3999074, at *2 — can force disclosure of the Bank's privileged information, even if only for the purpose of using it to defend against the Government's claims, would essentially transform a corporate entity's attorney-client privilege into a qualified privilege.  It would also upend the carefully calibrated doctrine governing when the privilege exists and who has authority to waive it.  *See, e.g.*, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) (analyzing who

may waive the privilege when a corporation is in bankruptcy); *Upjohn Co..*, 449 U.S. at 394-95 (analyzing when communications between corporate employees and counsel are privileged); *In re Grand Jury Proceedings*, 219 F.3d 175, 183-84 (2d Cir. 2000) (stating the test for when a corporate employee's disclosure of privileged information waives the corporation's privilege).

The conclusion that Lofrano's right to present an advice-of-counsel defense does not override Wells Fargo's privilege is consistent with the one and only Court of Appeals decision to address the issue presented here, *Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005). In *Ross*, a police officer sued the City of Memphis and its former police director, Walter Crews, for discrimination. Crews (who was sued in his individual capacity) sought to rely on the advice of counsel as a basis for his qualified immunity defense, but the City — which held the applicable privilege — objected. *See id.* at 597-99. The district court held that "the City's privilege 'must give way' so that Crews [could] mount his defense," reasoning that "'equitable notions of fairness dictate[d] that [Crews] be entitled to the right to disclose [the privileged] information.'" *Id.* at 599, 603 (quoting *Ross v. City of Memphis*, 224 F.R.D. 411, 414 (W.D. Tenn. 2004)). Relying heavily on *Swidler & Berlin*, the Sixth Circuit reversed, holding that the district court had "committed the same error that the Supreme Court found had been committed" in that case by adopting a balancing approach. *Id.* at 603. Such an approach, the Court reasoned, would make the City's "privilege dependent on *ex post* litigation choices made by its employees," which would, in turn, "render[] the privilege intolerably uncertain." *Id.* at 603-04. In *dictum*, the Sixth Circuit also "question[ed]" whether fairness actually called for the City's privilege to give way. *Id.* at 604. For one thing, Crews "retain[ed] the use of a qualified immunity defense, which generally turns on the *objective* reasonableness of an official's actions." *Id.* (emphasis added). Additionally, the Court declared, "[i]t is not unfair to prevent [Crews] from releasing

privileged communications with counsel in which he was not the client. . . . If anything, the district court's order prejudices the City, which loses the attorney-client privilege because of the litigation strategy deployed by its former employee." *Id.* at 604-05.

Although not binding on this Court, the Sixth Circuit's analysis in *Ross* is persuasive. Here, as in *Ross*, to hold that Lofrano can pursue his defense over the Bank's objection would "render[] the privilege intolerably uncertain" and prejudice Wells Fargo, which would "lose[]the attorney-client privilege because of the litigation strategy deployed by its former employee." *Id.* at 604-05. As the Court noted in *Wells Fargo I*, it would also create a perverse "incentive for plaintiffs to pursue claims against individual employees in the hopes of forcing a waiver of the corporation's privilege." 2015 WL 3999074, at *2. To be sure, Lofrano has a stronger argument than Crews had in *Ross* that fairness calls for the Bank's privilege to give way, as the advice of counsel would, in and of itself, be a complete defense to the Government's claims against him and, in contrast to Crews, there is no basis to believe that Lofrano can pursue his defense without the confidential communications at issue. (*See* Lofrano Mem. 12 n.8 (seeking to distinguish *Ross* on those grounds)). But the Sixth Circuit's perception that Crews did not necessarily need the materials at issue in *Ross* was not the basis for its holding; instead, it was offered, in *dictum*, as an "addition[al]" reason to question the district court's analysis. 423 F.3d at 604. More broadly, to argue that Lofrano's need for the materials at issue here is greater than Crews's need was for the materials at issue in *Ross* is merely to argue that the balancing of equitable considerations tips further in Lofrano's direction. Although undoubtedly true, *Swidler & Berlin* and *Ross* make clear that such balancing has no role whatsoever to play in the analysis.

