```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA,                                               :
                                                                        :
                            Plaintiff,                                  :       12-CV-7527 (JMF)
                                                                        :
            -v-                                                         :       OPINION AND ORDER
                                                                        :
WELLS FARGO BANK, N.A., et al.,                                         :
                                                                        :
                            Defendants.                                 :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank") — one of two defendants in this civil fraud case brought by the United States, familiarity with which is assumed — moves to compel the production of certain documents withheld by the Government, mostly on the basis of the deliberative process privilege. (Docket No. 276; *see also* Decl. Jennifer M. Wollenberg Supp. Wells Fargo Bank, N.A.'s Mot. To Compel Produc. Docs. Withheld Pl. (Docket No. 278) ("Wollenberg Decl."), Exs. B, C (listing challenged log entries)).[1] Upon review of the parties' submissions (Docket Nos. 277, 284, 293), and an *in camera* review of the documents that remain in dispute, the motion is denied except as set forth below.[2]

---

[1]   Kurt Lofrano (together with Wells Fargo, "Defendants"), the other defendant in this case, joins Wells Fargo's motion with respect to some, but not all, of the requested documents. (*See* Wells Fargo Bank, N.A.'s Mem. Law Supp. Mot. To Compel Produc. Docs. Withheld Pl. (Docket No. 277) ("Wells Fargo Mem.") 1 n.1).

[2]   The Government has stated that it will release (and presumably may already have released) Log Entry Nos. 1,783; 4,436; 4,439; and 13,733. Those log entries are therefore no longer at issue. To the extent Wells Fargo is challenging the withholding of documents with respect to which the Court has already upheld the Government's claims of privilege (*see* Gov't's Mem. 8 n.3), Wells Fargo's motion is denied for the reasons previously given. Further, some of the documents at issue (Log Entry Nos. 1,586; 1,588; 1,589; 1,599; and 2,390) are subject to the attorney-client privilege. (*See* Gov't Mem. 9 n.5; *see also* Wells Fargo Mem. 13 n.20 (stating

First, Wells Fargo argues that the Government has waived its deliberative process privilege with respect to the documents at issue because it has "discretionarily released" or "removed to be produced" thousands of documents that are "similarly situated" or "functionally equivalent" to the challenged documents. (Wells Fargo Mem. 4-10). Relying on cases addressing waiver of the attorney-client and work product privileges, Wells Fargo argues that the Government is not entitled to "the extreme advantage" of being allowed to "determin[e] on its own which responsive privileged documents it will produce and which ones it will withhold." (Wells Fargo Mem. 9-10 (citing *Freedman v. Weatherford Int'l Ltd.*, No. 12-CV-2121 (LAK) (JCF), 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014), and *Bristol-Myers Squibb Co. v. Rhône-Poulenc Rorer, Inc.*, No. 95-CV-8833 (RPP), 1997 WL 801454, at *3 (S.D.N.Y. Dec. 31, 1997), among other cases). But, as the Government points out in its memorandum of law (Mem. Law Pl. United States Am. Opp'n Def. Wells Fargo Bank N.A.'s Mot. To Compel Produc. Docs. Withheld Pl. (Docket No. 284) ("Gov't Mem.") 2-5), courts have overwhelmingly (if not uniformly) held that "the release of a document only waives the *deliberative process* privilege for the document that is specifically released, *and not* for related materials." *Marisol A. v. Giuliani*, No. 95-CV-10533 (RJW), 1998 WL 132810, at *8 (S.D.N.Y. Mar. 23, 1998) (quoting *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997)) (internal quotation marks and alterations omitted) (emphasis added); *see, e.g.*, *Lehman Bros. Holdings, Inc. v. United States*, No. 10-CV-6200 (RMB), 2014 WL 715525, at *2 (S.D.N.Y. Feb. 24, 2014) (rejecting the plaintiff's

---

that there are "ample grounds to believe that the Government should not have asserted privilege over the entirety of these documents," but without specifying what those grounds are); Wells Fargo June 26, 2015 Ltr. (Docket No. 238) 8 (same); Wells Fargo Bank N.A.'s Reply Mem. Supp. Mot. To Compel Produc. Docs. Withheld Pl. (Docket No. 293) ("Wells Fargo Reply") 3 n.6). The Court therefore need not, and does not, reach the question whether they are also protected by the deliberative process privilege.

