**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Plaintiff,</td><td>:</td><td>12 Civ. 7527 (JMF)(JCF)</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td>STIPULATION AND ORDER OF</td></tr>
<tr><td></td><td>:</td><td>SETTLEMENT AND DISMISSAL</td></tr>
<tr><td>WELLS FARGO BANK, N.A. and</td><td>:</td><td>WITH PREJUDICE</td></tr>
<tr><td>KURT LOFRANO,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Defendants.</td><td>:</td><td></td></tr>
</table>

----------------------------------------------------------------x

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**_____
**DATE FILED:  04/08/2016**_____

WHEREAS, this Settlement Agreement ("Agreement") is entered into by and among the United States of America and its agencies and departments, including the United States Department of Housing and Urban Development ("HUD") and the Federal Housing Administration ("FHA") (collectively, the "United States" or "Government"), by its attorneys, Preet Bharara, United States Attorney for the Southern District of New York, and Brian J. Stretch, United States Attorney for the Northern District of California; Wells Fargo Bank, N.A. ("Wells Fargo Bank"), by its authorized representatives; and Kurt Lofrano ("Lofrano"), by his authorized representatives;

WHEREAS, since at least May 1, 2001, Wells Fargo Bank (or its predecessor) has been a participant in the Direct Endorsement Lender Program, a Government program administered by the FHA and HUD pursuant to which private-sector mortgage lenders are authorized to originate and close mortgage loans, without prior HUD approval, to be insured by the FHA;

WHEREAS, the Government filed the action styled *United States v. Wells Fargo Bank, N.A.* (12 Civ. 7527) (the "Action") in the U.S. District Court for the Southern District of New York (the "Court") on October 9, 2012, and then filed an Amended Complaint on December 14,

2012, and a Second Amended Complaint (the "Complaint") on January 10, 2014, which added Lofrano as a named defendant;

WHEREAS, in the Complaint, the Government alleged, *inter alia*, that (a) during the period January 1, 2002 through December 31, 2010, Wells Fargo Bank failed to self-report to HUD certain FHA loans that Wells Fargo Bank's quality assurance personnel had determined contained a material finding, and (b) during the period May 1, 2001 through October 31, 2005, Wells Fargo Bank submitted loans for FHA mortgage insurance that did not meet the underwriting requirements contained in HUD's handbooks and mortgagee letters, and therefore were not eligible for FHA insurance under the Direct Endorsement Lender Program;

WHEREAS, for purposes of this Agreement, the term "Complaint Conduct" refers to the conduct alleged in the Complaint;

WHEREAS, (a) Lofrano states that, at all relevant times, he relied in good faith on the advice of counsel; (b) Lofrano raised an advice of counsel defense in the Action based on that assertion; (c) the Court stated that "if successfully pursued, the advice-of-counsel defense would be a complete defense to the Government's claims against Lofrano," (Docket Entry No. 295); and (d) by decision of the Court in the Action (Docket Entry No. 295), Lofrano was precluded from pursuing that defense, and the Government was prevented from evaluating that defense;

WHEREAS, beyond the allegations in the Complaint, the U.S. Attorney's Office for the Southern District of New York alleges, *inter alia*, that subsequent to October 31, 2005, Wells Fargo Bank submitted certain loans for FHA mortgage insurance that did not meet the underwriting requirements contained in HUD's handbooks and mortgagee letters, and therefore were not eligible for FHA insurance under the Direct Endorsement Lender Program;

WHEREAS, the United States Attorney's Office for the Northern District of California has investigated whether American Mortgage Network, LLC, a lender whose parent company was acquired by Wachovia Bank N.A. in December 2005 and whose parent company subsequently was acquired by Wells Fargo Bank in October 2009 before its FHA lender status was formally terminated in March 2010, had submitted certain loans for FHA mortgage insurance after December 31, 2005, that did not meet the underwriting requirements contained in HUD's handbooks and mortgagee letters, and therefore were not eligible for FHA insurance under the Direct Endorsement Lender Program;

WHEREAS, for purposes of this Agreement, "Wells Fargo" shall mean the following: Wells Fargo & Co., Wells Fargo Bank, Wells Fargo Home Mortgage, Inc., American Mortgage Network, LLC, Wachovia Mortgage FSB, and Wachovia Bank, N.A., and any predecessors, parents, joint ventures, affiliates, divisions, and/or subsidiaries of the entities discussed in this Paragraph;