For similar reasons, it is no answer to argue, as Lofrano does, that the Bank would not be prejudiced (or prejudiced much) because a judicially compelled disclosure would not be treated

by other courts as a full waiver of attorney-client privilege. (Lofrano Mem. 12-13). First, that argument also presumes a balancing of the importance of the evidence to Lofrano against the prejudice to the Bank. Second, even if the judicially compelled disclosure could be limited to whatever is disclosed in connection with this case, the prejudice to Wells Fargo would not necessarily be as limited as Lofrano suggests. The Government would undoubtedly be entitled to take some discovery beyond the evidence that Lofrano seeks to introduce in order to test the defense (although whether it would be entitled to as much discovery as it seeks here (Gov't July 28, 2015 Ltr. (Docket No. 273)) is a question that the Court need not reach). And regardless, once the privileged information was disclosed, the damage would be done — there would be no way to put the genie back in the bottle. Moreover, although the Court may possess some ability to prescribe the scope of any disclosure, *cf.* Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding."); *see also In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 526 (S.D.N.Y. 2015) ("Rule 502(d) provides that this Court's ruling on the question of waiver is binding on other courts throughout the country."), there is no guarantee that all courts (including courts outside the United States, where Wells Fargo operates) would adhere to those limitations. In the final analysis, just as "a client may not know at the time he discloses information to his attorney whether it will later be relevant to a civil or a criminal matter," a client could not predict *ex ante* whether a court would later limit the scope of any disclosure (or whether other courts would honor any such limitation). *Swidler & Berlin*, 524 U.S. at 409. Allowing any disclosure over the privilege holder's objections would therefore "introduce[] substantial uncertainty into the privilege's application." *Id.*

11

*United States v. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006), cited by the Court in *Wells Fargo I*, *see* 2015 WL 3999074, at *3, and upon which Lofrano relies here (Lofrano Mem. 8-9), does not call for a different result.  There, as here, individual defendants sought to assert an advice-of-counsel defense in reliance on their co-defendant company's privileged communications, but the company — which did not seek to assert the defense — objected.  The Court ultimately concluded that, for some of the individual defendants, the evidence at issue was "of such probative and exculpatory value as to compel admission of the evidence over [the company's] objection as the attorney-client privilege holder."  439 F. Supp. 2d at 1142.  *Grace*, however, was a criminal case, and its analysis was based explicitly on a criminal defendant's rights under the Sixth Amendment.  *See id.* at 1137-42.  By contrast, this case is civil, and the Sixth Amendment — which is limited, by its terms to "*criminal* prosecutions" — does not apply.[2]  More broadly, there are reasons to doubt that *Grace* was correctly decided.  Although the *Grace* Court quoted the Supreme Court's general description in *Swidler & Berlin* of the purpose of the attorney-client privilege, *see id.* at 1137, it included no analysis of the Supreme Court's decision.  And it is hard to square the *Grace* Court's holding with the Supreme Court's emphatic "reject[ion]" of the "use of a balancing test in defining the contours of the [attorney-client] privilege," let alone its observation that "there is no case authority for the proposition that

---

[2]   Lofrano argues that the Government's claims under FIRREA should be viewed as "quasi-criminal in nature." (Lofrano Mem. 7-8).  But he cites no authority for the proposition that the Sixth Amendment would apply in a case involving claims under FIRREA.  In any event, given the *Swidler & Berlin* Court's observation — noted below — that "there is no case authority for the proposition that the privilege applies differently in criminal and civil cases," 524 U.S. at 408-09, the Court need not decide whether a case under FIRREA is quasi-criminal or not.

12

the privilege applies differently in criminal and civil cases." 524 U.S. at 408-09. Thus, even if *Grace* did call for a different result here, the Court would decline to follow it.[3]

In short, the Court concludes that Lofrano is precluded from asserting an advice-of-counsel defense in light of Wells Fargo's refusal to waive its attorney-client privilege.[4] Although that result may seem harsh, it is the necessary consequence of commitment to the important policies and values underlying the attorney-client privilege. Additionally, on closer analysis, there are several reasons to conclude that the result is less harsh than it may appear. First, as the Supreme Court observed in *Swidler & Berlin*, "the loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place." 524 U.S. at 408 (citing cases). That is, "without assurance" that the privilege would apply without regard to an employee's *ex post*