position, "asserted without citation to authority, that the deliberative process privilege has been waived by virtue of the Government's submission of [a] 'similar' witness affidavit in" an earlier case); *Gen. Elec. Co. v. Johnson*, No. Civ.A.00-2855 (JDB), 2006 WL 2616187, at *17 (D.D.C. Sept. 12, 2006) ("The concept of subject-matter waiver is almost uniquely a function of the attorney-client relationship.  There is no authority for applying the waiver rule to the deliberative process privilege.").

Wells Fargo gives the Court no reason to depart from this general rule, which is "designed to ensure that agencies do not forego voluntarily disclosing some privileged material out of the fear that by doing so they are exposing other, more sensitive documents." *Sealed Case*, 121 F.3d at 288.  Although Wells Fargo argues that a different result is called for where, as here, the Government is the plaintiff (Wells Fargo Reply 1 n.2), it does not cite — and the Court is not aware of — any cases suggesting, let alone holding, that whether selective disclosure of documents protected by the deliberative process privilege results in a subject matter waiver turns on which side of the "v." the Government appears. *See Gen. Elec. Co.*, 2006 WL 2616187, at *17 (calling the "importing [of] the waiver rule into the realm of the deliberative process privilege" an "unprecedented action").[3]  The Government's status as a plaintiff may well bear on whether the deliberative process privilege is overcome.  But there is no reason why the applicability of subject matter waiver in this context should turn on whether the Government is a plaintiff or a defendant; concerns about a party using the privilege as "both a sword and a shield," which underlie the waiver doctrine with respect to the attorney-client and work product

---

[3]   *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571 (2012), the main case on which Wells Fargo relies (*see* Wells Fargo Mem. 8-9; Wells Fargo Reply 1 n.3), involved the question whether the government could claw back documents that had been inadvertently disclosed, not whether it had waived its deliberative process privilege with respect to one document merely by producing another.  *See* 106 Fed. Cl. at 580.

3

privileges, are equally strong whether the party invoking the privilege is a plaintiff or a defendant. (Wells Fargo Mem. 9 (quoting *Freedman v. Weatherford Int'l Ltd.*, 12-CV-2121 (LAK) (JCF), 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014)). Accordingly, the Court declines to find a blanket waiver of the deliberative process privilege here.

Next, Wells Fargo argues that the Government has failed to properly invoke the deliberative process privilege with respect to more than twenty of the documents at issue. (Wells Fargo Mem. 10-11). *See Commodity Futures Trading Comm'n v. Royal Bank of Canada*, No. 12-CV-2497 (AKH), 2013 WL 1932120, at *1 (S.D.N.Y. May 8, 2013) (quoting *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002)) (stating that, in order to qualify for the deliberative process privilege, "the information must be inter- or intra-agency, pre-decisional, and deliberative" (internal quotation marks omitted)). Substantially for the reasons explained in the Government's memorandum of law (Gov't Mem. 11-12), the documents at issue are clearly deliberative. They all represent "an essential link in a specified consultative process," *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 439, 442 (S.D.N.Y. 2009) (internal quotation marks omitted), and none of them contains "purely factual material . . . that is severable without compromising the private remainder of the documents," *Houser v. Blank*, No. 10-CV-3105 (FM), 2013 WL 873793, at *2 (S.D.N.Y. Mar. 11, 2013). (*See* Decl. Helen R. Kanovsky (Docket No. 286) ("June 19, 2015 Kanovsky Decl."); August 19, 2015 Decl. Helen R Kanovsky (Docket No. 287) ("Aug. 19, 2015 Kanovsky Decl.")). Accordingly, Wells Fargo's arguments about the propriety of the Government's invocation are rejected.