WHEREAS, for purposes of this Agreement, the term "Covered Loan Conduct" refers to all acts or omissions through the date of signing of this Agreement ("Execution Date") by or on behalf of Wells Fargo (including, but not limited to, retail, wholesale, correspondent, and joint venture lines of business) in connection with the origination of, underwriting of, closing of, endorsement of, and/or submission of claims on single-family residential FHA loans, except the term Covered Loan Conduct does not refer to any conduct or claims relating to, (1) Home Equity Conversion Mortgages under 12 U.S.C. § 1715z-20 ("HECMs"), (2) loan servicing, including loss mitigation activities, and (3) any FHA loans endorsed for FHA mortgage insurance after December 31, 2010 and for which a claim has not been paid prior to the Execution Date;

WHEREAS, for purposes of this Agreement, the term "Covered Annual Certification Submission Conduct" refers to all acts or omissions through the Execution Date by or on behalf of Wells Fargo relating to the preparation and submission of annual certifications to HUD;

WHEREAS, for purposes of this Agreement, the term "Covered Conduct" refers to the Complaint Conduct, the Covered Loan Conduct, and the Covered Annual Certification Submission Conduct;

WHEREAS, Wells Fargo Bank and Lofrano reserve the right to contest the use or application of this document in any future litigation and state that this document is not an admission as to any conduct related to any mortgage loan not released in this Agreement; and

WHEREAS, the Government, Wells Fargo Bank, and Lofrano have reached a mutually-agreeable resolution as set forth in this Agreement:

## TERMS AND CONDITIONS

1.     The Court's subject matter jurisdiction over the Action is undisputed, and Wells Fargo Bank consents to the Court's exercise of personal jurisdiction over it for purposes of the Action.

2.     Wells Fargo Bank admits, acknowledges, and accepts responsibility for the following with respect to the Referenced Loans[1]:

   a.   From May 2001 to the present, Wells Fargo Bank (or its predecessor) has been a Direct Endorsement Lender ("DEL") approved by the FHA, a component of HUD, and has been authorized by HUD to originate, underwrite, and close residential mortgage loans for endorsement by HUD, including determining a borrower's creditworthiness and whether the proposed loan meets applicable HUD requirements.

   b.   In originating, underwriting, and closing mortgage loans for FHA insurance, Wells Fargo Bank was required to follow applicable HUD

---

[1] The term "Referenced Loans" as used herein refers only to mortgage loans which are released in this Agreement.

requirements, including those set out in HUD's handbooks and mortgagee letters. With respect to the creditworthiness of the proposed borrower, Wells Fargo Bank was required, *inter alia*, to "evaluate [each] mortgagor's credit characteristics, adequacy and stability of income to meet the periodic payments under the mortgage and all other obligations, and the adequacy of the mortgagor's available assets to close the transaction, and render an underwriting decision in accordance with applicable regulations, policies and procedures." 24 C.F.R. § 203.5(d). For each FHA loan, Wells Fargo Bank was obligated to "exercise the same level of care which it would exercise in obtaining and verifying information for a loan in which the mortgagee would be entirely dependent on the property as security to protect its investment." 24 C.F.R. § 203.5(c).

c.   In addition, Wells Fargo Bank was required to comply with HUD regulations applicable to underwriter qualifications and compensation.

d.   As a DEL, Wells Fargo Bank was permitted to submit certain proposed FHA loan originations through a HUD-approved Automated Underwriting System ("AUS") that now works in conjunction with a credit-rating algorithm maintained by the FHA, known as Technology Open To Approved Lenders ("TOTAL") Mortgage Scorecard.

e.   For each loan that Wells Fargo Bank submitted for FHA insurance, whether through manual underwriting or the use of an AUS, a Wells Fargo Bank representative was required to certify on Form HUD-92900-A that:

> "I, the undersigned, as authorized representative of [Wells Fargo Bank] at this time of closing of this mortgage loan, certify that I have personally reviewed the mortgage loan documents, closing statements, application for insurance endorsement, and all accompanying documents. I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4."

f.   For each FHA loan that was underwritten using an AUS, a Wells Fargo Bank mortgagee representative was required to certify on Form HUD-92900-A to "the integrity of the data supplied by the lender used to determine the quality of the loan [and] that a Direct Endorsement Underwriter reviewed the appraisal (if applicable)."

g.   For each FHA loan that was underwritten manually, a Wells Fargo Bank direct endorsement underwriter was required to certify on Form HUD-92900-A that the underwriter "personally reviewed the appraisal report (if applicable), credit application, and all associated documents and ha[s] used due diligence in underwriting this mortgage."