---

[3] Nor do *United States v. Weisberg*, No. 08-CR-347 (NGG) (RMJ), 2011 WL 1327689, at *5 (E.D.N.Y. Apr. 5, 2011), *United States v. Renzi*, No. CR 08-212 TUC DCB (BPV), 2010 WL 582100, at *11 (D. Ariz. Feb. 18, 2010), *Moskowitz v. Lopp*, 128 F.R.D. 624, 637-38 (E.D. Pa. 1989), or *In re Nat'l Smelting of N.J., Inc. Bondholders' Litig.*, No. 84-CV-3199, 1989 U.S. Dist. Lexis 16962, at *15-17, 23-40 (D.N.J. June 29, 1989) — the only other cases the parties cite or the Court has found that have addressed an individual defendant's right to assert an advice-of-counsel defense over a company's attorney-client privilege — affect the analysis. *Weisberg* and *Renzi* were criminal cases, and both courts relied on the decision in *Grace*. *See Weisberg*, 2011 WL 1327689, at *5; *Renzi*, 2010 WL 582100, at *11. *National Smelting* and *Moskowitz* (which relied on *National Smelting*) were decided before *Swidler & Berlin* and contained little analysis of the issue presented here. Further, in *National Smelting*, the Court held that the company's privilege was waived by implication given the individual defendant's high-level positions at the company and the fact that there had already been a "partial actual disclosure of confidential attorney-client information." 1989 U.S. Dist. Lexis 16962, at *35-40. Here, as the Court held in *Wells Fargo I*, there is no basis to conclude that the privilege was waived by implication.

[4] The Court's conclusion assumes that Lofrano could not assert an advice-of-counsel defense without relying on information protected by Wells Fargo's privilege. In their memoranda of law, the parties appear to assume the same, and it is hard — perhaps inconceivable — to imagine that Lofrano could pursue the defense without intruding on the privilege (either through his own disclosures or through whatever discovery the Government would be entitled to in an effort to rebut the defense). If Lofrano believes that assumption is wrong, he may move for reconsideration of the Court's decision.

litigation choices, a company might "very well" not make disclosures in the first place (or severely limit the circle of employees privy to disclosures), "so the loss of evidence is more apparent than real." *Id.* Second, in a significant number of cases where an advice-of-counsel defense would be viable, the corporation would presumably waive the privilege. After all, if the employee has a viable defense, then the corporation likely would as well (or would want to allow the employee to pursue the defense to avoid vicarious liability or indemnification); and, regardless, if a corporation is known not to protect its employees in civil cases such as this one, it may generate negative publicity and lead to difficulty recruiting and retaining high-quality workers. Finally, many corporations indemnify their employees. Indemnity would obviously not protect an employee or former employee from the reputational damage of an adverse verdict, but it would mean that when a company decides — as Wells Fargo has here — that its institutional interests in maintaining the privilege outweigh its employee's interests in asserting the advice-of-counsel defense, the company is the one to pay the financial price for that decision.

## CONCLUSION

The Second Circuit has acknowledged that commitment to the policies and values underlying the attorney-client privilege can result in injustice in individual cases. "Recognition of the privilege," the Court has explained, "reflects a judgment that impairment of the search for truth in some instances is outweighed by the social and moral values of confidential consultations. The law accepts the risks of factual error and injustice in individual cases in deference to the values that the privilege vindicates." *In re Grand Jury Investigation*, 399 F.3d 527, 531 (2d Cir. 2005) (internal quotation marks and alterations omitted)). No doubt, that is cold comfort to Lofrano — who may well have taken actions on Wells Fargo's behalf in the good-faith belief that he was acting in compliance with the law, and cannot make that argument

at trial in light of Wells Fargo's refusal to waive its attorney-client privilege. But the reality is that the privilege at issue here does not belong to Lofrano — it belongs to Wells Fargo, and only Wells Fargo can elect to waive it. Wells Fargo has refused to do so, and Lofrano is ultimately asking the Court to disregard — or do an end run around — that refusal. For the reasons stated above, the Court cannot do so. Accordingly, Wells Fargo's motion for a protective order is granted.[5]

The Clerk of Court is directed to terminate Docket No. 274.

SO ORDERED.

Date:   September 22, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[5] In its memorandum, the Government presents as a "new concern" that "both Defendants may intend to rely on testimony from Lofrano and other evidence that refers to the fact that legal counsel were consulted in formulating the Bank's self-reporting policy." (Mem. Law United States Am. Opp'n Mot. Def. Wells Fargo Bank, N.A. Protective Order (Docket No. 281) 2). That issue, however, is not fully briefed, so the Court declines to address it at this time.