Wells Fargo maintains that, even if the documents are covered by the deliberative process privilege, it has demonstrated sufficient need to overcome the privilege with respect to three categories of documents. (Wells Fargo Mem. 12-15). *See Stinson v. City of New York*, 304

F.R.D. 432, 436 (S.D.N.Y. 2015) (discussing the factors used to determine whether the deliberative process privilege is overcome, including "the relevance of the requested materials to the requesting party's case" and the potential for "the chilling of internal candor") (internal quotation marks omitted).  Based on its *in camera* review of the documents at issue, the Court concludes that the first category of requested documents (internal documents and e-mails relating to draft and proposed rules) (*see* Wells Fargo Mem. 12; June 19, 2015 Kanovsky Decl. 4-5)), and most of the second category (an e-mail from one Department of Housing and Urban Development ("HUD") employee to another inquiring as to the appropriate steps to take, and an e-mail chain about areas of focus for an upcoming review of another lender (*see* Wells Fargo Mem. 13-14; Aug. 19, 2015 Kanovsky Decl. 4-7)) have little bearing on this case and therefore need not be produced.  With respect to the third category of documents (a draft findings letter and attachments prepared as part of a review of another lender (Wells Fargo Mem. 14-15; Aug. 19, 2015 Kanovsky Decl. 3)), Wells Fargo's only argument for disclosure is that it has not received a final version of the letter at issue.  (Wells Fargo Mem. 14-15).  As the Government represents that it has produced the final version (Gov't Mem. 15), Wells Fargo's motion as to those documents is denied as well.

  Wells Fargo makes a sufficient showing of need, however, with respect to the draft indemnification letters and agreements for Wells Fargo included in the second category of requested documents (Log Entry Nos. 1,307-1,310; 1,353-1,354; and 4,412).  The Government argues that Wells Fargo's failure to properly self-report problematic loans deprived the Government of the opportunity to seek indemnification with respect to those loans.  (Second Am. Compl. (Docket No. 77) ("SAC") ¶¶ 122, 139).  It also argues that one of Wells Fargo's motivations for not properly self-reporting was to avoid indemnification.  (SAC ¶¶ 5, 134).

Wells Fargo is entitled to challenge those allegations by investigating the types of deficiencies for which the Government considered requesting indemnification. Further, as Wells Fargo points out in its memorandum of law, "[d]ocuments specifically related to potential indemnification on Wells Fargo loans are highly relevant because if HUD already has assessed one or more of the loans at issue in the Government's allegations and determined that any non-compliance did not rise to the level of materiality that would affect the eligibility of the loan for FHA insurance, then the Government cannot establish the necessary elements of its claims." (Wells Fargo Mem. 13 n.21). Those documents must therefore be disclosed.

Next, Wells Fargo argues that the Government has waived its work product protection with respect to "all records of its communications with any former Wells Fargo employees" because it used notes relating to two particular employees at their depositions. (Wells Fargo Mem. 15-17). It is well established that work product protection can be waived through the "selective disclosure of certain material." *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 363 (E.D.N.Y. 2009). In light of that principle, the Government has already agreed to produce all notes with respect to the two witnesses for which interview notes were used. (Gov't Mem. 16 n.12). But Wells Fargo is not satisfied with that, and argues that notes as to *all* former employees must be produced because they all relate to the "same subject matter." (Wells Fargo Reply 5-7). Courts have generally held, however, that the disclosure of interview notes from one witness does not require that notes from other witnesses be disclosed. *See, e.g.*, *See United States v. Treacy*, No. 08-CR-366 (JSR), 2009 WL 812033, at *1 (S.D.N.Y. Mar. 24, 2009); *Sickau v. Siegel, Kelleher & Kahn*, No. 03-CV-0364 (KS), 2005 WL 6778194, at *4 (W.D.N.Y. July 26, 2005). As those Courts have recognized, the point of the waiver doctrine is to prevent prejudice to the opposing party, and any potential prejudice caused by the partial

6