h.  When a borrower defaults on an FHA loan underwritten and certified by a DEL and endorsed by HUD, the DEL (or, if the DEL transferred the mortgage or servicing rights after closing, the mortgage holder or servicer) has the option of submitting a claim to HUD for the remaining balance of the mortgage. As such, once a mortgage loan is insured by FHA, the Mutual Mortgage Insurance Fund, which is administered by HUD, bears risk if the borrower defaults on that mortgage and does not cure the default.

i.  During the period May 1, 2001 through on or about December 31, 2008, Wells Fargo Bank (or its predecessor) submitted to HUD certifications stating that certain loans were eligible for FHA mortgage insurance when in fact they were not. When certain of these loans defaulted, insurance claims were paid out of the Mutual Mortgage Insurance Fund.

j.  From May 2001 through January 2003, through internal quality reviews and audits of FHA loans already originated, underwritten, and closed, Wells Fargo Bank's predecessor's quality assurance group identified certain FHA loans with a "material" finding (per Wells Fargo Bank's predecessor's internal application and definition of the term "material," which generally described a loan file that did not conform to internal parameters and/or specific FHA parameters, contained significant risk factors affecting the underwriting decision, and/or evidenced misrepresentation). Based on monthly reviews of random samples of FHA loans originated in Wells Fargo Bank's predecessor's retail business line during the May 2001 through January 2003 period, Wells Fargo Bank's predecessor's quality assurance group identified a material finding rate in excess of 25% for most of the months, and in excess of 40% for several consecutive months. For a number of the months during the period February 2003 through September 2004, the material finding rate (using Wells Fargo Bank's and its predecessor's internal application and definition of the term "material") found by Wells Fargo Bank's (or its predecessor's) quality assurance group for randomly reviewed retail FHA loans exceeded 20%.

3.  Wells Fargo Bank further admits, acknowledges, and accepts responsibility for the following with respect to the Referenced Loans:

a.  During the period January 1, 2002 through December 31, 2010, Wells Fargo Bank (or its predecessor) was required, in order to maintain its DEL status, to implement and maintain a quality control program in accordance with HUD Handbook requirements. As part of its quality control program, Wells Fargo Bank was obligated, *inter alia*, to (1) review a sample of FHA loan files to verify whether they were underwritten in accordance with HUD guidelines, and (2) review each FHA loan that went into early payment default.

b.  In addition, during the period January 1, 2002 through December 31, 2010, Wells Fargo Bank (or its predecessor) was required to make certain reports to HUD.

c.  For the period January 1, 2002 to November 23, 2003, HUD Handbook 4060.1 Rev-1 set forth reporting requirements for FHA lenders. Paragraph 6-1(H) of that Handbook required lenders to "report any violation of law or regulation, false statements or program abuses by the mortgagee, its employees or any other party to the transaction to the HUD Regional Office, the HUD Area Office or to the HUD Regional Office of Inspector General ...."

d.  On November 24, 2003, HUD issued Handbook 4060.1 Rev-1 CHG-1, which contained updated quality control requirements. With respect to self-reporting, Paragraph 6-3(J) of that Handbook provided that "[f]indings of fraud or other serious violations must be referred, in writing (along with the supporting documentation) to the Director of the Quality Assurance Division in the HUD Homeownership Center having jurisdiction (determined by the State where the property is located). Refer to Paragraph 6-13." Paragraph 6-13 provided that "[s]erious deficiencies, patterns of non-compliance, or fraud uncovered by mortgagees, must be reported in writing (along with supporting documentation) to the Director of the Quality Assurance Division in the HUD Homeownership Center having jurisdiction." Prior to October 2005, Wells Fargo Bank (or its predecessor) understood that HUD had requested that serious deficiencies, patterns of non-compliance, or fraud be reported to HUD. Wells Fargo Home Mortgage had historically interpreted HUD's handbooks to require that lenders report only incidents that involved several files or patterns of fraud or non-compliance. Based on this interpretation, Wells Fargo Bank did not report every incident of fraud or noncompliance that involved a single instance or loan file, but rather focused on reporting larger global fraud issues which involved numerous parties and files.

e.  Between 2002 and October 2005, Wells Fargo Bank (and its predecessor) made one self-report to HUD involving multiple loans. This self-report identified fraud at an entity which had partnered with Wells Fargo Bank's predecessor for a joint venture. During that same period, Wells Fargo Bank and its predecessor's internal quality assurance reviews identified approximately 3,000 FHA loans containing "material" findings (per Wells Fargo Bank's and its predecessor's internal application and definition of the term "material"). When certain of these loans defaulted, insurance claims were paid out of the Mutual Mortgage Insurance Fund.