disclosure of notes relating to a particular witness is cured by the disclosure of the remaining notes as to that witness. *See, e.g.*, *Sickau*, 2005 WL 6778194 at *4. That the Government decided to list all of the interview notes in one privilege log entry rather than separate them into many entries is beside the point. (*See* Wells Fargo Reply 5). What matters is the content of the disclosed and withheld documents, not the way they are presented on the privilege log.[4]

The last remaining issue is whether the Government is entitled to withhold on privilege grounds certain documents that Wells Fargo believes are relevant to the Government's invocation of the False Claim Act's ten-year statute of limitation. (Wells Fargo Mem. 17-23). It is well established that the attorney-client privilege "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see, e.g.*, *Crawford v. Coram Fire Dist.*, No. 12-CV-3850 (DRH) (WDW), 2014 WL 1686203, at *4 (E.D.N.Y. Apr. 29, 2014) (finding that waiver occurs "when a party puts *its own* conduct at issue," and "attempts to use the privilege both as a shield and a sword by partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny"). The parties disagree on the exact formulation of the test for implied waiver, but they both acknowledge that whether waiver has occurred here turns on whether the requested privileged information is "vital" to the Bank's defense. (*Compare* Wells Fargo Mem. 21 (arguing that the Court should apply the test from *Hearn v. Rhay*, 68 F.R.D. 574

---

[4] The Government has withheld certain e-mails related to the two witnesses' interviews. As the interview notes are almost purely factual work product, and the e-mails represent opinion work product, however, the e-mails do not have to be disclosed. *See, e.g.*, *The Shinnecock Indian Nation*, 652 F. Supp. 2d at 364 (holding that the disclosure of factual work product does not waive the privilege with respect to opinion work product "so long as th[e] higher protection" given to opinion work product was not also waived).

(E.D. Wash. 1975), which considers whether "application of the privilege would have denied the opposing party information vital to his defense") *and* Wells Fargo Reply 7-9 (similar), *with* Gov't Mem. 18-22 (criticizing *Hearn* but arguing that Court may only order disclosure of information that is "vital")).

Applying that standard, Wells Fargo argues that the Government should be required to disclose "documents includ[ing] Program Civil Fraud Remedies Act ('PFCRA') referrals and other communications from HUD to [the Department of Justice] concerning audits, reviews, and investigations of Wells Fargo." (Wells Fargo Mem. 18). The Government argues that it should not be required to disclose such documents because Wells Fargo already has "a wealth" of information related to the enforcement actions discussed in the confidential documents. (Gov't Mem. 20-21). But none of those other documents, which largely involve HUD communications and judicial documents, discloses communications involving the Department of Justice ("DOJ"); none of them, therefore, goes directly to what DOJ, as opposed to HUD or other agencies, knew. Having successfully argued previously that it is DOJ's knowledge — not HUD's knowledge — that is relevant to the statute-of-limitations question, *see United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 608-09 (S.D.N.Y. 2013), the Government cannot shield documents that might reflect DOJ's knowledge from disclosure on the grounds that it has turned over documents reflecting the knowledge of other government agencies.

More substantial is the Government's argument that none of the relevant documents contains information relevant to the statute-of-limitations question. (Gov't Mem. 22). The Government defines the potential universe of relevant documents narrowly, arguing that none of the withheld documents is relevant because neither the documents themselves nor the related enforcement action concerns self-reporting. (*Id.*). The question, however, is not whether the

8

document addresses self-reporting directly, but rather whether DOJ's receipt and review of the challenged documents and communications made it aware (or should have made it aware) of Wells Fargo's alleged self-reporting deficiencies.  Applying that standard, the Court concludes that most of the disputed documents do not have to be disclosed, as they have little or no bearing on the question of when DOJ learned (or should have learned) about Wells Fargo's alleged misconduct.  A few documents at issue, however, may call for a different conclusion.