f.  From January 1, 2002, until December 31, 2010, Lofrano held the position of Vice President of Credit Risk – Quality Assurance at Wells Fargo Bank

in the Wells Fargo Home Mortgage division (or at Wells Fargo Bank's predecessor). In that capacity, he supervised the Decision Quality Management group. In 2004, Lofrano was asked to organize a working sub-group, comprised of personnel from a number of different divisions within Wells Fargo Home Mortgage, to address reporting to HUD in light of various recent changes to the HUD Handbook.

g. In or about October of 2005, Wells Fargo Bank adopted a new self-reporting policy and procedures. Lofrano was asked to organize a working group that drafted the new policy and procedures, and he complied with that request. Two internal committees reviewed and approved the new policy and procedures before Wells Fargo Bank adopted them. Under the new policy and procedures, Wells Fargo Bank would report loans with "serious deficiencies and/or suspected fraud." The policy further defined that loans with "serious deficiencies" included "misrepresentation situations and do **not** include errors in underwriting judgment or other errors. They consist of material findings in which one or more of the parties involved in the transaction may have potentially 'misrepresented' some information in the loan file, such as social security number, income, appraisal, data, etc." In late 2005 and early 2006, HUD reviewed Wells Fargo Bank's policy and procedures.

h. Between October 2005 and December 2010, Wells Fargo Bank reported approximately 300 FHA loans to HUD through HUD's Neighborhood Watch system, and also notified HUD by an August 2007 letter of suspected borrower misrepresentations that potentially affected a significant number of loans. During the period October 2005 to December 2010, Wells Fargo Bank's internal quality assurance reviews identified more than 2,900 additional FHA loans containing material findings per Wells Fargo Bank's internal application and definition of the term "material." During the period October 2005 through December 31, 2010, based on its application of the self-reporting policy referenced in Paragraph 3(g) above and by committee decision, Wells Fargo Bank did not report to HUD the majority of the FHA loans that Wells Fargo Bank's internal quality assurance reviews had identified as having material findings per Wells Fargo Bank's internal application and definition of the term "material." When certain of these loans defaulted, insurance claims were paid out of the Mutual Mortgage Insurance Fund.

4. Lofrano admits, acknowledges, and accepts responsibility for those matters stated in Paragraphs 3(a), (f), (g), and (h) above in which he participated.

5. Wells Fargo Bank shall pay to the Government $1,200,000,000 (the "Settlement Amount") within thirty calendar days of the date upon which this Agreement is endorsed by the

8

Court (the "Effective Date").  Any amounts distributed by the Government to HUD after payment may be deposited into FHA's Capital Reserve Account.

6.       Payment of the Settlement Amount shall be made at https://www.pay.gov to the U.S. Department of Justice account in accordance with written instructions to be provided by the U.S. Attorney's Office for the Southern District of New York to Wells Fargo Bank counsel no later than ten calendar days after the Effective Date.

7.       Subject to the exceptions in Paragraph 10 below, and conditioned upon Wells Fargo Bank's full payment of the Settlement Amount:

a.       The United States, on behalf of its officers, agencies, and departments (including HUD and the FHA), releases Wells Fargo from any civil claim or administrative monetary claim that the United States has or may in the future have for the Covered Conduct under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*; the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a; the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801 *et seq.*; and the common law theories of breach of contract, negligence, gross negligence, payment by mistake, unjust enrichment, indemnification, fraud, money had and received, misrepresentation, deceit, mistake of fact, breach of fiduciary duty, conspiracy, and aiding and abetting any of the foregoing.  The United States also releases Wells Fargo from any other civil claim or administrative monetary claim that the Civil Division of the United States Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. § 0.45(d) for the Covered Conduct.  The release of administrative non-monetary claims is addressed in Attachment A.

b.      The United States, on behalf of its officers, agencies, and departments (including HUD and the FHA), releases Wells Fargo's current and former officers, directors, employees (including, but not limited to, Lofrano), contractors, vendors, third-party service providers, agents, attorneys, and assigns from any civil claim or administrative monetary claim that the United States has or may in the future have for the Covered Conduct — but only to the extent such Covered Conduct occurred with respect to single-family residential FHA loans endorsed for FHA mortgage insurance on or before December 31, 2010 —under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*; the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a; the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801 *et seq.*; and the common law theories of breach of contract, negligence, gross negligence, payment by mistake, unjust enrichment, indemnification, fraud, money had and received, misrepresentation, deceit, mistake of fact, breach of fiduciary duty, conspiracy, and aiding and abetting any of the foregoing.  The United States also releases Wells Fargo's current and former officers, directors, employees (including, but not limited to, Lofrano), contractors, vendors, third-party service providers, agents, attorneys, and assigns from any other civil claim or administrative monetary claim that the Civil Division of the United States Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. § 0.45(d) for the Covered Conduct, but only to the extent such Covered Conduct occurred with respect to single-family residential FHA loans endorsed for FHA mortgage insurance on or before December 31, 2010.