First, Log Entry 18,658 is an e-mail from a HUD attorney to an attorney at DOJ concerning a proposed PFCRA action.  (Wollenberg Decl., Ex. C, at 1).  That e-mail attaches a "HUD OIG report concerning Wells Fargo Bank N.A."  The Government claims that the document relates to an action filed against Wells Fargo as the successor in interest to Crossland Mortgage Corporation (Gov't Mem. 20), but it is not clear from the face of the e-mail which HUD OIG report the e-mail refers to, and the Government did not submit the attachment itself for *in camera* review.  If the "HUD OIG report" refers to an audit of Wells Fargo, for example, then the fact that someone at DOJ received it and the context in which the audit was sent would be "vital" to Wells Fargo's ability to test the Government's statute-of-limitations argument, as Wells Fargo may be able to argue that the audit either alerted DOJ to Wells Fargo's alleged misconduct or should have alerted it to that misconduct.  Accordingly, by no later than **two weeks** from the date of this Opinion and Order, the Government shall revise its privilege log to clarify the subject of the "HUD OIG report."  If it was an audit of Wells Fargo, by that same date, it shall disclose Log Entry 18,658 to Wells Fargo (along with, presumably, the letter sent to DOJ referenced in the e-mail, unless that letter was previously produced), although it may redact the entire second paragraph of the e-mail.  If it is another type of report, the Government shall,

by the same date, advise the Court by letter so that the Court may decide whether the e-mail or the attachments to the e-mail must be disclosed.

The second log entry that could contain information that must be disclosed to Wells Fargo is Log Entry 41,369, which is described on the privilege log as an "[a]ttorney work file relating to [a] PFCRA action against Wells Fargo arising from HUD OIG Audit Report No. 2004-KC-1003." (Wollenberg Decl., Ex. C., at 3). Notably, the privilege log does not identify the attorney that created the file or state for which agency that attorney worked. Assuming that the attorney did not work for DOJ, most of that file is not relevant. But the file contains a draft letter from Dane Narode, a HUD attorney, to Michael F. Hertz, the Director of the Commercial Litigation Branch in the Civil Division of DOJ, which contains information that would be highly relevant to the statute-of-limitations issue if the letter was actually sent. Accordingly, by no later than **two weeks** from the date of this Opinion and Order, the Government shall submit a letter stating whether a final version of that document was ever sent to Hertz or anyone else within DOJ and, if so, whether it was already disclosed to Defendants. If so, by the same date, the Government must submit the final version for *in camera* review.[5]

Finally, several of the Log Entries — namely, Log Entries 41,369; 41,376; and 41,377 (Wollenberg Decl., Ex. C, at 3-4) — contain files that were either created by, or in the possession of, an attorney, but they do not specify whether the attorney worked for DOJ. Because some of those documents may bear on the statute-of-limitations question if the custodian did in fact work for DOJ, the above letter shall also state whether any of the files were created by, or were

---

[5] The file also contains letters from Narode to Joyce Branda of the Commercial Litigation Branch in the Civil Division at DOJ, which could be relevant to the statute-of-limitations issue. In its letter, the Government shall advise whether those letters were sent to Ms. Branda and, if so, whether the final versions were disclosed to Defendants.

10

otherwise in the possession of, a DOJ attorney. If so, the Court will conduct a further review to determine whether any portion of those documents must be disclosed.

For the foregoing reasons, Wells Fargo's motion to compel is granted in part and denied in part. Specifically, it is denied as to all documents except for Log Entries 1,307-1,310; 1,353-1,354; and 4,412, which must be disclosed to Wells Fargo. Log Entry 18,658, the final version of the letter contained in Log Entry 41,369, and portions of Log Entries 41,369; 41,376; and 41,377 may also have to be disclosed, pending further clarification from the Government.

The Government is hereby directed to submit a copy of all the materials that were submitted to the Court for its *in camera* review to the Sealed Records Department so that they may be made part of the record in this matter. Additionally, the Government shall promptly file on ECF a copy of its letter dated September 14, 2015, accompanying some of the documents submitted to the Court, as the Court sees no basis for the letter itself (which was copied to defense counsel) to be kept under seal.

The Clerk of Court is directed to terminate Docket No. 276.

SO ORDERED.

Date: October 21, 2015
New York, New York

JESSE M. FURMAN
United States District Judge