8.      The Administrative Release attached to this Agreement as Attachment A shall be deemed part of this Agreement as if fully incorporated herein.

9.     Wells Fargo Bank and Lofrano release the United States, its departments, agencies, officers, agents, employees, and servants from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that they have asserted, could have asserted, or may assert in the future against the United States, its departments, agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof, except that Wells Fargo and Lofrano do not release (1) HUD-FHA from its obligation to pay pending or future claims for FHA mortgage insurance submitted in accordance with the claim filing requirements set forth in the HUD regulations in 24 C.F.R. §§ 203.355 to 203.414, as implemented through administrative guidance, and (2) any liability based upon obligations created by this Agreement.

10.     Notwithstanding any other provision of this Agreement except for the Administrative Release provided by HUD (referenced in Paragraph 8 and attached as Attachment A), which the United States agrees shall be given full force and effect notwithstanding this Paragraph 10, the following claims of the United States are specifically reserved and are not released:

        a.     Any liability arising under Title 26 of the United States Code (Internal Revenue Code);

        b.     Any criminal liability;

        c.     Except as explicitly stated in Paragraph 7 above or Attachment A, any administrative liability, including the suspension and debarment rights of any federal agency;

        d.     Any liability to the United States for any claims or conduct other than the Covered Conduct;

e.      Any liability for the claims and conduct as currently pled in the following

actions, and no setoff related to amounts paid under this Agreement shall be applied to

any recovery in connection with any such claims or conduct:

     i.      *United States ex rel. Brown v. BankUnited Trust, et al.*, No. 1:14-cv-22855 (S.D. Fla.);

     ii.     *United States ex rel. Hastings v. Wells Fargo Bank, et al.*, No. 2:12-cv-03624 (C.D. Cal.);

     iii.    *United States ex rel. Lapani v. Credit Suisse Fin.*, et al., No. 1:13-cv-01985 (D.D.C.);

     iv.     *United States ex rel. Fisher v. Wells Fargo Bank, N.A.*, No. 13 Civ. 1460 (S.D.N.Y.);

     v.      *United States ex rel. Doe v. XYZ et al.*, No. 12 Civ. 1824 (D. Md.);

     vi.     *United States ex rel. Doe v. XYZ et al.*, No. 12 Civ. 7199 (S.D.N.Y.); and

     vii.    *United States ex rel. Doe v. XYZ et al.*, No. 1:16-CV-03425 (N.D. Ill.);

f.      Any liability based upon obligations created by this Agreement.

11.     For avoidance of doubt, in instances where loans encompassed within the Covered

Loan Conduct are subject to a subsequent modification or streamline refinance (including where

new loans or notes are issued resulting from the streamline refinance or modification of such

loans), the United States agrees that a civil claim or administrative monetary claim against Wells

Fargo or Wells Fargo's current and former officers, directors, employees (including, but not

limited to, Lofrano), contractors, vendors, third-party service providers, agents, attorneys, and

assigns, which is premised on alleged improprieties or other alleged misconduct in the

origination, underwriting, closing, or endorsement of the original FHA loan, has been released by

this Agreement under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*; the Financial

Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a; the

Program Fraud Civil Remedies Act, 31 U.S.C. § 3801 *et seq.*; the common law theories of breach of contract, negligence, gross negligence, payment by mistake, unjust enrichment, indemnification, fraud, money had and received, misrepresentation, deceit, mistake of fact, breach of fiduciary duty, conspiracy, and aiding and abetting any of the foregoing; and under any other authority that the Civil Division of the United States Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. § 0.45(d).

12.     Nothing in this Agreement limits the releases provided by the United States to Wells Fargo or Lofrano under any other agreements, including but not limited to the Federal Release referenced in the Consent Judgment in *United States v. Bank of America Corp., et al.*, No. 12-0361 (D.D.C. April 4, 2012), ECF No. 14.

13.     Wells Fargo Bank shall be in default of this Agreement if it fails to timely pay the Settlement Amount as set forth in Paragraph 5 above ("Default"). The Government shall provide written notice to Wells Fargo Bank of any Default, to be sent in the manner set forth in Paragraph 25 below. Wells Fargo Bank shall then have an opportunity to cure the Default within fifteen business days from the date of receipt of the notice of Default. In the event that a Default is not fully cured within fifteen business days of the receipt of the notice of Default ("Uncured Default"), the full Settlement Amount shall be immediately due and payable, and interest shall accrue at the rate of nine percent per annum compounded annually on the remaining unpaid principal balance, beginning fifteen business days after the date of receipt of the notice of Default. In the event of an Uncured Default, Wells Fargo Bank agrees that the Government may take action to collect on the consent judgment attached hereto as Attachment B. In addition, in the event of an Uncured Default, Wells Fargo Bank agrees that the Government may offset the remaining unpaid balance of the Settlement Amount from any amounts due and owing to Wells

Fargo Bank by the United States.  In the event of any Uncured Default, Wells Fargo Bank and Lofrano agree that the United States, at its option, may (a) rescind this Agreement and reinstate the Complaint; (b) seek specific performance of this Agreement; or (c) exercise any other rights granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.  If the United States opts to rescind this Agreement and reinstate the Complaint due to an Uncured Default, this Agreement shall be null and void and shall not be used for any purpose in any future proceeding between Wells Fargo and the United States.  Wells Fargo Bank shall not contest any offset imposed or any collection undertaken by the Government pursuant to this Paragraph, either administratively or in any court.  In addition, Wells Fargo Bank shall pay to the Government all reasonable costs of collection and/or enforcement under this Paragraph, including attorney's fees and expenses.  In the event that the United States opts to rescind this Agreement pursuant to this Paragraph, Wells Fargo Bank shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories to any civil or administrative claims that relate to the Covered Conduct, except to the extent such defenses were available on the Effective Date.

14.    Wells Fargo Bank and Lofrano waive and shall not assert any defenses they may have to any criminal prosecution relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause of the Fifth Amendment of the Constitution or under the Excessive Fines Clause of the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution.  Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

14

15.    Wells Fargo Bank agrees to the following:

a.    Unallowable Costs Defined:    All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Wells Fargo Bank, including Wells Fargo Bank's present or former officers, directors, employees, shareholders, and agents (including Lofrano) in connection with:

i.    the matters covered by this Agreement;

ii.    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

iii.    Wells Fargo Bank's (including Lofrano's) investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

iv.    the negotiation and performance of this Agreement; and

v.    any payments Wells Fargo Bank makes to the United States pursuant to this Agreement

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.    Future Treatment of Unallowable Costs:    Unallowable Costs will be separately determined and accounted for by Wells Fargo Bank, and Wells Fargo Bank shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.    Treatment of Unallowable Costs Previously Submitted for Payment: Within ninety calendar days of the Effective Date of this Agreement, Wells Fargo Bank

shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Wells Fargo Bank from the United States. Wells Fargo Bank agrees that the United States, at a minimum, shall be entitled to recoup from Wells Fargo Bank any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Wells Fargo Bank's books and records and to disagree with any calculations submitted by Wells Fargo Bank regarding any Unallowable Costs included in payments previously sought by Wells Fargo Bank, or the effect of any such Unallowable Costs on the amount of such payments.

16.    No claims are released against any person or entity except as expressly provided in this Agreement.

17.    Wells Fargo Bank represents and warrants that it has reviewed its financial situation, that it is currently not insolvent as such term is defined in 11 U.S.C. § 101(32) and that it reasonably believes that it shall remain solvent following payment to the Government of the Settlement Amount. Further, the Government and Wells Fargo Bank warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Wells Fargo Bank, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Government and Wells Fargo Bank warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably

equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Wells Fargo Bank was or became indebted to on or after the Execution Date, within the meaning of 11 U.S.C. § 548(a)(1).

18.     The Government and Wells Fargo Bank each shall bear its own and its employees' legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.     Any failure by the Government to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Agreement.

20.     This Agreement is governed by the laws of the United States.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by the Government, Wells Fargo Bank, and Lofrano, and shall not, therefore, be construed against any party in any subsequent dispute.

21.     The Government's Complaint against all defendants, including Lofrano, is dismissed with prejudice by operation of the Court's Orders dated February 3, March 3, and April 1, 2016 (Docket Entry Nos. 315, 317, 319); provided, however, that the Court shall retain jurisdiction over this Agreement and over the Government and Wells Fargo Bank to enforce the obligations of each under this Agreement.

22.     Except to the extent otherwise explicitly stated in writing, this Agreement constitutes the complete agreement between the Government, Wells Fargo Bank, and Lofrano. This Agreement may not be amended except by written consent of all parties.

23.     The undersigned counsel and representative for Wells Fargo Bank represent and warrant that they are fully authorized to execute this Agreement on behalf of Wells Fargo Bank. The undersigned counsel for the United States represent and warrant that they are fully authorized to execute this Agreement on behalf of the United States, including HUD.

24.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.  Facsimiles and scanned copies of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

25.     Any notices pursuant to this Agreement shall be in writing and shall be delivered by hand, express courier, or facsimile transmission followed by postage-prepaid certified mail and shall be addressed as follows:

IF TO THE UNITED STATES:

        Jeffrey S. Oestericher
        Assistant United States Attorney
        United States Attorney's Office
        Southern District of New York
        86 Chambers Street, Third Floor
        New York, New York 10007
        Facsimile:  (212) 637-2730

IF TO WELLS FARGO BANK:

        Douglas W. Baruch
        Jennifer M. Wollenberg
        Fried, Frank, Harris, Shriver & Jacobson LLP
        801 17th Street, N.W.
        Washington, D.C. 20006
        Facsimile:  (202) 639-7003

        William F. Johnson
        King & Spalding LLP
        1185 Avenue of the Americas
        New York, New York 10036
        Facsimile:  (212) 556-2222

AGREED TO BY

THE UNITED STATES OF AMERICA

PREET BHARARA
United States Attorney for the
Southern District of New York

Dated: New York, NY          By:

April 8      , 2016

Jeffrey S. Oestericher
Christopher B. Harwood
Rebecca S. Tinio
Caleb Hayes-Deats
Dominika Tarczynska
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2800
Facsimile:  (212) 637-2730

BRIAN J. STRETCH
United States Attorney for the
Northern District of California

Dated: San Francisco, CA          By:

April 5      , 2016

Sara Winslow
Assistant United States Attorney
450 Golden Gate Avenue, Ninth Floor
San Francisco, California 94102
Telephone:  (415) 436-6925
Facsimile:  (415) 436-6748

19

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
Michael D. Granston
Director, Commercial Litigation Branch
601 D Street NW, Suite 9004
Washington, DC 20004
Telephone:  (202) 305-0632

*Attorneys for the United States of America*

WELLS FARGO BANK, N.A.

Dated: Washington, DC        By:  _____
April 8 , 2016

Douglas W. Baruch
Jennifer M. Wollenberg
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7003

William F. Johnson
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2125
Facsimile:  (212) 556-2222

*Attorneys for Wells Fargo Bank, N.A.*

Dated: Des Moines, IA        By:  _____
_____, 2016

Franklin Codel
Executive Vice President
Wells Fargo Bank, N.A.

*Wells Fargo Bank, N.A.*

WELLS FARGO BANK, N.A.

Dated: Washington, DC                     By: _____
_____, 2016

Douglas W. Baruch
Jennifer M. Wollenberg
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, N.W.
Washington, D.C. 20006
Telephone: (202) 639-7000
Facsimile: (202) 639-7003

William F. Johnson
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2125
Facsimile: (212) 556-2222

*Attorneys for Wells Fargo Bank, N.A.*

Dated: Des Moines, IA                     By: _____
April 8_____, 2016

Franklin Codel
Executive Vice President
Wells Fargo Bank, N.A.

*Wells Fargo Bank, N.A.*

**KURT LOFRANO**

Dated: New York, NY
     April 5, 2016

By: *Meredith Kotler*

Lewis J. Liman
Meredith Kotler
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2550
Facsimile: (212) 298-0301

*Attorneys for Kurt Lofrano*

Dated: _____
     _____, 2016

By: _____

Kurt Lofrano

**ENDORSED:**

_____
HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE

22

**KURT LOFRANO**

Dated: New York, NY                    By:  _____
   _____, 2016          Lewis J. Liman
               Meredith Kotler
               Cleary Gottlieb Steen & Hamilton LLP
               One Liberty Plaza
               New York, New York 10006
               Telephone:  (212) 225-2550
               Facsimile:  (212) 298-0301

               *Attorneys for Kurt Lofrano*

Dated: Des Moines, IA                  By:  _____
   April 5, 2016              Kurt Lofrano

**ENDORSED:**

_____
HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE
   April 8, 2016

22

## ATTACHMENT A

### HUD Administrative Release

1.    HUD, acting on behalf of its officers, agencies, and departments (including FHA), releases Wells Fargo and all of Wells Fargo's current and former officers, directors, employees (including, but not limited to, Lofrano), contractors, vendors, third-party service providers, parents, agents, attorneys, and assigns from any civil or administrative claims, remedies, or penalties (expressly including punitive or exemplary damages) it may seek or impose based on the Covered Conduct (as defined in the parties' Settlement Agreement) and the Administrative Release Conduct (defined below), including, but not limited to, any claims pursuant to HUD's Mortgagee Review Board authority, 12 U.S.C. § 1708 and 24 C.F.R. Part 25; HUD's civil money penalty authority, 12 U.S.C. § 1735f-14 and 24 C.F.R. Part 30; HUD's Program Fraud Civil Remedies Act authority, 24 C.F.R. Part 28; and any other claim that HUD has actual and present authority to assert and compromise.

2.    The term "Administrative Release Conduct" refers to all acts or omissions by or on behalf of Wells Fargo (including but not limited, to retail, wholesale, correspondent, and joint venture lines of business) in connection with the origination of, underwriting of, closing of, and/or endorsement of single-family residential FHA loans (excluding Home Equity Conversion Mortgages under 12 U.S.C. § 1715z-20 ("HECMs")) endorsed after December 31, 2010 and before August 1, 2015, regardless of when and whether a claim to HUD under the FHA mortgage insurance program is or has been submitted or paid.  The term "Administrative Release Conduct" does not refer to loan servicing, including loss mitigation activities.

3.      With this release, HUD expressly releases its right to request and/or demand indemnification or other relief for the Covered Conduct and the Administrative Release Conduct. Any existing indemnification agreements for the Covered Conduct or the Administrative Release Conduct are superseded by this Agreement and are null and void upon execution of this Agreement.  HUD shall remove all claim blocks associated with superseded indemnification agreements within thirty calendar days after the Execution Date.

4.      This Administrative Release does not waive any rights or responsibilities of HUD to investigate or initiate other civil or administrative claims pursuant to its lawful authority, including, but not limited to, the following:

      a.      Claims based on Wells Fargo's servicing conduct (including loss mitigation);

      b.      Claims based on Wells Fargo's failure to remit Mortgage Insurance Premiums;

      c.      Claims based on Wells Fargo's failure to report the transfer of ownership of mortgages from one holder to another holder or failure to report the transfer of servicing of mortgages from one servicer to another servicer;

      d.      Claims based on Wells Fargo's failure to comply with FHA claim filing requirements (as may be alleged in a post-claims audit or otherwise), including the failure to timely provide partial claim documents pursuant to 24 C.F.R. § 203.371 and applicable Mortgagee Letters.

      e.      Claims relating to FHA single family loans endorsed after August 1, 2015;

      f.      Claims relating to FHA multifamily loans; and

g.     Claims relating to Home Equity Conversion Mortgages under 12 U.S.C. § 1715z-20 ("HECMs").

5.     This Administrative Release shall not relieve Wells Fargo from the obligation to meet the technical claim filing requirements of HUD-FHA's claims regulations in 24 C.F.R. §§ 203.355 to 203.414, as implemented by HUD administrative issuances relating to technical claim filing requirements such as Handbook 4330.4, FHA Single Family Insurance Claims (or successor handbooks), mortgagee letters, or other guidance.

**ATTACHMENT B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
UNITED STATES OF AMERICA,        :
                                      :
            Plaintiff,          :     12 Civ. 7527 (JMF)(JCF)
                                        :
             v.              :     **CONSENT JUDGMENT**
                                        :
WELLS FARGO BANK, N.A.,       :
                                      :
                                      :
            Defendant.      :
-------------------------------------------------------x

      Upon the consent of plaintiff the United States of America and defendant Wells Fargo

Bank, N.A., it is hereby

ORDERED, ADJUDGED, AND DECREED:  that plaintiff the United States of America is

awarded judgment in the sum of $1,200,000,000 as against defendant Wells Fargo Bank, N.A.

Consented to by:

                                  PREET BHARARA
                                  United States Attorney for the
                                  Southern District of New York

By:    _____
                                  Jeffrey S. Oestericher
                                  Christopher B. Harwood
                                  Rebecca S. Tinio
                                  Caleb Hayes-Deats
                                  Dominika Tarczynska
                                  Assistant United States Attorneys
                                  86 Chambers Street, Third Floor
                                  New York, New York 10007
                                  Telephone:  (212) 637-2800
                                  Facsimile:  (212) 637-2730

                                *Attorneys for the United States of America*

WELLS FARGO BANK, N.A.

By:   _____
Douglas W. Baruch
Jennifer M. Wollenberg
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7003

William F. Johnson
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2125
Facsimile:  (212) 556-2222

*Attorneys for Wells Fargo Bank, N.A.*

**SO ORDERED**:

_____
HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE